USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 1 of 162

ORAL ARGUMENT NOT YET SCHEDULED

## No. 13-3062

### UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,                                          Appellee,

      v.

JAMES WENDELL BROWN,                                              Appellant.

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

## JOINT APPENDIX

Barbara E. Kittay, Esquire
Counsel for Appellant
(Appointed by the Court)
D.C. Bar Number 414216

11140 Rockville Pike
Suite 100-284
Rockville, Maryland  20852
(301) 468-1817
bkittay@verizon.net

Crim. No. 12-CR-155 (RJL)

# CONTENTS

Docket (District Court Case No. 12-155(RJL)) . . . . . . 2

Criminal Information . . . . . . . . . . . . . . . . . . 13

Plea Agreement, dated January 2, 2013 . . . . . . . . 15

Amended Plea Agreement, dated April 29, 2013 . . . . . . 24

Statement of the Offense . . . . . . . . . . . . . . . 33

Government's Memorandum in Aid of Sentencing . . . . . 38

Mr. James Brown's Memorandum in Aid of Sentencing . . . 56

Judgment . . . . . . . . . . . . . . . . . . . . . . . 73

Statement of Reasons . . . . . . . . . . . . . . . . . 79

Notice of Appeal . . . . . . . . . . . . . . . . . . . 83


Transcripts:

Guilty Plea (June 19, 2013) . . . . . . . . . . . . . 84

Sentencing (June 26, 2013) . . . . . . . . . . . . . 110

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: 1:12-cr-00155-RJL-1

Case title: USA v. BROWN          Date Filed: 07/06/2012

Magistrate judge case number: 1:12-mj-00292-JMF

---

Assigned to: Judge Richard J. Leon

Appeals court case number: 13-3062

### Defendant (1)

**JAMES WENDELL BROWN**      represented by   **Lara Gabrielle Quint**

*also known as*                                 FEDERAL PUBLIC DEFENDER FOR

JIMMY                                        D.C.

625 Indiana Avenue, NW

Suite 550

Washington, DC 20004

(202) 208-7500 ext. 133

Fax: (202) 208-7515

Email: lara_quint@fd.org

*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

*Designation: Public Defender or*

*Community Defender Appointment*

### Pending Counts                          Disposition

18:2252A(a)(2); ACTIVITIES RE
MATERIAL
CONSTITUTING/CONTAINING
CHILD PORNO; Distribution of Child
Pornography.
(1)

Sentenced to One Hundred Forty-Four
(144) months incarceration, followed by
Two Hundred Forty (240) months
supervised release. Special Assessment of
$100.00 was imposed.

### Highest Offense Level (Opening)

Felony

### Terminated Counts                    Disposition

None

2

Page 5 of 162

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

## Highest Offense Level (Terminated)

None

| Complaints | Disposition |
|---|---|
| COMPLAINT In Violation of: 18:2252(a)(2) | |

## Plaintiff

USA          represented by   **Ari B. Redbord**
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7018
Fax: (202) 305-0652
Email: Ari.Redbord@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/26/2012 | 1 | COMPLAINT as to JAMES WENDELL BROWN (1). (Attachment: # 1 Statement of Facts) (zmac) [1:12-mj-00292-JMF] (Entered: 03/27/2012) |
| 03/28/2012 | | Arrest of JAMES WENDELL BROWN (ldc, ) [1:12-mj-00292-JMF] (Entered: 03/28/2012) |
| 03/28/2012 | 2 | Arrest Warrant Returned Executed on 03/28/12 as to JAMES WENDELL BROWN. (ldc, ) [1:12-mj-00292-JMF] (Entered: 03/28/2012) |
| 03/28/2012 | | ORAL MOTION for Temporary Detention by USA as to JAMES WENDELL BROWN. (ldc, ) [1:12-mj-00292-JMF] (Entered: 03/28/2012) |
| 03/28/2012 | | ORAL MOTION to Appoint Counsel by JAMES WENDELL BROWN. (ldc, ) [1:12-mj-00292-JMF] (Entered: 03/28/2012) |
| 03/28/2012 | | ORAL MOTION for Speedy Trial Waiver by JAMES WENDELL BROWN. (ldc, ) [1:12-mj-00292-JMF] (Entered: 03/28/2012) |
| 03/28/2012 | | Minute Entry for proceedings held before Magistrate Judge John M. Facciola: Initial Appearance as to JAMES WENDELL BROWN held on 3/28/2012. Arrest warrant returned executed dated 03/28/12. Oral Motion to Appoint Counsel and Oral Motion for Speedy Trial Waiver excluding time from 03/28/12 - 04/10/12, 13 (thirteen) days in the interest of justice X-T by JAMES WENDELL BROWN (1) heard and granted. Oral Motion by USA for Temporary Detention (3 day hold) as to JAMES WENDELL |

3

| | | |
|---|---|---|
| | | BROWN (1) heard and granted. Preliminary/Detention Hearing set for 4/10/2012 01:30 PM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. Medical/Mental Health Alert issued to the Department of Corrections Medical Unit as to JAMES WENDELL BROWN. Bond Status of Defendant: Defendant held without bond; Defendant committed/commitment issued; Court Reporter: Bowles Reporting Services; Defense Attorney: Lara Quint; US Attorney: David Last; Pretrial Officer: Vaughn Wilson; (ldc, ) [1:12-mj-00292-JMF] (Entered: 03/28/2012) |
| 04/10/2012 | | ORAL JOINT MOTION to Continue Preliminary/Detention Hearingby JAMES WENDELL BROWN. (lm, ) [1:12-mj-00292-JMF] (Entered: 04/12/2012) |
| 04/10/2012 | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Status Conference as to JAMES WENDELL BROWN held on 4/10/2012. Oral Motion to Continue Preliminary/Detention Hearing as to JAMES WENDELL BROWN (1) heard and granted. Preliminary/Detention Hearing set for 4/23/2012 at 01:30 PM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. Court grants Waiver of Speedy Trial from 4/10/12 to 04/23/12 in the Interest of Justice. Bond Status of Defendant: committed/commitment issued; Court Reporter: Bowles Reporting Defense Attorney: Lara Quint, Michelle Peterson; US Attorney: David Last; (lm ) [1:12-mj-00292-JMF] (Entered: 04/12/2012) |
| 04/12/2012 | 3 | ORDER TO CONTINUE - Ends of Justice as to JAMES WENDELL BROWN Time excluded from 4/12/12 until 4/23/12. Signed by Magistrate Judge Deborah A. Robinson on 4/10/12. (lm, ) [1:12-mj-00292-JMF] (Entered: 04/12/2012) |
| 04/23/2012 | | ORAL Joint MOTION for Waive Preliminary Hearing and Waive Speedy Trial by JAMES WENDELL BROWN. (lm) [1:12-mj-00292-JMF] (Entered: 04/30/2012) |
| 04/23/2012 | | Minute Entry for proceedings held before Magistrate Judge Deborah A. Robinson: Oral Jiont Motion for Waiver of Speedy Trial from 4/23/12 - 5/29/12 as to JAMES WENDELL BROWN(1) heard and granted. Detention Hearing as to JAMES WENDELL BROWN held on 4/23/2012. Court ordered defendant held without bond. Bond Status of Defendant: committed/commitment issued; Court Reporter: Bowles Reporting; Defense Attorney: Michelle Peterson for Lara Quint; US Attorney: Julliane Himestein for David Last. (lm) [1:12-mj-00292-JMF] (Entered: 04/30/2012) |
| 04/23/2012 | 8 | WAIVER of Preliminary Hearing as to JAMES WENDELL BROWN (lm, ) [1:12-mj-00292-JMF] (Entered: 04/30/2012) |
| 04/23/2012 | 9 | ORDER TO CONTINUE - Ends of Justice as to JAMES WENDELL BROWN Time excluded from 4/23/12 until 5/29/12. Signed by Magistrate Judge Deborah A. Robinson on 4/23/12. (lm) [1:12-mj-00292-JMF] (Entered: 04/30/2012) |
| 05/29/2012 | 10 | MEMORANDUM OF FINDINGS OF FACT AND STATEMENT OF REASONS IN SUPPORT OF ORDER OF DETENTION as to JAMES WENDELL BROWN. Signed by Magistrate Judge Deborah A. Robinson on 05/29/2012. (lcdar3) [1:12-mj-00292-JMF] (Entered: 05/30/2012) |
| 06/06/2012 | | Set/Reset Hearings as to JAMES WENDELL BROWN:Status Conference/Speedy Trial |

4

USCA Case #13-3002     Document #1139600     Filed: 02/23/2015     Page 8 of 162

Page 9 of 162   Filed: 02/23/2015   Document #1539600   USCA Case #13-3062

| | | |
|---|---|---|
| | | Waiver set for 6/11/2012 09:30 AM in Courtroom 6 before Magistrate Judge John M. Facciola. (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/06/2012) |
| 06/08/2012 | 11 | ENTERED IN ERROR .....NOTICE OF SUBSTITUTION OF COUNSEL as to JAMES WENDELL BROWN. Attorney Ari B. Redbord for USA added. (mac) Modified on 6/19/2012 (zmac) [1:12-mj-00292-JMF] (Entered: 06/11/2012) |
| 06/11/2012 | | ORAL MOTION to Continue Status Hearing, ORAL MOTION for Speedy Trial Waiver by JAMES WENDELL BROWN. (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/11/2012) |
| 06/11/2012 | | Minute Entry for proceedings held before Magistrate Judge John M. Facciola: Status Conference as to JAMES WENDELL BROWN held on 6/11/2012. Parties continue to negotiate a plea agreement. Oral Motion to Continue Status Hearing and Oral Motion for Speedy Trial Waiver excluding time from 06/11/12 - 06/18/12 (one week) in the interest of justice X-T by JAMES WENDELL BROWN (1) heard and granted. Status Hearing continued to 6/18/2012 09:30 AM in Courtroom 6 before Magistrate Judge John M. Facciola. Bond Status of Defendant: Defendant committed/commitment issued; Court Reporter: Bowles Reporting Services: Defense Attorney: Lara Quint; US Attorney: Ari Redbord; (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/11/2012) |
| 06/15/2012 | | Set/Reset Hearings as to JAMES WENDELL BROWN: Preliminary Hearing/Status Hearing set for 6/18/2012 01:45 PM in Courtroom 6 before Magistrate Judge John M. Facciola. (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/15/2012) |
| 06/18/2012 | | JOINT ORAL MOTION to Continue Status Hearing, JOINT ORAL MOTION for Speedy Trial Waiver as to JAMES WENDELL BROWN. (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/18/2012) |
| 06/18/2012 | | Minute Entry for proceedings held before Magistrate Judge John M. Facciola: Status Hearing as to JAMES WENDELL BROWN held on 6/18/2012. Parties continue to discuss a plea agreement. Joint Oral Motion to Continue Status Hearing and Joint Oral Motion for Speedy Trial Waiver excluding time from 06/18/12 - 07/11/12 in the interest of justice X-T as to JAMES WENDELL BROWN (1) heard and granted. Status Hearing continued to 7/11/2012 09:30 AM in Courtroom 4 before Magistrate Judge Deborah A. Robinson. Bond Status of Defendant: Defendant committed/commitment issued; Court Reporter: Bowles Reporting Services: Defense Attorney: Lara Quint; US Attorney: Ari Redbord; (ldc, ) [1:12-mj-00292-JMF] (Entered: 06/18/2012) |
| 06/18/2012 | 12 | NOTICE OF SUBSTITUTION OF COUNSEL as to USA. Attorney Redbord, Ari B. added. Substituting for attorney David Last (Redbord, Ari) [1:12-mj-00292-JMF] (Entered: 06/18/2012) |
| 07/06/2012 | 13 | INFORMATION as to JAMES WENDELL BROWN (1) count(s) 1. (hsj, ) (Entered: 07/10/2012) |
| 07/31/2012 | 14 | Unopposed MOTION for Hearing by USA as to JAMES WENDELL BROWN. (Redbord, Ari) (Entered: 07/31/2012) |
| 09/12/2012 | | Set/Reset Hearings as to JAMES WENDELL BROWN:Status Conference set for |

| | | |
|---|---|---|
| | | 9/25/2012 04:00 PM in Courtroom 18 before Judge Richard J. Leon. (kc) (Entered: 09/12/2012) |
| 09/26/2012 | | Set/Reset Hearings as to JAMES WENDELL BROWN: Plea Agreement Hearing set for 10/11/2012 02:30 PM in Courtroom 18 before Judge Richard J. Leon. (kc) (Entered: 09/26/2012) |
| 10/11/2012 | | Terminate Hearing as to JAMES WENDELL BROWN: The Plea Agreement Hearing scheduled for October 11, 2012 is vacated and will be rescheduled at a date and time to be determined. (jth) (Entered: 10/12/2012) |
| 12/11/2012 | | Set/Reset Hearings as to JAMES WENDELL BROWN:Status Conference set for 12/18/2012 04:00 PM in Courtroom 18 before Judge Richard J. Leon. (kc) (Entered: 12/11/2012) |
| 12/18/2012 | | Minute Entry for proceedings held before Judge Richard J. Leon: Status Conference as to JAMES WENDELL BROWN held on 12/18/2012. Speedy Trial waived from 12/18/2012 until 1/16/2013 in the Interest of Justice (START XT). Plea Agreement Hearing is scheduled for 1/16/2013 at 11:00 AM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed -Commitment Issued; Court Reporter: Crystal Pilgrim; (Present - Defendant;Defense Attorney: Lara Gabrielle Quint; U.S. Attorney: Ari B. Redbord) (jth) (Entered: 12/18/2012) |
| 01/14/2013 | | Set/Reset Hearings as to JAMES WENDELL BROWN:Plea Agreement Hearing set for 1/16/2012 has been converted into a Status Conference set for 1/16/2013 11:00 AM in Courtroom 18 before Judge Richard J. Leon. (kc) (Entered: 01/14/2013) |
| 01/14/2013 | | Terminate Hearings: The 1/16/2013 plea agreement hearing converted into a Status Conference. (kc) (Entered: 01/14/2013) |
| 01/16/2013 | | Minute Entry: Status Conference as to JAMES WENDELL BROWN held on 1/16/2013 before Judge Richard J. Leon: Plea Agreement Hearing set for 1/30/2013 11:30 AM in Courtroom 18 before Judge Richard J. Leon. The defendant waives speedy trial from 01/16/13 through 01/30/13 Defendant committed; commitment issued. Court Reporter: Theresa Sorensen Defense Attorney: Lara Quint; US Attorney: Ari Redbord. (tb, ) (Entered: 01/16/2013) |
| 01/30/2013 | | VACATED PURSUANT TO ORAL ORDER FILED 06/19/13.....Minute Entry: Arraignment/Plea Agreement as to JAMES WENDELL BROWN (1) on Count 1 held on 1/30/2013 before Judge Richard J. Leon: Plea of GUILTY entered by JAMES WENDELL BROWN (1) as to Count 1. REFERRAL TO PROBATION OFFICE for Presentence Investigation as to JAMES WENDELL BROWN. Sentencing set for 4/23/2013 11:30 AM in Courtroom 18 before Judge Richard J. Leon. Defendant committed; commitment issued. Court Reporter: Patty Gels Defense Attorney: Lara Quint; US Attorney: Ari Redbord. (tb, ) Modified on 6/20/2013 (jth). (Entered: 01/31/2013) |
| 01/30/2013 | 15 | WITHDRAWN PURSUANT TO ORAL ORDER FILED 06/19/13.....WAIVER of Right to Trial by Jury as to JAMES WENDELL BROWN. Signed by Judge Richard J. |

DSCA Case #13-3032 Document #1532680 Filed: 02/23/2015 Page 10 of 162

https://ecf.dcd.uscourts.gov/cgi-bin/DktRpt.pl?566925986500203 1...1-0-1

Page 11 of 162

Filed: 02/23/2015          Document #1539600          USCA Case #13-3062

| | | |
|---|---|---|
| | | Leon on 01/30/13. (tb, ) Modified on 6/20/2013 (jth). (Entered: 01/31/2013) |
| 01/30/2013 | 16 | WITHDRAWN PURSUANT TO ORAL ORDER FILED 06/19/13.....WAIVER OF INDICTMENT by JAMES WENDELL BROWN. Signed by Judge Richard J. Leon on 01/30/13. (tb, ) Modified on 6/20/2013 (jth). (Entered: 01/31/2013) |
| 01/30/2013 | 17 | WITHDRAWN PURSUANT TO ORAL ORDER FILED 06/19/2013.....STATEMENT OF OFFENSE by JAMES WENDELL BROWN. (tb,) Modified on 6/20/2013 (jth). (Entered: 01/31/2013) |
| 01/30/2013 | 18 | WITHDRAWN PURSUANT TO ORAL ORDER FILED 06/19/13.....PLEA AGREEMENT as to JAMES WENDELL BROWN. (tb, ) Modified on 6/20/2013 (jth). (Entered: 01/31/2013) |
| 02/27/2013 | | Set/Reset Hearings as to JAMES WENDELL BROWN: Sentencing originally set for 4/23/2013 is rescheduled for for 4/24/2013 at 03:00 PM in Courtroom 18 before Judge Richard J. Leon. (kc ) (Entered: 02/27/2013) |
| 04/15/2013 | 20 | SENTENCING MEMORANDUM by USA as to JAMES WENDELL BROWN (Redbord, Ari) (Entered: 04/15/2013) |
| 04/16/2013 | 22 | Recommendation of PSI Report as to JAMES WENDELL BROWN. Not for public disclosure per Judicial Conference Policy.(Stevens-Panzer, Deborah) (Entered: 04/16/2013) |
| 04/16/2013 | 23 | SENTENCING MEMORANDUM by JAMES WENDELL BROWN (Attachments: # 1 Exhibit Letters in Aid of Sentencing)(Quint, Lara) (Entered: 04/16/2013) |
| 04/17/2013 | 24 | SENTENCING MEMORANDUM by JAMES WENDELL BROWN (Attachments: # 1 Exhibit Letters in Aid of Sentencing)(Quint, Lara) (Entered: 04/17/2013) |
| 04/17/2013 | 25 | RESPONSE by USA as to JAMES WENDELL BROWN *Sentencing Memorandum* (Redbord, Ari) (Entered: 04/17/2013) |
| 04/24/2013 | | Minute Entry for proceedings held before Judge Richard J. Leon: Case called for Sentencing but not held. Status Conference as to JAMES WENDELL BROWN held on 4/24/2013. Status Conference set for 5/6/2013 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: Patty A. Gels; Defense Attorney: Lara Gabrielle Quint; US Attorney: Ari B. Redbord; Probation Officer: Crystal Lustig. (jth) (Entered: 04/24/2013) |
| 05/06/2013 | | Set/Reset Hearings as to JAMES WENDELL BROWN: The Status Conference set for 5/6/2013 at 12:00 PM is RESCHEDULED to a date to be determined. (lcrjl1) (Entered: 05/06/2013) |
| 05/13/2013 | | Set/Reset Hearings as to JAMES WENDELL BROWN: Plea Agreement Hearing set for 5/16/2013 12:00 PM in Courtroom 18 before Judge Richard J. Leon. (kc ) (Entered: 05/13/2013) |
| 05/16/2013 | | Set/Reset Hearings as to JAMES WENDELL BROWN: Hearing currently set for |

| | | |
|---|---|---|
| | | Thursday, May 16th will be continued to a date to be determined. (tb, ) (Entered: 05/16/2013) |
| 06/13/2013 | | Set/Reset Hearings as to JAMES WENDELL BROWN: Plea Agreement Hearing set for 6/19/2013 11:30 AM in Courtroom 18 before Judge Richard J. Leon. (kc ) (Entered: 06/13/2013) |
| 06/13/2013 | 26 | Unopposed MOTION to Continue *Plea Hearing* by USA as to JAMES WENDELL BROWN. (Redbord, Ari) (Entered: 06/13/2013) |
| 06/14/2013 | | MINUTE ORDER granting 26 Motion to Continue Plea Agreement Hearing as to JAMES WENDELL BROWN. The Plea Agreement Hearing is reset for 6/19/2013 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. Signed by Judge Richard J. Leon on 6/14/2013. (jth) (Entered: 06/14/2013) |
| 06/17/2013 | 27 | Unopposed MOTION to Continue *Plea Hearing* by JAMES WENDELL BROWN. (Attachments: # 1 Text of Proposed Order)(Quint, Lara) (Entered: 06/17/2013) |
| 06/17/2013 | | MINUTE ORDER denying 27 Motion to Continue as to JAMES WENDELL BROWN. It is hereby ORDERED that the motion is DENIED. Signed by Judge Richard J. Leon on 6/17/13. (lcrjl1) (Entered: 06/17/2013) |
| 06/19/2013 | 28 | SENTENCING MEMORANDUM by USA as to JAMES WENDELL BROWN (Redbord, Ari) (Entered: 06/19/2013) |
| 06/19/2013 | | Minute Entry for proceedings held before Judge Richard J. Leon: Plea Agreement Hearing as to JAMES WENDELL BROWN held on 6/19/2013. Plea Of Guilty and Plea Agreement previously held on 1/30/2013 were vacated. Plea of Guilty as to Count 1 entered by JAMES WENDELL BROWN. Sentencing is scheduled for 6/26/2013 at 11:30 AM in Courtroom 18 before Judge Richard J. Leon. Updated Sentencing Memoranda from the parties are due by the Close of Business on 6/21/2013. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: Patty A. Gels; Defense Attorney: Lara Gabrielle Quint; US Attorney: Ari B. Recbord. (jth) (Entered: 06/19/2013) |
| 06/19/2013 | 29 | WAIVER OF INDICTMENT by JAMES WENDELL BROWN. Signed by Judge Richard J. Leon on 6/19/2013. (jth) (Entered: 06/19/2013) |
| 06/19/2013 | 30 | WAIVER of Right to Trial by Jury as to JAMES WENDELL BROWN. Approved by Judge Richard J. Leon on 6/19/2013. (jth) (Entered: 06/19/2013) |
| 06/19/2013 | 31 | PLEA AGREEMENT as to JAMES WENDELL BROWN. (jth) (Entered: 06/19/2013) |
| 06/19/2013 | 32 | STATEMENT OF OFFENSE by USA as to JAMES WENDELL BROWN. (jth) (Entered: 06/19/2013) |
| 06/20/2013 | 33 | SENTENCING MEMORANDUM by JAMES WENDELL BROWN (Attachments: # 1 Exhibit Letters on Behalf of Mr. Brown)(Quint, Lara) (Entered: 06/20/2013) |
| 06/26/2013 | | Minute Entry for proceedings held before Judge Richard J. Leon: Sentencing held on 6/26/2013 as to JAMES WENDELL BROWN. Count 1: sentenced to One Hundred |

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 12 of 162

District of Columbia live database

2/11/2015

Page 13 of 162

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

| | | |
|---|---|---|
| | | Forty-Four (144) months incarceration, followed by Two Hundred Forty (240) months supervised release. Special Assessment of $100.00 was imposed. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: Cathryn Jones; Defense Attorney: Lara Gabrielle Quint; US Attorney: Ari B. Redbord; Probation Officer: Crystal Lustig. (jth) (Entered: 06/26/2013) |
| 07/02/2013 | 35 | JUDGMENT as to JAMES WENDELL BROWN. Statement of Reasons Not Included. Signed by Judge Richard J. Leon on 6/27/2013. (hsj, ) (Entered: 07/02/2013) |
| 07/02/2013 | 36 | STATEMENT OF REASONS as to JAMES WENDELL BROWN re 35 Judgment Not for public disclosure per Judicial Conference Policy. Signed by Judge Richard J. Leon on 6/27/2013. (hsj, ) (Entered: 07/02/2013) |
| 07/08/2013 | 37 | NOTICE OF APPEAL - Final Judgment by JAMES WENDELL BROWN Fee Status: No Fee Paid. Parties have been notified. (Quint, Lara) (Entered: 07/08/2013) |
| 07/09/2013 | 38 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. Defendant is represented by Federal Public Defender's Office. Docketing Statement Not Received as to JAMES WENDELL BROWN re 37 Notice of Appeal - Final Judgment. No Fee Paid (hsj, ) (Entered: 07/09/2013) |
| 07/10/2013 | | USCA Case Number as to JAMES WENDELL BROWN 13-3062 for 37 Notice of Appeal - Final Judgment filed by JAMES WENDELL BROWN. (hsj, ) (Entered: 07/11/2013) |
| 08/12/2013 | 39 | TRANSCRIPT OF PROCEEDINGS in case as to JAMES WENDELL BROWN before Judge Richard J. Leon held on June 26, 2013; Page Numbers: 1 - 47. Court Reporter/Transcriber Cathryn Jones, Telephone number 202 354-3246, Court Reporter Email Address : cathryjns1@aol.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS**: The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 9/2/2013. Redacted Transcript Deadline set for 9/12/2013. Release of Transcript Restriction set for 11/10/2013.(Jones, Cathryn) (Entered: 08/12/2013) |
| 08/24/2013 | 40 | TRANSCRIPT OF Return on Arrest Warrant and Initial Appearance PROCEEDINGS in case as to JAMES WENDELL BROWN before Magistrate Judge John M. Facciola held on 3/28/12. Page Numbers: 1 - 7. Date of Issuance: 8/24/13. Court Reporter/Transcriber: Bowles Reporting Service, Telephone number (860) 464-1083.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 |

days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.

Redaction Request due 9/14/2013. Redacted Transcript Deadline set for 9/24/2013. Release of Transcript Restriction set for 11/22/2013.(mlp) (Entered: 08/27/2013)

| 08/24/2013 | 41 | TRANSCRIPT OF Preliminary/Detention Hearing PROCEEDINGS in case as to JAMES WENDELL BROWN before Magistrate Judge Deborah A. Robinson held on 4/10/12; Page Numbers: 1 - 13. Date of Issuance: 8/24/13. Court Reporter/Transcriber: Bowles Reporting Service. Telephone number (860) 464-1083. |

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.

Redaction Request due 9/14/2013. Redacted Transcript Deadline set for 9/24/2013. Release of Transcript Restriction set for 11/22/2013.(mlp) (Entered: 08/27/2013)

| 08/24/2013 | 42 | TRANSCRIPT OF Preliminary/Detention Hearing PROCEEDINGS in case as to JAMES WENDELL BROWN before Magistrate Judge John M. Facciola held on 04/23/12. Page Numbers: 1 - 31. Date of Issuance: 8/24/13. Court Reporter/Transcriber: Bowles Reporting Service. Telephone number (860) 464-1083. |

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at

USCA Case #13-3008    Document #1539600    Filed: 02/23/2015    Page 14 of 162

Filed: 02/23/2015    Page 15 of 162

Document #1539600

USCA Case #13-3062

ww.dcd.uscourts.gov.

Redaction Request due 9/14/2013. Redacted Transcript Deadline set for 9/24/2013. Release of Transcript Restriction set for 11/22/2013.(mlp) (Entered: 08/27/2013)

| 08/24/2013 | 43 | TRANSCRIPT OF Status Hearing PROCEEDINGS in case as to JAMES WENDELL BROWN before Magistrate Judge John M. Facciola held on 06/18/12. Page Numbers: 1 - 6. Date of Issuance: 8/24/13. Court Reporter/Transcriber: Bowles Reporting Service. Telephone number (860) 464-1083.

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.

Redaction Request due 9/14/2013. Redacted Transcript Deadline set for 9/24/2013. Release of Transcript Restriction set for 11/22/2013.(mlp) (Entered: 08/27/2013) |
| 09/17/2013 | 44 | TRANSCRIPT OF PROCEEDINGS in case as to JAMES WENDELL BROWN before Judge Richard J. Leon held on 12/18/12; Page Numbers: 1-11. Date of Issuance:09/17/13. Court Reporter/Transcriber Crystal M. Pilgrim, Telephone number 202.354.3127, Court Reporter Email Address : crystalpilgrim@aol.com.

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.

Redaction Request due 10/8/2013. Redacted Transcript Deadline set for 10/18/2013. Release of Transcript Restriction set for 12/16/2013.(Pilgrim, Crystal) (Entered: 09/17/2013) |
| 09/18/2014 | 45 | TRANSCRIPT OF PROCEEDINGS in case as to JAMES WENDELL BROWN |

11

before Judge Richard J. Leon held on 1-16-13; Page Numbers: 1-8. Date of Issuance:9-18-14. Court Reporter/Transcriber Theresa Sorensen, Telephone number 202-354-3044, Court Reporter Email Address : theresams@erols.com.<P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at ww.dcd.uscourts.gov.<P></P> Redaction Request due 10/9/2014. Redacted Transcript Deadline set for 10/19/2014. Release of Transcript Restriction set for 12/17/2014.(Foradori, Lisa) (Entered: 09/18/2014)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/11/2015 18:06:34 | | | |
| **PACER Login:** | bk1714:3720316:0 | **Client Code:** | jwb |
| **Description:** | Docket Report | **Search Criteria:** | 1:12-cr-00155-RJL |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

Page 17 of 162          Filed: 02/23/2015          Document #1539600          USCA Case #13-3062

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO.** |
| | : | |
| v. | : | **MAGISTRATE NO. 12-MJ-292** |
| | : | |
| | : | **VIOLATION:** |
| **JAMES WENDELL BROWN,** | : | **18 U.S.C. § 2252A(a)(2)** |
| **DOB: 08/17/1961** | : | **(Distribution of Child Pornography)** |
| | : | |

### INFORMATION

The United States Attorney charges that:

### COUNT ONE

On or about March 5, 2012, in the District of Columbia, the defendant, **JAMES WENDELL BROWN**, did knowingly distribute three images of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), which items depicted prepubescent minors or minors under the age of twelve years, which items were shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, and which items were produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

(**Distribution of Child Pornography**, in violation of Title 18, United States Code, Section 2252A(a)(2))

RONALD C. MACHEN JR.
United States Attorney
D.C. Bar No. 498610

/s/ _____

ARI B. REDBORD
Assistant United States Attorney
DC Bar No.476998
U.S. Attorney's Office
555 4th Street, N.W., Room 10-413
Washington, D.C. 20530
202-252-7018
ari.redbord@usdoj.gov

2

Page 19 of 162

Filed: 02/23/2015    Document #1539600

USCA Case #13-3062

U.S. Department of Justice

Ronald C. Machen Jr.
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

January 2, 2013

**FILED**

JAN 3 0 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

By Electronic Mail

Lara Quint, Esq.
Shelli Peterson, Esq.
Assistant Federal Public Defenders
625 Indiana Avenue, Suite 550
Washington D.C.  20004

Re:   <u>United States v. James Wendell Brown</u>
       *Case No. 12-155(RJL)*

Dear Counsel:

This letter sets forth the full and complete plea offer to your client, James Wendell Brown, from the Criminal Division of the Office of the United States Attorney for the District of Columbia (hereinafter also referred to as "the Government" or "this Office"). If your client accepts the terms and conditions of this offer, please have your client execute this document in the space provided below. Upon receipt of the executed document, this letter will become the Plea Agreement. The terms of the offer are as follows:

**<u>Charges and Statutory Penalties</u>**

1.      Your client agrees to plead guilty to one count of Distribution of Child Pornography in a criminal Information, a copy of which is attached, in violation of 18 U.S.C. § 2252A(a)(2).

2.      Your client understands that pursuant to 18 U.S.C. § 2252A(b)(1), the charge carries a maximum sentence of 20 years of imprisonment (with a mandatory minimum of 5 years imprisonment), a fine of $250,000 or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made and a supervised release term of between 5 years and life pursuant to 18 US.C. § 3583(k). In addition, your client agrees to pay a special assessment of $100 per felony conviction to the Clerk of the United States District Court for the District of Columbia prior to the date of sentencing. Your client also understands that pursuant to 18 U.S.C. § 3572 and § 5E1.2 of the Sentencing Guidelines, the Court may also impose a fine that is sufficient to pay the federal government the costs of any imprisonment, term of supervised release and period of probation. Further, your client understands that if your client has two or

more convictions for a crime of violence or felony drug offense, your client may be subject to the substantially higher guideline penalties provided for in the career offender statutes and provisions of the Sentencing Guidelines.

3.     In consideration of your client's plea to the above offense, your client will not be further prosecuted criminally by this Office for the conduct set forth in the attached Statement of Offense. In addition, the United States' Attorney's Office for the Eastern District of Virginia agrees not to prosecute your client for the offenses of possession and/or receipt of child pornography, however it does not preclude the U.S. Attorney's Office for the Eastern District of Virginia from prosecuting the offense of production of child pornography should such evidence be found during the search of your client's seized computers. Moreover, the Commonwealth Attorney for Fauquier County, Virginia agrees not to prosecute your client for the offenses of possession or receipt of child pornography in connection with materials found during the search of your client's seized computer and further agrees not to prosecute your client based on allegations of child sexual abuse made by the defendant's daughter or grand-daughters as set forth in the Statement of the Offense.

### Factual Stipulations

4.     Your client agrees that the attached "Statement of the Offense" fairly and accurately describes your client's actions and involvement in the offense to which your client is pleading guilty. It is anticipated that prior to or during the plea hearing, your client will adopt and sign the Statement of the Offense as a written proffer of evidence.

### Sentencing Guidelines

5.     Your client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the guidelines and policies promulgated by the United States Sentencing Commission, Guidelines Manual 2011 (hereinafter "Sentencing Guidelines" or "U.S.S.G"). Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties stipulate to the following. However, nothing in this agreement is to be read as precluding either party from arguing for or against the applicability of any other specific offense characteristic and/or adjustment to the defendant's base offense level that is not specifically referenced in the agreement.

### A.   Offense Level under the Guidelines

### Section 2G2.2

| | |
|---|---|
| Estimated Base Offense Level | 22 |
| Applicable Specific Offense Characteristics | |
| 2G2.2(b)(2) offense involved prepubescent minors or minors under 12 | + 2 |
| 2G2.2(b)(4) offense involved sadistic/masochistic/violent material | + 4 |
| 2G2.2(b)(3)(F) distribution other than described in A through E | +2 |
| 2G2.2(b)(6) offense involved the use of a computer | + 2 |

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 20 of 162

Page 21 of 162

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

| | |
|---|---|
| 2G2.2(b)(5) offense involved pattern of activity involving the sexual abuse or exploitation of a minor | +5 |
| **Acceptance of Responsibility** | -3 |
| **Total** | **34(151-188 months)** |

**B.    Adjustment for Acceptance of Responsibility:**   Assuming your client clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through your client's allocution and subsequent conduct prior to the imposition of sentence the Government agrees that a 2-level reduction would be appropriate, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming your client has accepted responsibility as described in the previous sentence and that your client's base offense level is 16 or greater, the Government agrees that an additional 1-level reduction would be appropriate, pursuant to § 3E1.1(b), U.S.S.G., because your client has assisted authorities by providing timely notice of your client's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

**Agreement as to Sentencing Allocution**

8.      The parties further agree that a sentence within the applicable Guidelines Range established by the Sentencing Guidelines, if determined in accordance with the parties' stipulations in this Agreement, would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, § 3553(a).   However, the parties agree that your client may seek a sentence outside of the Guideline Range established by the Sentencing Guidelines and may suggest that the Court consider a sentence outside of the Guidelines range based upon the factors to be considered in imposing sentence pursuant to Title 18, United States Code, § 3553(a).

9.      Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G., § 3E1.1, and/or imposition of an adjustment for obstruction of justice, *see* U.S.S.G., § 3C1.1, regardless of any stipulation set forth above, should your client move to withdraw your client's guilty plea after it is entered, or should it be determined that your client has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) engaged in additional criminal conduct after signing this Agreement.

10.     In addition, the Government reserves its right to full allocution in any post-sentence litigation in order to defend the Court's ultimate decision on such issues.   Your client further understands that the Government retains its full right of allocution in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons.   In addition, your client acknowledges that the Government is not obligated and does not intend to file any downward departure sentencing motion under § 5K1.1 of the Sentencing Guidelines, or any post-sentence downward departure motion in this case pursuant to Rule 35(b) of

3

the Federal Rules of Criminal Procedure.

### Court Not Bound by the Plea Agreement

11.     It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines range, or other sentencing issues.   In the event that the Court considers any Guidelines adjustments, departures, or calculations different from any stipulations contained in this Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in Title 18, United States Code, § 3553(a), the parties reserve the right to answer any related inquiries from the Court.

### Court Not Bound by the Non-Mandatory Sentencing Guidelines

12.     It is understood that the sentence to be imposed upon your client is determined solely by the Court. It is understood that the Sentencing Guidelines are not binding on the Court. Your client acknowledges that your client's entry of a guilty plea to the charged offense authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence, which may be greater than the applicable Guidelines range.   The Government cannot, and does not, make any promise or representation as to what sentence your client will receive.   Moreover, it is understood that your client will have no right to withdraw your client's plea of guilty should the Court impose a sentence outside the Guidelines range.

### Restitution

12.     Your client understands that in addition to the other penalties provided by law, pursuant to 18 U.S.C. §§ 2259 and 3664, it is mandatory that the Court order your client to make restitution for the full amount of any victim(s)' compensable losses.   Because the government may not yet have identified all victims of your client's crime or know whether restitution will be requested, your client understands that the government will request that the Court order restitution for any identified victim for the full amount of his/her losses that were caused by your client's crime that is the subject of this plea agreement.

13.     Your client understands that an unanticipated request for restitution by a victim(s) or an unanticipated amount of a restitution ordered by the Court will not serve as grounds to withdraw your client's guilty plea.   Your client also understands that the Court may not decline to order restitution because of your client's economic circumstances or the fact that the victim(s) have, or may be entitled to, receive compensation for any losses from any other source. Restitution is payable immediately at the time of sentencing unless ordered otherwise by the Court.

14.     Your client further agrees to identify all assets over which he exercises control, directly or indirectly, (or has exercised such control, within the past five years).   Your client also agrees to identify all assets in which he has or had during that time any financial interest.   Your

4

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 22 of 162

Page 23 of 162

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

client agrees to take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by your client and to provide and/or consent to the release of your client's tax returns for the previous five years.

### Forfeiture

15.    The United States of America and the defendant hereby agree that the following computers, computer media, computer peripherals, and other items seized from the defendant on March 27, 2012, and currently in the custody and/or control of the Federal Bureau of Investigation were properly seized and were involved in or used in violation of Federal law by defendant:

> A.    Toshiba Satellite A-665 laptop, S/N: 9A022382K
> B.    ~~HP Hard Drive Enclosure S/N: WCAV5C664412~~ ABR LGQ
> C.    ~~Kingston 1GB USB Drive~~ ABR LGQ

The defendant agrees that such items are subject to seizure and forfeiture by the United States, and that no defense exists to the seizure and forfeiture of that property by the United States. As such, the defendant hereby relinquishes all claim, title, and interest he has in the above-referenced property to the United States of America and agrees not to oppose any civil, administrative, or judicial forfeiture of the property. In addition, defendant acknowledges that the government is continuing to analyze other items seized as part of this case on March 27, 2012.  He agrees that, if the analysis determines that those items are forfeitable, he will not contest forfeiture or destruction by the government by any means it chooses and at any time.   The defendant knowingly and voluntarily waives any right to timely notice provided for in 18 U.S.C. Section 983. In the event that the law enforcement agency having custody of the property decides not to pursue forfeiture of the property due to its minimal value, the defendant hereby abandons any interest he has in such property and consents to its destruction by the law enforcement agency.

### Waiver of Rights

16.    In entering this plea of guilty, your client understands and agrees to waive certain rights afforded to your client by the Constitution of the United States and/or by statute, including: the right against self-incrimination with respect to the offense to which your client is pleading guilty; the right to be tried by a jury, or by a judge sitting without a jury; the right to be assisted by an attorney at trial; and the right to confront and cross-examine witnesses.   Your client further agrees that the District Judge should make any Sentencing Guidelines determinations.

17.    Your client is aware that federal law, specifically 18 U.S.C. § 3742, affords your client the right to appeal the sentence in this case.   Your client is aware that the Government's factual stipulations and predictions about the calculation of the sentencing guidelines are not

5

binding on the sentencing judge. Knowing that, your client waives the right to appeal his sentence or the manner in which it was determined pursuant to 18 U.S.C. § 3742, except to the extent that (a) the Court sentences your client to a period of imprisonment longer than the statutory maximum, or (b) the Court departs upward from the applicable Sentencing Guideline range pursuant to the provisions of U.S.S.G. §5K.2 or based on a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). Further, your client reserves the right to make a collateral attack upon your client's sentence pursuant to 28 U.S.C. § 2255, if new and currently unavailable information becomes known to him. In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement.

### Release/Detention

18.     Your client agrees not to object to the Government's recommendation to the Court at the time of the plea of guilty in this case that, pursuant to 18 U.S.C. § 3143, your client be detained without bond pending your client's sentencing in this case and that if a term of incarceration is imposed that he will not seek to be released after sentencing.

### Sexual Offender Registration

19.     Your client acknowledges and agrees that pursuant to the Sex Offender Registration and Notification Act, 18 U.S.C § 2250, 42 USC §§ 16911(2), 16915(a)(1), he is required to register as a sex offender for a minimum period of 25 years and to keep the registration current in jurisdictions where he resides, where he is employed and where he is a student. He understands that the requirements for registration include providing his name, residence address, and the names and addresses of any places where he will be employed or a student, among other information. Your client understands that should he knowingly fail to comply with his obligations under the Sex Offender Registration and Notification Act, pursuant to 18 U.S.C. Code § 2250, he could be prosecuted for the offense of failure to register and subject to a term of up to ten years imprisonment, a fine or both. He further understands that compliance with the requirements of the Sex Offender Registration and Notification Act is a specific condition of supervised release pursuant to 18 U.S.C. § 3583 and that failure to comply with his obligations under the Act could subject him to revocation of supervised release in addition to prosecution for the felony offense of failure to register.

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 24 of 162

USCA Case #13-3062      Document #1539600          Filed: 02/23/2015      Page 25 of 162

### Breach of Agreement

20.    Your client understands and agrees that if, after entering this Plea Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Plea Agreement, or engages in any criminal activity prior to sentencing, your client will have breached this Plea Agreement. In the event of such a breach: (a) the Government will be free from its obligations under the Agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use against your client, directly and indirectly, in any criminal or civil proceeding, all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Agreement, including your client's statements made during proceedings before the Court pursuant to Fed. R. Crim. P. 11.

21.    Your client acknowledges discussing with you Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410, rules which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. Your client knowingly and voluntarily waives the rights which arise under these rules.

22.    Your client understands and agrees that the Government shall only be required to prove a breach of this Plea Agreement by a preponderance of the evidence. Your client further understands and agrees that the Government need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

23.    Nothing in this Agreement shall be construed to permit your client to commit perjury, to make false statements or declarations, to obstruct justice, or to protect your client from prosecution for any crimes not included within this Agreement or committed by your client after the execution of this Agreement. Your client  understands and agrees that the Government reserves the right to prosecute your client for any such offenses. Your client further understands that any perjury, false statements or declarations, or obstruction of justice relating to your client's obligations under this Agreement shall constitute a breach of this Agreement. However, in the event of such a breach, your client will not be allowed to withdraw this guilty plea.

### Waiver of Statute of Limitations

24.    It is further agreed that should the conviction following your client's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any

7

counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against your client, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.   It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

**Complete Agreement**

25.   No other agreements, promises, understandings, or representations have been made by the parties or their counsel than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, defense counsel, and an Assistant United States Attorney for the District of Columbia.

26.   Your client further understands that this Agreement is binding only upon the Criminal and Superior Court Divisions of the United States Attorney's Office for the District of Columbia. This Agreement does not bind the Civil Division of this Office or any other United States Attorney's Office, nor does it bind any other state, local, federal, or military prosecutor. Specifically, it does not preclude the U.S. Attorney's Office for the Eastern District of Virginia from prosecuting the offense of production of child pornography should such evidence be found during the search of your client's seized computers.

27.   If the foregoing terms and conditions are satisfactory, your client may so indicate by signing the Agreement in the space indicated below and returning the original to me once it has been signed by your client and by you or other defense counsel.

Sincerely yours,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY

By: 
ARI B. REDBORD
ASSISTANT UNITED STATES ATTORNEY

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 26 of 162

8

## DEFENDANT'S ACCEPTANCE

I have read this Plea Agreement and have discussed it with my attorneys Lara Quint and Shelli Peterson, Esquires.   I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound.   No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully.   I am pleading guilty because I am in fact guilty of the offense identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Plea Agreement.   I am satisfied with the legal services provided by my attorney in connection with this Plea Agreement and matters related to it.

Date: _1/30/2013_ _____

_____
James Wendell Brown
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this Plea Agreement, reviewed them with my client, and discussed the provisions of the Agreement with my client, fully.   These pages accurately and completely sets forth the entire Plea Agreement.   I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: _1/30/2013_ _____

_____
Lara Quint, Esquire
Shelli Peterson, Esquire
Attorney for the Defendant

U.S. Department of Justice

Ronald C. Machen Jr.
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

April 29, 2013

By Electronic Mail

Lara Quint, Esq.
Shelli Peterson, Esq.
Assistant Federal Public Defenders
625 Indiana Avenue, Suite 550
Washington D.C.  20004

**FILED**

**JUN 1 9 2013**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Re:   *United States v. James Wendell Brown*
      *Case No. 12-155(RJL)*

Dear Counsel:

This letter sets forth the full and complete plea offer to your client, James Wendell Brown, from the Criminal Division of  the Office of the United States Attorney for the District of Columbia (hereinafter also referred to as "the Government" or "this Office").  If your client accepts the terms and conditions of this offer, please have your client execute this document in the space provided below.  Upon receipt of the executed document, this letter will become the Plea Agreement.  The terms of the offer are as follows:

**Charges and Statutory Penalties**

1.       Your client agrees to plead guilty to one count of Distribution of Child Pornography in a criminal Information, a copy of which is attached, in violation of 18 U.S.C. § 2252A(a)(2).

2.       Your client understands that pursuant to 18 U.S.C. § 2252A(b)(1), the charge carries a maximum sentence of 20 years of imprisonment (with a mandatory minimum of 5 years imprisonment), a fine of $250,000 or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made and a supervised release term of between 5 years and life pursuant to 18 US.C. § 3583(k).  In addition, your client agrees to pay a special assessment of $100 per felony conviction to the Clerk of the United States District Court for the District of Columbia prior to the date of sentencing.   Your client also understands that pursuant to 18 U.S.C. § 3572 and § 5E1.2 of the Sentencing Guidelines, the Court may also impose a fine that is sufficient to pay the federal government the costs of any imprisonment, term of supervised release and period of probation.  Further, your client understands that if your client has two or

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 28 of 162

more convictions for a crime of violence or felony drug offense, your client may be subject to the substantially higher guideline penalties provided for in the career offender statutes and provisions of the Sentencing Guidelines.

3.      In consideration of your client's plea to the above offense, your client will not be further prosecuted criminally by this Office for the conduct set forth in the attached Statement of Offense.   In addition, the United States' Attorney's Office for the Eastern District of Virginia agrees not to prosecute your client for the offenses of possession and/or receipt of child pornography, however it does not preclude the U.S. Attorney's Office for the Eastern District of Virginia from prosecuting the offense of production of child pornography should such evidence be found during the search of your client's seized computers. Moreover, the Commonwealth Attorney for Fauquier County, Virginia agrees not to prosecute your client for the offenses of possession or receipt of child pornography in connection with materials found during the search of your client's seized computer and further agrees not to prosecute your client based on allegations of child sexual abuse made by the defendant's daughter or grand-daughters as set forth in the Statement of the Offense.

## Factual Stipulations

4.      Your client agrees that the attached "Statement of the Offense" fairly and accurately describes your client's actions and involvement in the offense to which your client is pleading guilty.  It is anticipated that prior to or during the plea hearing, your client  will adopt and sign the Statement of the Offense as a written proffer of evidence.

## Sentencing Guidelines

5.      Your client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the guidelines and policies promulgated by the United States Sentencing Commission, Guidelines Manual 2011 (hereinafter "Sentencing Guidelines" or "U.S.S.G"). Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties stipulate to the following. However, nothing in this agreement is to be read as precluding either party from arguing for or against the applicability of any other specific offense characteristic and/or adjustment to the defendant's base offense level that is not specifically referenced in the agreement.

A.      **Offense Level under the Guidelines**

**Section 2G2.2**

| | |
|---|---|
| Estimated Base Offense Level | 22 |
| Applicable Specific Offense Characteristics | |
| 2G2.2(b)(2) offense involved prepubescent minors or minors under 12 | + 2 |
| 2G2.2(b)(3)(F) distribution other than described in A through E | +2 |
| 2G2.2(b)(6) offense involved the use of a computer | + 2 |

25

USCA Case #13-3062     Document #1539600     Filed: 02/23/2015     Page 30 of 162

| | |
|---|---|
| 2G2.2(b)(5) offense involved pattern of activity involving the sexual abuse or exploitation of a minor | +5 |
| **Acceptance of Responsibility** | -3 |
| **Total** | **30(97-121 months)** |

**B.   Adjustment for Acceptance of Responsibility:**   Assuming your client clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through your client's allocution and subsequent conduct prior to the imposition of sentence the Government agrees that a 2-level reduction would be appropriate, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming your client has accepted responsibility as described in the previous sentence and that your client's base offense level is 16 or greater, the Government agrees that an additional 1-level reduction would be appropriate, pursuant to § 3E1.1(b), U.S.S.G., because your client has assisted authorities by providing timely notice of your client's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

## Agreement as to Sentencing Allocution

8.      The parties further agree that a sentence within the applicable Guidelines Range established by the Sentencing Guidelines, if determined in accordance with the parties' stipulations in this Agreement, would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, § 3553(a).   However, the parties agree that your client may seek a sentence outside of the Guideline Range established by the Sentencing Guidelines and may suggest that the Court consider a sentence outside of the Guidelines range based upon the factors to be considered in imposing sentence pursuant to Title 18, United States Code, § 3553(a).

9.      Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G., § 3E1.1, and/or imposition of an adjustment for obstruction of justice, *see* U.S.S.G., § 3C1.1, regardless of any stipulation set forth above, should your client move to withdraw your client's guilty plea after it is entered, or should it be determined that your client has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) engaged in additional criminal conduct after signing this Agreement.

10.     In addition, the Government reserves its right to full allocution in any post-sentence litigation in order to defend the Court's ultimate decision on such issues.   Your client further understands that the Government retains its full right of allocution in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons.   In addition, your client acknowledges that the Government is not obligated and does not intend to file any downward departure sentencing motion under § 5K1.1 of the Sentencing Guidelines, or any post-sentence downward departure motion in this case pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

3

Page 31 of 162

Filed: 02/23/2015   Document #1539600   USCA Case #13-3062

## Court Not Bound by the Plea Agreement

11.     It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines range, or other sentencing issues.   In the event that the Court considers any Guidelines adjustments, departures, or calculations different from any stipulations contained in this Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in Title 18, United States Code, § 3553(a), the parties reserve the right to answer any related inquiries from the Court.

## Court Not Bound by the Non-Mandatory Sentencing Guidelines

12.     It is understood that the sentence to be imposed upon your client is determined solely by the Court. It is understood that the Sentencing Guidelines are not binding on the Court. Your client acknowledges that your client's entry of a guilty plea to the charged offense authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence, which may be greater than the applicable Guidelines range.   The Government cannot, and does not, make any promise or representation as to what sentence your client will receive.   Moreover, it is understood that your client will have no right to withdraw your client's plea of guilty should the Court impose a sentence outside the Guidelines range.

## Restitution

12.     Your client understands that in addition to the other penalties provided by law, pursuant to 18 U.S.C. §§ 2259 and 3664, it is mandatory that the Court order your client to make restitution for the full amount of any victim(s)' compensable losses.   Because the government may not yet have identified all victims of your client's crime or know whether restitution will be requested, your client understands that the government will request that the Court order restitution for any identified victim for the full amount of his/her losses that were caused by your client's crime that is the subject of this plea agreement.

13.     Your client understands that an unanticipated request for restitution by a victim(s) or an unanticipated amount of a restitution ordered by the Court will not serve as grounds to withdraw your client's guilty plea.   Your client also understands that the Court may not decline to order restitution because of your client's economic circumstances or the fact that the victim(s) have, or may be entitled to, receive compensation for any losses from any other source. Restitution is payable immediately at the time of sentencing unless ordered otherwise by the Court.

14.     Your client further agrees to identify all assets over which he exercises control, directly or indirectly, (or has exercised such control, within the past five years).   Your client also agrees to identify all assets in which he has or had during that time any financial interest.   Your client agrees to take all steps as requested by the Government to obtain from any other parties by

4

any lawful means any records of assets owned at any time by your client and to provide and/or consent to the release of your client's tax returns for the previous five years.

### Forfeiture

15.   The United States of America and the defendant hereby agree that the following computers, computer media, computer peripherals, and other items seized from the defendant on March 27, 2012, and currently in the custody and/or control of the Federal Bureau of Investigation were properly seized and were involved in or used in violation of Federal law by defendant:

> A.   Toshiba Satellite A-665 laptop, S/N: 9A022382K
>
> B.   HP Hard Drive Enclosure S/N: WCAV5C664412
>
> C.   Kingston 1GB USB Drive

The defendant agrees that such items are subject to seizure and forfeiture by the United States, and that no defense exists to the seizure and forfeiture of that property by the United States. As such, the defendant hereby relinquishes all claim, title, and interest he has in the above-referenced property to the United States of America and agrees not to oppose any civil, administrative, or judicial forfeiture of the property. In addition, defendant acknowledges that the government is continuing to analyze other items seized as part of this case on March 27, 2012.  He agrees that, if the analysis determines that those items are forfeitable, he will not contest forfeiture or destruction by the government by any means it chooses and at any time.  The defendant knowingly and voluntarily waives any right to timely notice provided for in 18 U.S.C. Section 983. In the event that the law enforcement agency having custody of the property decides not to pursue forfeiture of the property due to its minimal value, the defendant hereby abandons any interest he has in such property and consents to its destruction by the law enforcement agency.

### Waiver of Rights

16.   In entering this plea of guilty, your client understands and agrees to waive certain rights afforded to your client by the Constitution of the United States and/or by statute, including: the right against self-incrimination with respect to the offense to which your client is pleading guilty; the right to be tried by a jury, or by a judge sitting without a jury; the right to be assisted by an attorney at trial; and the right to confront and cross-examine witnesses.   Your client further agrees that the District Judge should make any Sentencing Guidelines determinations.

17.   Your client is aware that federal law, specifically 18 U.S.C. § 3742, affords your client the right to appeal the sentence in this case.   Your client is aware that the Government's factual stipulations and predictions about the calculation of the sentencing guidelines are not binding on the sentencing judge.   Knowing that, your client waives the right to appeal his

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 32 of 162

sentence or the manner in which it was determined pursuant to 18 U.S.C. § 3742, except to the extent that (a) the Court sentences your client to a period of imprisonment longer than the statutory maximum, or (b) the Court departs upward from the applicable Sentencing Guideline range pursuant to the provisions of U.S.S.G. §5K.2 or based on a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).   Further, your client reserves the right to make a collateral attack upon your client's sentence pursuant to 28 U.S.C. § 2255, if new and currently unavailable information becomes known to him.   In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court.   Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement.

### Release/Detention

18.     Your client agrees not to object to the Government's recommendation to the Court at the time of the plea of guilty in this case that, pursuant to 18 U.S.C. § 3143, your client be detained without bond pending your client's sentencing in this case and that if a term of incarceration is imposed that he will not seek to be released after sentencing.

### Sexual Offender Registration

19.     Your client acknowledges and agrees that pursuant to the Sex Offender Registration and Notification Act, 18 U.S.C   § 2250, 42 USC   §§ 16911(2), 16915(a)(1), he is required to register as a sex offender for a minimum period of 25 years and to keep the registration current in jurisdictions where he resides, where he is employed and where he is a student. He understands that the requirements for registration include providing his name, residence address, and the names and addresses of any places where he will be employed or a student, among other information. Your client understands that should he knowingly fail to comply with his obligations under the Sex Offender Registration and Notification Act, pursuant to 18 U.S.C. Code § 2250, he could be prosecuted for the offense of failure to register and subject to a term of up to ten years imprisonment, a fine or both. He further understands that compliance with the requirements of the Sex Offender Registration and Notification Act is a specific condition of supervised release pursuant to 18 U.S.C. § 3583 and that failure to comply with his obligations under the Act could subject him to revocation of supervised release in addition to prosecution for the felony offense of failure to register.

6

USCA Case #13-3062     Document #1539600          Filed: 02/23/2015     Page 34 of 162

**Breach of Agreement**

20.     Your client understands and agrees that if, after entering this Plea Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Plea Agreement, or engages in any criminal activity prior to sentencing, your client will have breached this Plea Agreement.  In the event of such a breach:  (a) the Government will be free from its obligations under the Agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use against your client, directly and indirectly, in any criminal or civil proceeding, all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Agreement, including your client's statements made during proceedings before the Court pursuant to Fed. R. Crim. P. 11.

21.     Your client acknowledges discussing with you Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410, rules which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn.   Your client knowingly and voluntarily waives the rights which arise under these rules.

22.     Your client understands and agrees that the Government shall only be required to prove a breach of this Plea Agreement by a preponderance of the evidence.   Your client further understands and agrees that the Government need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

23.     Nothing in this Agreement shall be construed to permit your client to commit perjury, to make false statements or declarations, to obstruct justice, or to protect your client from prosecution for any crimes not included within this Agreement or committed by your client after the execution of this Agreement.   Your client   understands and agrees that the Government reserves the right to prosecute your client for any such offenses.   Your client further understands that any perjury, false statements or declarations, or obstruction of justice relating to your client's obligations under this Agreement shall constitute a breach of this Agreement.   However, in the event of such a breach, your client will not be allowed to withdraw this guilty plea.

**Waiver of Statute of Limitations**

24.     It is further agreed that should the conviction following your client's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any

7

counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against your client, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.   It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

### Complete Agreement

25.   No other agreements, promises, understandings, or representations have been made by the parties or their counsel than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, defense counsel, and an Assistant United States Attorney for the District of Columbia.

26.   Your client further understands that this Agreement is binding only upon the Criminal and Superior Court Divisions of the United States Attorney's Office for the District of Columbia. This Agreement does not bind the Civil Division of this Office or any other United States Attorney's Office, nor does it bind any other state, local, federal, or military prosecutor. Specifically, it does not preclude the U.S. Attorney's Office for the Eastern District of Virginia from prosecuting the offense of production of child pornography should such evidence be found during the search of your client's seized computers.

27.   If the foregoing terms and conditions are satisfactory, your client may so indicate by signing the Agreement in the space indicated below and returning the original to me once it has been signed by your client and by you or other defense counsel.

RONALD C. MACHEN JR.
United States Attorney

BY:

ARI B. REDBORD
Assistant United States Attorney
D.C. Bar 476998
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7018

8

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 36 of 162

## DEFENDANT'S ACCEPTANCE

I have read this Plea Agreement and have discussed it with my attorneys Lara Quint and Shelli Peterson, Esquires.  I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound.   No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully.   I am pleading guilty because I am in fact guilty of the offense identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Plea Agreement.  I am satisfied with the legal services provided by my attorney in connection with this Plea Agreement and matters related to it.

Date: 6/19/2013

James Wendell Brown
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this Plea Agreement, reviewed them with my client, and discussed the provisions of the Agreement with my client, fully.  These pages accurately and completely sets forth the entire Plea Agreement.  I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: 6/19/2013

Lara Quint, Esquire
Shelli Peterson, Esquire
Attorney for the Defendant

9

Page 37 of 162

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,:          CRIMINAL NO. 12-155(RJL)
                              :
          v.                  :
                              :
JAMES WENDELL BROWN           :          **FILED**
          Defendant.          :
                                         JUN 1 9 2013

                                         Clerk, U.S. District & Bankruptcy
                                         Courts for the District of Columbia

### STATEMENT OF THE OFFENSE

The parties in this case, the United States of America and the defendant, James Wendell Brown, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1.     Leading up to March 5, 2012, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, Detective Palchak ("UC") created an online profile on a predicated social network site which is a site frequented by individuals that have a sexual interest in children.

2.     On March 5, 2012, at approximately 1:05 p.m., an individual using the screen name "justluckyjwb" initiated a private instant message chat with the UC. During the early portion of the instant message chat, "justluckyjwb" – who was later identified as the defendant, James Wendell Brown (hereinafter "BROWN") – identified himself as a 50-year-old male from Warrenton, Virginia and asked the UC, "[W]hat age range do you like[?]" When the UC responded that his preference was for under 12, BROWN responded, "3-8 best . . . love them flat

33

and smooth." When the UC inquired if BROWN had "any exp[erience]," BROWN responded, "I used to enjoy my grand daughter but she was taken from me a year ago . . . I only got her to do oral on me . . . her grandma was always to close to do anymore." BROWN added that he "started m[]ine at 2 ½ training her . . . at 3 ½ she could deep throat me . . .she had no gag reflex . . . I used her mouth until 5 when she was taken from me."

  3. During the course of the March 5, 2012, online conversation, the UC indicated that he was "active with [his] 12 year-old," to which BROWN replied, "thats very sweet" and asked if the child was a boy or girl. BROWN stated, "I'm looking for a new playmate . . .is she petite or a big girl."

  4. As the online exchange continued, the UC sent BROWN a morphed, clothed picture of the purported child, to which BROWN responded, "[V]ery pretty girl . . . does she like to receive oral or give[?]" When the UC stated that it had been a fantasy to see the purported child perform oral sex on a "strange cock," BROWN responded, "[L]ike I said I'm only an hour away." The UC and BROWN thereafter discussed the possibility of meeting on Friday, March 9, 2012, for purposes of engaging in sexual acts with the purported 12-year-old girl. During the online chat, BROWN noted that it had been approximately one year since he had engaged in sexual acts with his grand-daughter. BROWN also noted that he missed it "more than you can dream."

  5. As the online exchange continued, BROWN sent the UC three images of child pornography. The first image sent by BROWN depicted a close-up view of a female vagina that appears to be of a child under the age of 18. When the UC asked if the image depicted "how your grand-daughter's looked," BROWN replied, "[Y]es but that is not her." The second image

2

Page 39 of 162

Filed: 02/23/2015      Document #1539600      USCA Case #13-3062

sent by BROWN depicted two prepubescent female children masturbating an adult male penis. The third image sent by BROWN depicted two prepubescent female children, both nude with an adult male, with one performing oral sex on the adult male's penis and the other kissing the adult male on the mouth. After sending the third image, BROWN stated, "I love that little mouth tight around that cock."

6.      In discussing his grand-daughter again, BROWN noted that "she would only suck me . . . I was never alone long enuff to do anything more." When asked if he ever ejaculated, BROWN responded, "[N]ot in her . . . her grandma was always in the next room." He also explained, "[M]y grand daughter could deep throat me . . . she had no gag reflex . . . every time I could I would pull it out and she would just run up and take it in her little mouth."

7.      Towards the end of the March 5, 2012, online chat, BROWN inquired, "Are you looking to get your daughter after school Friday for the weekend[?]" When the UC responded affirmatively and asked, "[I]s that good for you." BROWN replied, "Yes." BROWN also noted, "I look forward to meeting you and your little girl . . . I hope she is willing to partake i[n] a little fun and games." BROWN added, "Ok I look forward to hearing from you later this week to let me know if you want to meet . . . I will look for you and your daughter."

8.      During the course of this investigation, members of the FBI Child Exploitation Task Force were able to confirm through the Fauquier County Sheriff's Office that BROWN was under investigation for sexual abuse charges in Fauquier County, Virginia involving his granddaughters – K.S., now age 7 and L.S., now age 4. In a statement to Fauquier County authorities, K.S. disclosed that BROWN made her sit on his lap on multiple occasions while BROWN moved his body back and forth and side to side effectively rubbing his clothed penis on

her buttocks on many occasions and rubbed his hands on her unclothed buttocks on one occasion.

10.    In the course of its investigation, Fauquier County authorities also learned that, on at least one occasion, a witness walked in on L.S., age 3 at the time, straddling BROWN. Specifically, an adult eyewitness stated that she observed BROWN laying in bed with L.S. sitting on his lap straddling him. They were face-to-face and L.S., wearing a dress, was leaning on BROWN'S stomach. BROWN'S hands were on the child's buttocks.

11.    In the course of its investigation of this case, the government also learned of allegations of sexual abuse involving BROWN'S biological daughter J.W. – age 6 at the time of the allegations (now age 14). The child alleged that this would happen when she was approximately 3-years-old.

12.    BROWN concedes that the government could prove the abuse set forth above by clear and convincing evidence.

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 40 of 162

4

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 41 of 162

## DEFENDANT'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have discussed it with my attorneys, Lara Quint and Shelli Peterson, Esquires. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 6/19/2013

James Wendell Brown
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 6/19/2013

Lara Quint, Esq.
Shelli Peterson, Esq.
Attorneys for James Wendell Brown

5

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 42 of 162

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 12-155(RJL)** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES WENDELL BROWN** | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case.  For the reasons set forth herein, the government recommends a sentence of 97 months of incarceration, based on the defendant's offense level 30 and the charged conduct as set forth below, with a term of supervised release of not less than ten years, with the conditions requested in the Presentence Investigation Report (PSR).

## PROCEDURAL BACKGROUND

1.     On January 30, 2013, the defendant James Wendell Brown pled guilty pursuant to a plea agreement to one count of distribution of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2).

2.     In the Presentence Investigation Report, dated March 22, 2013, and consistent with the parties' plea agreement in this case, the defendant's base offense level was 22.  That base offense level was increased by 2 levels because the material involved a prepubescent minor or minor below the age of 12; by an additional 2 levels because the offense involved distribution; by an additional 5 levels because the offense involved a pattern of activity involving the sexual abuse

1

Filed: 02/23/2015          Page 43 of 162

Document #1539600

USCA Case #13-3062

of a minor(s); and by an additional 2 levels because the offense involved the use of a computer; –

for a total Adjusted Offense Level of 33.   See PSR ¶¶ 27-40.

3.      With a three-level decrease for acceptance of responsibility, the defendant's total

offense level is 30.   The defendant's total criminal history score is zero.

## FACTUAL BACKGROUND

4.      Leading up to March 5, 2012, Metropolitan Police Department Detective Timothy

Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD

Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.  In that

capacity, Detective Palchak ("UC") created an online profile on a predicated social network site

which is a site frequented by individuals that have a sexual interest in children.

5.      On March 5, 2012, at approximately 1:05 p.m., an individual using the screen

name "justluckyjwb" initiated a private instant message chat with the UC.  During the early

portion of the instant message chat, "justluckyjwb" – who was later identified as the defendant,

James Wendell Brown (hereinafter "BROWN") – identified himself as a 50-year-old male from

Warrenton, Virginia and asked the UC, "[W]hat age range do you like[?]"   When the UC

responded that his preference was for under 12, BROWN responded, "3-8 best . . . love them flat

and smooth."   When the UC inquired if BROWN had "any exp[erience]," BROWN responded,

"I used to enjoy my grand daughter but she was taken from me a year ago . . . I only got her to do

oral on me . . . her grandma was always to close to do anymore."   BROWN added that he

"started m[]ine at 2 ½ training her . . . at 3 ½ she could deep throat me . . .she had no gag reflex .

. . I used her mouth until 5 when she was taken from me."

6.      During the course of the March 5, 2012, online conversation, the UC indicated

USCA Case #13-3062       Document #1539600       Filed: 02/23/2015       Page 44 of 162

that he was "active with [his] 12 year-old," to which BROWN replied, "thats very sweet" and asked if the child was a boy or girl. BROWN stated, "I'm looking for a new playmate . . .is she petite or a big girl."

7.      As the online exchange continued, the UC sent BROWN a morphed, clothed picture of the purported child, to which BROWN responded, "[V]ery pretty girl . . . does she like to receive oral or give[?]" When the UC stated that it had been a fantasy to see the purported child perform oral sex on a "strange cock," BROWN responded, "[L]ike I said I'm only an hour away." The UC and BROWN thereafter discussed the possibility of meeting on Friday, March 9, 2012, for purposes of engaging in sexual acts with the purported 12-year-old girl. During the online chat, BROWN noted that it had been approximately one year since he had engaged in sexual acts with his grand-daughter. BROWN also noted that he missed it "more than you can dream."

8.      As the online exchange continued, BROWN sent the UC three images of child pornography. The first image sent by BROWN depicted a close-up view of a female vagina that appears to be of a child under the age of 18. When the UC asked if the image depicted "how your grand-daughter's looked," BROWN replied, "[Y]es but that is not her." The second image sent by BROWN depicted two prepubescent female children masturbating an adult male penis. The third image sent by BROWN depicted two prepubescent female children, both nude with an adult male, with one performing oral sex on the adult male's penis and the other kissing the adult male on the mouth. After sending the third image, BROWN stated, "I love that little mouth tight around that cock."

9.      In discussing his grand-daughter again, BROWN noted that "she would only suck

3

me . . . I was never alone long enuff to do anything more." When asked if he ever ejaculated, BROWN responded, "[N]ot in her . . . her grandma was always in the next room." He also explained, "[M]y grand daughter could deep throat me . . . she had no gag reflex . . . every time I could I would pull it out and she would just run up and take it in her little mouth."

10.     Towards the end of the March 5, 2012, online chat, BROWN inquired, "Are you looking to get your daughter after school Friday for the weekend[?]" When the UC responded affirmatively and asked, "[I]s that good for you," BROWN replied, "Yes." BROWN also noted, "I look forward to meeting you and your little girl . . . I hope she is willing to partake i[n] a little fun and games." BROWN added, "Ok I look forward to hearing from you later this week to let me know if you want to meet . . . I will look for you and your daughter."

11.     During the course of this investigation, members of the FBI Child Exploitation Task Force were able to confirm through the Fauquier County Sheriff's Office that BROWN was under investigation for sexual abuse charges in Fauquier County, Virginia involving his granddaughters – K.S., now age 7 and L.S., now age 4. In a statement to Fauquier County authorities, K.S. disclosed that BROWN made her sit on his lap on multiple occasions while BROWN moved his body back and forth and side to side effectively rubbing his clothed penis on her buttocks on many occasions and rubbed his hands on her unclothed buttocks on one occasion.

12.     In the course of its investigation, Fauquier County authorities also learned that, on at least one occasion, a witness walked in on L.S., age 3 at the time, straddling BROWN. Specifically, an adult eyewitness stated that she observed BROWN laying in bed with L.S. sitting on his lap straddling him. They were face-to-face and L.S., wearing a dress, was leaning on BROWN'S stomach. BROWN'S hands were on the child's buttocks.

4

Page 45 of 162    Filed: 02/23/2015    Document #1539600    USCA Case #13-3062

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 46 of 162

13.     In the course of its investigation of this case, the government also learned of allegations of sexual abuse involving BROWN'S biological daughter J.W.  – age 6 at the time of the allegations (now age 14).   The child alleged that this would happen when she was approximately 3-years-old.

14.  BROWN concedes that the government could prove the abuse set forth above by clear and convincing evidence.

<div align="center">GOVERNMENT'S SENTENCING RECOMMENDATION</div>

A.     **Application of the Federal Guidelines post-*Booker***

15.     In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).   As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1).   Booker, 125 S. Ct. at 756.

16.     As the Supreme Court has stated, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.   See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").   After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a).   Id.   These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness

Page 47 of 162     Filed: 02/23/2015     Document #1539600     USCA Case #13-3062

of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

17.   The Guidelines themselves seek to implement – in a fair and uniform way – these factors.   A sentencing court must make an "individualized assessment based on the facts presented."   <u>Id.</u> at 49.

## GOVERNMENT'S SENTENCING RECOMMENDATION

18.   **A.   Application of the Federal Guidelines post-*Booker***

18.   In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).   As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1).   <u>Booker</u>, 125 S. Ct. at 756.

19.   As the Supreme Court has stated, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.   <u>See</u> <u>United States v. Gall</u>, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").   After giving both parties an

opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). Id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

20.     The Guidelines themselves seek to implement – in a fair and uniform way – these factors.  A sentencing court must make an "individualized assessment based on the facts presented."  Id. at 49.

### B.     Applicability of the United States Sentencing Guidelines In Light Of Sentencing Commission's Report

21.     On February 27, 2013, the Sentencing Commission released its Report to Congress which examines federal sentencing policy in child pornography cases, focusing primarily on non-production offenses under USSG § 2G2.2.  Review by the Commission of sentencing issues has been ongoing for over one year.

22.     The Report states, among other things, that child pornography offenses inherently involve the sexual abuse and exploitation of children, and frequently portray graphic sexual

7

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 48 of 162

Filed: 02/23/2015    Page 49 of 162

Document #1539600

USCA Case #13-3062

abuse of very young victims. Some offenders, the Report notes, intentionally collect child pornography depicting the sexual torture of children, including infants and toddlers. The Report concludes that child pornography victims are specifically harmed by the distribution of their images over the Internet, and that many victims suffer lifelong harm by knowing their images are being used by offenders for sexual gratification, and potentially grooming of new victims. The Report further emphasizes the growing problem of online child pornography communities that facilitate and validate child sexual exploitation.

23.     The Report also identifies a number of purported problems with the current child pornography non-production guidelines ("CP Guidelines"). In particular, the Report notes that between 2004 and 2010, the average guideline minimum rose from 50.1 months incarceration to 117.5 months incarceration. During the same time period, within-guidelines child pornography sentences declined from 83.2 percent of cases in 2004 (pre-*Booker*) to 32.8 percent. The Report emphasizes that the majority of sentencing enhancements now apply to most offenders, thereby failing to differentiate between more or less culpable offenders. Specifically, out of the six specific offense characteristics ("SOCs") in USSG § 2G2.2, four now apply to the typical non-production offender, together accounting for 13 offense levels.

24.     According to the Commission, a growing number of courts believe the current sentencing guidelines result in overly severe ranges for certain offenders, contributing to the substantial, and growing, volume of below-guidelines sentences.

25.     The Commission asks Congress for permission to amend the CP Guidelines to address the problems identified in the Report. (In large part, the CP Guidelines cannot be

8

amended without congressional action). Congress itself has yet to signal whether it finds the Commission's views on these issues to be persuasive. We cannot predict what, if anything, Congress may choose to do in response to the Report. Over the past decade, however, including as recently as December of 2012, Congress has consistently raised the penalties for child pornography trafficking offenses.

26.     The government recognizes that the Guidelines do not always perfectly align with all aspects of an offender's culpability. The Report's critique does not, however, suggest that courts should reflexively ignore or depart downward from the SOCs contained in the current CP Guidelines. Rather, the Report counsels, and the government agrees, that certain aggravating factors currently unaccounted for in the CP Guidelines should be considered at sentencing, per 18 U.S.C.§ 3553(a), in conjunction with the SOCs provided by USSG § 2G2.2.

27.     While there may be eventual changes to the guidelines, Congress has yet to provide any indication of its views, including whether any particular Specific Offense Characteristic (SOC) should be eliminated.  Unless and until the entire guideline is modified, cherry-picking one particular SOC as inapplicable without considering its relationship to the rest of the guideline and the base offense level is inappropriate.  Indeed, the 2G2.2 base offense level was purposefully set lower to account for the frequent application of certain SOCs including the use of a computer SOC. *See USSC 2009 History of the Child Pornography Guidelines Report*, at 44-47.  For example, if a Court is inclined to ignore the use of a computer SOC, then it should augment the base offense level accordingly.  Again, if and when Congress makes changes to the guidelines, those changes would not likely simply eliminate certain SOCs without replacing them

9

USCA Case #13-3062      Document #1539600          Filed: 02/23/2015      Page 50 of 162

Page 51 of 162

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

with arguably more relevant SOCs which would better distinguish among and between more or less culpable offenders.  For example, while Congress (or a Court) may conclude that it is inappropriate to enhance for the use of a computer, it may be very appropriate to enhance for offender sophistication if the offender used encryption, or to enhance for an offender's participation in an online community, such as a bulletin board (as the defendant did in this case).

28.    In addressing the individual SOCs that have been applied in this case, the government submits that they are all applicable and address this defendant's specific conduct. The defendant will likely argue that the child pornography SOCs, particularly those applied in this case, apply to almost every defendant and, therefore, it follows, that the Court should discount or ignore them in fashioning a sentence.  The government disagrees as it pertains to each of the SOCs at issue in this case.

(a)    **Use of a Computer (two level enhancement)**: While the government acknowledges that the use of a computer SOC is applicable to the vast majority of child pornography offenses, unless and until Congress replaces this SOC with others that take into account factors such as (a) communication/group membership which would account for offenders, such as this defendant, who communicated or associated with a others concerning the sexual exploitation of children on predicated social network sites and chatrooms; (b) duration of conduct which would account for offenders, like this defendant, who have been involved with the sexual exploitation of children over a long period of time; and (c) offender sophistication which would account for offenders who have use technology to evade detection by law enforcement. The defendant met the UC in a predicated social network site frequented by individuals who have

10

a sexual interest in children.

(b)     **Distribution (two level enhancement)**: The government believes that this SOC should increase the guideline range for offenses, like this one, that involved distribution rather than possession of child pornography.

(c )    **Material involved a prepubescent minor or minor below the age of 12 (two level enhancement)**: The government believes that this SOC should increase the guideline range based the age of the victims depicted in those images.   The fact that the victims portrayed in images of child pornogrpahy have become younger is not a reason to ignore this SOC.   To the contrary, there are many cases with images that do not depict very young children engaged in sexual acts and those defendants should be treated differently.   Of the three images that he distributed, two of those images involve prepubescent children engaged in sexual acts with adult men.

(d)     **Pattern Of Activity (five level enhancement)**: Finally, the defendant, in this case, concedes that the five point enhancement for pattern of activity does apply.

29.     The government would submit that in this case the guidelines account for the factors set forth in Section 3553.   In assessing the 3553 factors, particularly the goals of reflecting the seriousness of the offense and the protection of the public, 97 months is an appropriate sentence in this case.   The defendant engaged in a lengthy and graphic chat with the undercover officer during which, in his most honest moments, he talked openly about sexually abusing his granddaughters.   During the course of that chat the defendant distributed three images of child pornography.   Those images included: (1) a close-up view of a female vagina

USCA Case #13-3062      Document #1539600          Filed: 02/23/2015      Page 52 of 162

Page 53 of 162

Filed: 02/23/2015   Document #1539600

USCA Case #13-3062

that appears to be of a child under the age of 18; (2) two prepubescent female children masturbating an adult male penis; and (3) two prepubescent female children, both nude with an adult male, with one performing oral sex on the adult male's penis and the other kissing the adult male on the mouth.  While, there are only three images involved in this case, these images involve prepubescent children engaged in sexual acts.  The fact that there were only three images distributed is also accounted for in the fact that the defendant is not subject to the SOC for number of images.

30.     This case is unique from any of the cases cited by the defendant in that the defendant acknowledged, both in the chat with the undercover officer, and in the plea agreement in which he agreed that the government could prove prior hands-on offenses by clear and convincing evidence, that he has sexually abused real children.  This defendant engaged in serious conduct and, has been operating as child predator for years despite his criminal record. He presents a grave danger to the community and should be sentenced accordingly.

31.     Finally, it should be noted that the government is allocuting to the low end of the guidelines not because the government believes that any "low end" sentence is appropriate in this case or because the government believes that it would be reasonable for this Court to sentence below the guidelines.  The government recommends 97 months because it is a just and reasonable sentence based on the factors discussed above as well as the fact that the defendant accepted responsibility in this case.  If the defendant had not pled guilty and accepted responsibility, the government would be asking for a much higher sentence.

### B.   Basis for Government's Recommendation

32.     The government submits that a sentence of 97 months is appropriate, warranted, and in the best interests of justice in this case.  A sentence of 97 months takes into account the fact that the defendant distributed only three images of child pornography.  However, the five point enhancement also takes into account that the defendant has engaged in a pattern of activity when it comes to the sexual exploitation of children.

### *Nature and circumstances of the offenses*

33.     The defendant's actions in this case are deeply disturbing.  The defendant engaged in a lengthy online chat relating to his desire to engage in sexual acts with children with an undercover detective, whom the defendant believed had sexual access to a fictional 12-year-old girl.  The defendant, who wrote that he preferred under 12 -- "3-8 is best . . . love them flat and smooth," – told the UC that he, " . . . used to enjoy his granddaughter, but she was taken away from me a year ago . . . I only got her to do oral on me . . . her grandma was always too close to do anymore."  The defendant continued, "I started mine at 2 ½ training her . . . at 3 ½ she could deep throat me . . . she had no gag reflex . . . I used her mouth until 5 when she was taken from me."  The defendant has acknowledged that the government could prove the sexual abuse of his granddaughters by clear and convincing evidence.

33.     The chat itself was very graphic.  The defendant was not shy about expressing his interest in having sex with either the purported child to whom the undercover claimed to have access or with his own granddaughters.  Most disturbingly we know that these desires were, in fact, carried out.

13

Page 55 of 162      Filed: 02/23/2015      Document #1539600      USCA Case #13-3062

34.     During the course of the chat, the defendant sent the UC three images of child pornography.   Those images included: (1) a close-up view of a female vagina that appears to be of a child under the age of 18; (2) two prepubescent female children masturbating an adult male penis; and (3) two prepubescent female children, both nude with an adult male, with one performing oral sex on the adult male's penis and the other kissing the adult male on the mouth. With respect to the child pornography itself, the impact of this conduct cannot be underestimated in terms of its harm to the community at-large, as well as the dangerousness that it underscores for this defendant.    The defendant's distribution of these images helped maintain an underground market for some of the most offensive and pernicious visual content that exists in our society.

35.     The harm posed by the defendant's actions is clear.   As the Supreme Court recognized in the seminal case of New York v. Ferber:

> The use of children as subjects of pornographic materials is very harmful to both the children and the society as a whole.  It has been found that sexually exploited children are unable to develop healthy relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults.
>
> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.

458 U.S. 747, 758-60 nn. 9 & 10.   The Court continued, "[a] child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography. . . . It is the fear of exposure and the tension of keeping the act secret that

14

seem to have the most profound emotion repercussions." Id. at 759 n.10.  As the Fifth Circuit similarly concluded, the crimes of a "'passive' child pornography recipient" are not "somehow attenuated as compared to a person who actually produces or distributes child pornography . . . victimization of a child depicted in pornographic material flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography." United States v. Norris, 159 F.3d 926, 930 (5th Cir. 1998).

36.     After all, "the 'victimization' of the children involved does not end when the pornographer's camera is put away.  The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions" Id. at 929.  While the children in the images in this case have not been identified, the defendant's acts – although distinct from the actual sexual abuse of the victims itself – remains a continuing victimization of the children portrayed in those images.

### History and characteristics of the defendant

37.     The defendant is a 51-year old male without significant contact with the criminal justice system.  However, it is apparent that the defendant has been sexually abusing members of his family for many years.

### Punishment, deterrence, protection, and correction

38.     As described in detail above, the offenses at issue in this case are extremely serious and the sentence imposed should reflect that fact.  The government believes that the guideline range recommended would provide a just sentence based on the defendant's conduct in

15

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 56 of 162

Page 57 of 162

Filed: 02/23/2015   Document #1539600

USCA Case #13-3062

this case.  A sentence below that range, particularly one of any significant amount, may send a false signal to this defendant, other defendants, and the community at large that the instant offenses do not entail any real danger.  To the contrary, the defendant's conversations with the undercover detective and his distribution of child pornography pose an identifiable and significant danger to the community.  The defendant's actions in this regard were egregious and justice requires that they be appropriately punished.  The recommended period of incarceration would provide that punishment and simultaneously deter future criminal conduct. Additionally, incarceration would protect the community by incapacitating the defendant.  Correctional treatment, as well as any necessary medical care, would be available to the defendant through the U.S. Bureau of Prisons.

### *Need to Avoid Unwarranted Sentence Disparities*

39.     While the defendant has cited other cases in which this Court and Courts nationally have departed from the sentencing guidelines, the government does not believe this is an appropriate case in which to do so.  This case warrants a substantial sentence based on the defendant's conduct described above including the distribution of child pornography and a history of sexual abuse of children.  In *United States v. John Swain*, the defendant engaged in a graphic online chat and distributed 3 videos and 12 images of child pornography to the UC. While Swain had a significant criminal history, based on convictions associated with uttering and other non-child related crimes, there was no evidence in that case that Mr. Swain had ever sexually abused a real child.  Swain, who, like the defendant in this case, distributed child pornography, but did not travel, was sentenced by Judge Boasberg to 97 months.  The

16

government would ask for a similar sentence for this defendant based on similar conduct.[1] Additionally, in *United States v. Gregory Loreng*, 12-CR-132, Judge Bates sentenced the defendant, who distributed images of child pornography to the UC, had a prior conviction in New Jersey for hands on sexual abuse of a child, and bragged about that abuse to the UC, to a period of 96 months incarceration.

### *Available sentences*

39.     The government submits that incarceration is the most appropriate sentence available for the defendant because it will incapacitate him for a determined period of time.  A term of supervised release of not less than ten years, with the conditions recommended in the PSR, would also be appropriate to ensure that the defendant is monitored and the community is protected.

40.     To his credit, the defendant noted a willingness to accept responsibility at an early stage of the proceedings ultimately entering his guilty plea pre-indictment.  The government is certainly taking this acceptance of responsibility into account in making its recommendation at the low end of the sentencing guideline range.

41.     For all of the reasons set forth above, the government recommends a sentence of 97 months.  This sentence strikes an appropriate balance between the seriousness of the offense, the danger posed to the community, the need for just punishment, deterrence of criminal conduct, and protection of the community, with the history and characteristics of the defendant.

---

[2]      In another similar case, *United States v. Marc Gange*, 13-CR-38, on June 11, 2013, Judge Boasberg sentenced that defendant to 46 months based on similar conduct.  That defendant distributed only still images of child pornography and did not travel.  That defendant also had no prior criminal history as opposed to the defendant in *United States v. John Swain*.

17

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 58 of 162

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 59 of 162

## CONCLUSION

Wherefore, the government respectfully submits that a sentence of 97 months of incarceration be imposed, with a period of supervised release of not less than ten years, including the conditions recommended in the Presentence Report.

RONALD C. MACHEN JR.
United States Attorney

BY:     /s/ _____
          ARI B. REDBORD
          Assistant United States Attorney
          D.C. Bar 476998
          555 4th Street, N.W.
          Washington, D.C. 20530
          (202) 252-7018

18

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 60 of 162

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Criminal No. 12-155 (RJL) |
| ) | |
| JAMES BROWN, ) | |
| ) | |
| Defendant. ) | |

## MR. JAMES BROWN'S MEMORANDUM IN AID OF SENTENCING

Defendant, Mr. James Brown, through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing.[1]  Based on all the sentencing factors in this case, Mr. Brown asks the Court to sentence him to a period of incarceration of 72 months, to be followed by a five-year period of supervised release. Such a sentence would be consistent with the goals of sentencing, as well as reasonable in light of Mr. Brown's age, background, and personal characteristics.  The government's requested sentence of 97 months' incarceration is greater than necessary to accomplish the goals of sentencing in this particular case.

## BACKGROUND

On March 5, 2012 Mr. Brown sent three images of child pornography to Detective Timothy Palchak, who was online in an undercover capacity.  During the "chat" in which Mr. Brown sent the images, he referenced having "enjoyed" his granddaughter before she was taken from him.  The chat led to inquiries by the FBI Child Exploitation Task Force and, eventually, to confirmation by the Fauquier County Sheriff's Office that Mr. Brown had been under

---

[1] In addition to the memorandum, counsel includes as Exhibit I letters in support of Mr. Brown for the Court's consideration.

1

Page 61 of 162   Filed: 02/23/2015   Document #1539600   USCA Case #13-3062

investigation for sexual abuse based on charges by his estranged wife.

Mr. Brown was arrested on March 27, 2012 and has been held without bond since that time.  On July 6, 2012 a one-count Information was filed charging Mr. Brown with Distribution of Child Pornography in violation of 18 U.S.C. §2252A(a)(2).  Mr. Brown pled guilty to the charge, pursuant to a written plea agreement, on June 19, 2013.  He is scheduled to be sentenced at 11:30 a.m. on June 26, 2013.

### DISCUSSION:  UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. BROWN SHOULD RECEIVE A SENTENCE OF INCARCERATION NO LONGER THAN 72 MONTHS.

I.      Statutory Provisions

Pursuant to the applicable statute, the minimum term of imprisonment is five years and the maximum term of imprisonment is 20 years.  With respect to supervised release, the statute permits a term of five years to life.   A sentence of 72 months' incarceration, to be followed by a period of five years of supervised release would obviously be consistent with statutory dictates.

II.     Advisory Sentencing Guidelines: The Court Should Afford no Significant Weight to Section 2G2.2 of the United States Sentencing Guidelines.

The parties, consulting the 2012 edition of the Guidelines Manual, calculate that Mr. Brown's total offense level is 30 and criminal history category is I.[2]  Based on that combination, the advisory Guideline range in this case is 97-121 months.  While Mr. Brown does not dispute the specific characteristic enhancements set forth in the plea, he submits that the Court should

---

[2]The Presentence Investigation Report ("PSR") in this case outlines a calculation resulting in a total offense level of 34, rather than 30, and an advisory range of 151-188 months.  While this Court did not order a revised PSR, counsel notes that the four-point enhancement for "sadistic or masochistic conduct" under Section 2G2.2(b)(4) included in the PSR was based on the parties' stipulation in the original plea agreement.  Counsel conferred with Probation Officer Crystal Lustig and the latter agrees that, under the facts of this case, the enhancement is not appropriate.

2

take into account the significant body of case law and other literature rejecting the child

pornography Guidelines as a reasonable basis for determining a defendant's sentence.  Mr.

Brown understands that the applicable Guidelines are an important factor in sentencing, he urges

the Court to afford them less deference in this case than in cases involving other statutes and

offenses.

    **A.**    **The Legal Framework.**

    In *United States v. Rita*, 128 S. Ct. at 594, the Supreme Court noted that some sections of

the Guidelines are "the product of careful study based upon extensive empirical evidence derived

from review of thousands of individual sentencing decisions." The Supreme Court, however,

recognized that "not all of the guidelines are tied to this empirical evidence." *Id.* at 594, n.2.

Subsequent to *Rita*, the Court clarified that sentencing courts may vary from the guidelines based

on policy disagreements alone. *Spears v. United States*, 129 S.Ct. 840 (2009).

    The current guideline at issue in this case, U.S.S.G. § 2G2.2, is the perfect example of a

non-empirically based guideline.  The guideline does not represent the Sentencing Commission's

exercise of its characteristic institutional role, and therefore deserves minimal deference. *See,*

*e.g., United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008); *United States v. Baird*, 580 F.

Supp. 2d 889, 895 (D. Neb. 2008) ("[B]ecause [2G2.2] does not reflect the Commission's unique

institutional strengths, the court affords them less deference than it would to empirically

grounded guidelines").

    The Sentencing Commission itself has acknowledged that U.S.S.G. § 2G2.2 is not the

product of "empirical data and national experience" but instead a response to the creation of

mandatory minimum sentences and specific congressional directives. *United States Sentencing*

USCA Case #13-3062      Document #1539600           Filed: 02/23/2015      Page 62 of 162

Filed: 02/23/2015    Document #1539600    USCA Case #13-3062

Page 63 of 162

*Commission, Fifteen Years of Guideline Sentencing*, at 73 (Nov. 2004) ("frequent mandatory minimum legislation and specific directives to the Commission to amend the Guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress"); *United States v. Hanson*, 561 F. Supp. 2d 1004 (E.D. Wisc. 2008); *Baird*, 580 F. Supp. 2d at 892 ("when Guidelines are not the result of 'the Commission's exercise of its characteristic institutional role,' such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with an 'ordinary case,' in which 'the Commission's recommendation of a sentencing range will reflect a rough approximation of the sentences that might achieve §3553(a)'s objectives'"); *United States v. Johnson*, 588 F. Supp. 2d 997, 1004 (S.D. Iowa) ("because [U.S.S.G. 2G2.2 does not] reflect the unique institutional strengths of the Sentencing Commission in that they are not based on study, empirical research, and data, the Court . . . affords them less deference that it would to empirically-grounded guidelines").

As noted above, both District Court judges and legal commentators have described U.S.S.G. § 2G2.2 as "seriously" flawed not only because § 2G2.2 was promulgated in a manner inconsistent with the approved practices of the Sentencing Commission, but also because U.S.S.G § 2G2.2 does not adequately reflect important distinctions in levels of culpability among defendants convicted of shipping or transporting images containing child pornography.

As discussed by Assistant Federal Public Defender Troy Stabenow in *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, available at http://sentencing.typepad.com (January 1, 2009) (hereinafter "Stabenow"), using the "empirical approach" the Sentencing Commission initially created a Base

4

of Offense Level of 13 for U.S.S.G. § 2G2.2.  The Commission explained:

> It is important for Congress to recognize that the Commission is now in a position to provide, to an extent unparalleled by previous sources, detailed data on actual sentencing practices under the guidelines-information that we hope Congress will consider in its decision on sentencing policy

*Stabenow* at p. 5.

Today, the corresponding Base Offense Level is 18, five levels higher.  This dramatic increase was not the result of the "empirical approach" used by the Sentencing Commission in determining the original Base Offense Level at 13, but instead "the result of arbitrary increases by Congress slipped into other bills, often with little or no debate." *Hanson*, 561 F.Supp. 2d at 1010.

Unwarranted increases have not been limited to the Base Offense Level of U.S.S.G. § 2G2.2.  Unwarranted increases have also occurred in the context of Specific Offense Characteristics.  As Judge Adelman notes, many of the Specific Offense Characteristics in U.S.S.G. § 2G2.2, such as the enhancement for "number of images" (which adds up to 5 levels to the Offense Level), were enacted without any "research, study or rationale." 561 F.Supp. 2d at 1010.

While many sections of U.S.S.G. § 2G2.2 were promulgated with little or no empirical analysis, other sections continue to be applied notwithstanding the fact that they do not address the concerns sought to be addressed by U.S.S.G. § 2G2.2.  For example, the two level Specific Offense Characteristic enhancement for the "use of a computer" was designed to 1) fight the wide dissemination and instantaneous transmission in computer-assisted trafficking of child pornography, 2) combat the increased difficulty of investigation and prosecution by law

Filed: 02/23/2015   Page 65 of 162

Document #1539600

USCA Case #13-3062

enforcement officials, 3) minimize the increased likelihood that child pornography will be viewed by and harm children, and 4) limit the potential for pedophiles to lure children into sexual relations through the computer. *Stabenow* at p. 14. Yet, the enhancement is applied in almost every single case—even where, as here, the only "use" of the computer is to transmit images to another adult. That is not what Congress intended. *See Stabenow* at p. 16 ("if a client today used a computer, but did not widely disseminate the images, did not use them to entice or coerce a child, and did not show them to a child, then their conduct is completely outside the scope of the fear that prompted Congress to require the enhancement").

Finally, U.S.S.G. § 2G2.2 has been repeatedly criticized because it contains numerous (and significant) Specific Offense Characteristics that are rarely case-specific or unique, but instead are present in almost every single case: 2G2.2(b)(2) images containing children under twelve – 2 level increase; 2G2.2(b)(6): use of a computer – 2 level increase; 2G2.2(b)(7). *See Grober*, 595 F. Supp. 2d at 397 (using the offense characteristics "to enhance the base offense level [of § 2G2.2] is irrational because logically and factually, the characteristics are simply not genuine aggravating factors. Rather, they are inherent in just about any downloading offense"). As a result, someone like Mr. Brown, who e-mailed illegal images only to one person, Detective Palchak, receives nearly the exact same enhancements as a large-scale commercial child pornography trafficker, or the operator of a web-site devoted to the mass distribution of child pornography to a large number of subscribers.

The sentencing scheme under U.S.S.G. § 2G2.2 therefore not only destroys the distinction between "true peddlers of child pornography and more simple possessors or transporters," *Hanson*, 561 F. Supp. 2d at 1009, it also fails "to adequately reflect those important distinctions

6

USCA Case #13-3062      Document #1539600         Filed: 02/23/2015      Page 66 of 162

in levels of culpability" among defendants sentenced pursuant to 18 U.S.C. §2252A. *United States v. Baird*, 580 F. Supp. 2d 889, 895 (D. Neb. 2008).

Because U.S.S.G. § 2G2.2 does not reflect the Commission's unique role of relying on evidence and study to develop sound sentencing practices, and produces advisory sentencing ranges that are far greater than necessary to serve the statutory purposes of federal sentencing, courts throughout the country—and in this District—accord U.S.S.G. § 2G2.2 minimal deference at best. Mr. Brown urges this Court to adopt the same approach in sentencing him. As discussed below, Mr. Brown submits that full consideration of the § 3553 factors in this case support nothing longer than a 72 month sentence in this case.

### B.    Comparable Cases.

A review of comparable cases in this District and elsewhere demonstrates that a sentence no longer than 72 months under the facts and circumstances of Mr. Brown's case is a "sufficient, but not greater than necessary" sentence.

### 1.    Cases From The United States District Court for the District of Columbia.

*United States v. Douglas Payne*, Cr. No. 11-cr-317 (ABJ). In a case involving both the possession of child pornography and traveling for the purpose of engaging in sex with a child (something Mr. Brown did not do), Judge Jackson imposed a sentence of 60 months imprisonment on both counts (to run concurrently), to be followed by ten years of supervised release. The sentencing guidelines in Mr. Payne's case were 78-97 months imprisonment.

*United States v. Morehead*, Cr. No. 11-cr-258 (RLW) (Jan. 17, 2012). In another case that, unlike this one, involves both the possession of child pornography *and* traveling for the

Page 67 of 162

Filed: 02/23/2015    Document #1539600    USCA Case #13-3062

purpose of engaging in sex with a child, Judge Wilkins imposed a sentence of 84 months, with 120 months of supervised release.  The Guidelines range in Mr. Morehead's case were 121-151 months imprisonment.

***United States v. Malakoff***, Cr. No. 09-cr-0051 (ESH).  In a case involving a charge for possession of child pornography, Judge Huvelle sentenced Mr. Malakoff, a 47-year old adult male, to five years probation.  The advisory guideline range was 78-97 months.  The *Malakoff* case involved both pornographic photos and videos.  As stated by Judge Huvelle, "I've viewed some of these photos, not all by any means, a short selection.  And they're totally repugnant, I don't know how else to describe them....Having seen  these pictures, I realize that these videos are profoundly disturbing."  Tr. at 32, 35.  And yet, based upon the other section 3553 factors, such as Mr. Malakoff's lack of any other criminal record, a childhood sexual trauma, the punishment already inflicted by the conviction and sex offender registration requirement, and Mr. Malakoff's deep roots in the community, the Court sentenced Mr. Malakoff to no prison time at all, but rather five years probation.

Judge Huvelle expressly addressed the issue of varying so significantly from the sentencing guidelines of 78-97 months.  In addition to the factors noted above that were specific to Mr. Malakoff, the Court noted that:

> [A] review of the case law, including the only relevant cases that I found in this jurisdiction . . . indicates ***that a significant percentage of cases involve substantial downward variances***.  Of the five cases that my probation department was able to identify in this jurisdiction where there was no mandatory minimum that controlled  the sentence, there were three significant downward variances in three of the five cases.

Tr. at 40 (emphasis added).

8

One reason Judge Huvelle and the other judges of this Court consistently vary

significantly downward from the Guidelines is that the Guidelines for the child pornography

offenses "do not reflect the sentencing commission's exercise of its character[istic] institutional

role. Therefore, they are not entitled to the usual deference." Tr. at 41. Quoting in part from

Judge Roberts's bench ruling in *United States v. Matheron*, Crim No. 08-066 (RWR), Judge

Huvelle stated in *Malakoff*:

> The base offense level was not derived from the sentencing commission's
> recommendation based upon its singular expertise and study of real sentencing
> date and national experience, the way the commission determined most other base
> offense levels. Over time, the level here was substantially increased, not as a
> result of studies by the expert body Congress created, but was ultimately key[ed]
> to the increased statutory maximum sentence and the statutory mandatory
> minimum sentences for the trafficking offenses. Moreover, the enhancement for
> the volume of images was created by legislation, not crafted or recommended by
> the commission based upon its careful study in correlation to sentencing goals
> under 3553.[3]
>
> Nor does the guideline assure just punishment in individual cases. The
> enhancement for using a computer is a undifferentiated application that fails to
> distinguish the level of culpability for consuming images from that of child
> pornographers, or from offenders using the computer for commercial profit or
> mass distribution. The Supreme Court recently in 2009 in a case called [*Spears v.
> United States*] finally rejected the notion that policy disagreements with guideline
> cannot provide a basis for sentencing variances.

*Id.* at 41-42.

   *United States v. DiFazio*, 07-cr-022 (RJL): In this case involving a Guidelines Range of

63 to 78 months, this Court sentenced the defendant to 12 months' imprisonment. Law

---

[3]      The legislative background on the enhancement based on the quantity of images,
which was contained in the PROTECT Act, is particularly informative. As discussed in
*Stabenow*, discussed *infra*, "two government attorneys convinced a novice Congressman to insert
[these] dramatic changes to the child pornography Guidelines into an unrelated, popular bill,
***without notice*** to the Sentencing Commission." *Id.* at p. 19. Senator Diane Feinstein compared
the changes to "rewrit[ing] the criminal code on the back of an envelope." *Id.* at 22.

9

Filed: 02/23/2015     Page 69 of 162

Document #1539600

USCA Case #13-3062

enforcement recovered 458 images of child pornography. The defendant participated in pre-sentence therapy. In letters accompanying Mr. DiFazio's sentencing memorandum, his therapists noted that continued participation in therapy would be the most effective way to treat the disorder associated with his criminal conduct. Further, his therapists stated that a lengthy period of incarceration would be *counterproductive* to the goals of his therapy.

*United States v. McHaney*, 08-cr-008 (TFH): Guidelines Range of 97 to 120 months, sentenced to 36 months' imprisonment. Though the charge in this case was possession of child pornography, the Statement of Facts accompanying his plea agreement indicates that the defendant also agreed to meet with a fictitious 13-year old boy for the purpose of having sex with him. When the defendant arrived at the meeting and was arrested, police found a flash drive in the defendant's possession that contained more than 600 images of child pornography, including images of children 3 to 5 years of age and young teens.

*United States v. Matheron*, 08-cr-66 (RWR): Guidelines Range of 46 to 57 months, sentenced to 12 months and 1 day imprisonment. The 58-year old defendant was found in possession of between 300 and 600 images of child pornography.

*United States v. Rowan*, 09-cr-225 (RMU): Guidelines Range of 97 to 120 months, sentenced to 24 months with 180 months' imprisonment. Though the defendant was charged with possession only, the Statement of Facts accompanying his plea agreement indicates that the defendant distributed 16 images to an undercover officer through peer-to-peer computer software. Upon investigation, 826 images of child pornography were found in the defendant's possession, including images of infants and toddlers.

*United States v. Wright*, 09-cr-311 (ESH): Guidelines Range of 33 to 41 months,

sentenced to 60 months probation.  The defendant in this case used peer-to-peer software to download pornographic images.  About 284 images of child pornography were found in the defendant's possession.

*United States v. Moreira*, 10-cr-002 (ESH):  Guidelines Range of 78 to 97 months, sentenced to 60 months probation with 60 days to be served on weekends.  In this possession case, the defendant used peer-to-peer software to share files with an undercover law enforcement agent.  When the defendant was arrested, law enforcement found over 800 images and 5 videos of child pornography, including images of prepubescent children, in the defendant's possession.

*United States v. [Sealed]*, 08-cr-170 (JR):  Judge Robertson imposed a 40-month sentence in an enticement case in which the defendant, using his computer, agreed to meet with a fictitious 13 year old girl for the purpose of engaging in sexual intercourse.  When the defendant arrived at the meeting, the defendant had a video camera and $1,000 cash.

     2.    **Cases From Other Jurisdictions.**  In all of the below cases, the courts imposed sentences lower than 24 months.

       a.    **Appellate Cases.**

In *United States v. Dorvee*, 604 F.3d 84, 95 (2d Cir. 2010), the Second Circuit reversed a within-Guidelines sentence for the distribution of child pornography as substantively unreasonable.  Relying in part on the flaws in the child pornography guidelines discussed *infra*, the court afforded the guideline very limited deference.  *Id.* at 95 ("the district court was working with a Guideline that is fundamentally different from most and that . . . can lead to unreasonable sentences that are inconsistent with what § 3553 requires").  The court relied on the Sentencing Commission's most recent report regarding the history of the child porn guideline, as well as

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 70 of 162

Filed: 02/23/2015     Page 71 of 162

Document #1539600

USCA Case #13-3062

other Commission reports and statistics in rejecting the district court's sentence as unreasonable.

In *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009), the Ninth Circuit upheld a sentence of five years probation in child pornography case, where the advisory guideline range was 41-51 months. Offense conduct involved over 150 images of child pornography.  The district court had justified its probationary sentence on basis that, *inter alia*, the defendant enjoyed the continuing support of his family, and a sentence of probation would allow the defendant better psychiatric therapy. *Id.* at 868.

In *United States v. Rowan*, 530 F.3d 379 (5th Cir. 2008) the Fifth Circuit upheld a sentence of five years probation in a child pornography case, against an advisory guideline range of was 46-57 months.

In *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009), the Sixth Circuit upheld a non-Guideline sentence of one day imprisonment and a 10 year period of supervised release for a defendant convicted of possessing between 10 and 150 images of child pornography.

In *United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008), the Tenth Circuit upheld an 18 month sentence, upheld where the advisory guideline sentence was 78-97 months.

**b.    Other District Court Cases.**

In *United States v. Rausch*, 570 F. Supp. 2d 1295 (D. Colo. 2008), the court imposed a one day sentence where advisory guideline range was 97-120 months.

In *United States v. Phinney*, 599 F. Supp. 2d 1037 (E.D. Wis. 2009), the court imposed a six month sentence where advisory guideline range was 46-57 months.

In *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008), the court imposed a sentence of one year and one day sentence where advisory guideline range was 46-57 months.

12

While not all the cases above involve the charge of distribution, and none of them include facts exactly analogous to those at issue here, the case overview clearly demonstrates that both district and appellate courts countrywide routinely reject the Guidelines in the exploitation of minors area. As the discussion below highlights, Mr. Brown shares many of the mitigating § 3553 factors with the defendants in the above-cited cases.

In light of the specific offense enhancement Mr. Brown received for a "pattern of activity involving sexual exploitation of a minor," the 2012 case of *United States v. Drew* is worth noting. In that recent case from this jurisdiction, Mr. Drew pled guilty to one count of Traveling in Interstate Commerce for the Purpose of Engaging in Sexual Contact with a Minor, in violation of 18 U.S.C. § 2423(b). According to the Statement of Facts and Government's Memorandum in Aid of Sentencing in that case, Mr. Drew pretended to be a teenager and began chatting online with a 14 year-old girl. The chats led to stalking of, and threats to, the young girl and, eventually, to the defendant putting his mouth on the girl's vagina. In that case, the parties agreed to a sentence between 78 and 84 months. While Mr. Drew's Guidelines were significantly lower than Mr. Brown's in light of the charge to which he pled guilty, it is noteworthy that the government believed a sentence of 78-84 months to be reasonable in light of his actual conduct.

## II.   THE SECTION 3553 FACTORS AS APPLIED TO JAMES BROWN SUPPORT A SENTENCE NO LONGER THAN 72 MONTHS.

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and

13

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 72 of 162

4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

A.    *Nature of the Offense.*

No one, and certainly not Mr. Brown, disputes that the distribution of images containing child pornography is a very serious offense. Even the least culpable offenders contribute to the ongoing exploitation of the children used to produce the images containing the child pornography. Due to the serious nature of the crime, Congress has mandated that anyone convicted of transporting images containing child pornography–even a single image–be sentenced to prison for at least five years, and up to 20 years. The question therefore is not whether a prison sentence is warranted in this case; rather, the question is whether a sentence in excess of *72 months* is warranted in this case.

As noted above, the instant charge stems from Mr. Brown transmitting three images of child pornography to Detective Palchak. There is absolutely no evidence, however, that Mr. Brown ever engaged in the distribution of child pornography for profit or commercial gain or, for that matter, in the mass distribution of child pornography. Significantly, Mr. Brown did not receive an enhancement for possessing more than 600 images of child pornography–an

14

enhancement which, given how images and videos are "counted" for these purposes, the majority of similarly situated defendants receive.   While Mr. Brown engaged in very troubling conduct in this case, it bears noting that he immediately indicated his intention to plead guilty.

With respect to the allegations concerning hands-on abuse, Mr. Brown conceded at the plea hearing–and still concedes today–that the government could meet the "clear and convincing" burden of proof that applies to sentencing enhancements.   Counsel would note, however, that at least a portion of the allegations date back several years–and were investigated initially at that time.   While the fact that the "pattern of conduct" enhancement is at play may warrant a sentence above the mandatory minimum, a sentence of 72 months is reasonable given the totality of the circumstances, including Mr. Brown's age and history and the extent of the distribution offense itself.

### B.   Character of the Defendant.

Mr. Brown is 51 years old and has had no prior contact with the criminal justice system. As the PSR and the sentencing letters reflect, he comes from a tight-knit and loving family rooted in small-town Virginia.   Until he was diagnosed with Chronic Obstructive Pulmonary Disease–and, in different respects, even thereafter–, Mr. Brown had a very strong work ethic and sense of duty towards his family and his community.   Prior to his arrest and incarceration, Mr. Brown worked for his mother's sign-making business, as a laborer for a union, and in construction.   It was during his work in the construction field that he suffered a collapsed lung due to over-exertion.   From 1979 to 1982, Mr. Brown was enlisted in the United States Merchant Marines.

While Mr. Brown was well provided for as a child and considers his stepfather a dad in

15

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 74 of 162

Page 75 of 162

Filed: 02/23/2015   Document #1539600   USCA Case #13-3062

every way, he nevertheless experienced considerable trauma growing up. Specifically, he was sexually abused by a trusted adult as a twelve year-old boy. Mr. Brown, then known as "Jimmy," went on vacation to Disney World with his best friend, his best friend's aunt, and the aunt's boyfriend. While in a hotel in Orlando, FL, he was abused by the uncle while his "friend" and the aunt looked on. Mr. Brown's older sister, Peg Poole, reports vivid memories of the trip and its aftermath. In a conversation with counsel on April 10, 2013 Ms. Poole stated that "when (Mr. Brown) returned from the trip, we asked him all about it...(but) he would not talk about it at all. We noticed he became withdrawn and later could not remember any of his childhood and to this day still can't." Mr. Brown says he "just emotionally and mentally shut down."

In addition to experiencing sexual abuse at a young age, Mr. Brown also witnessed both his parents struggle with alcoholism.

As noted in the PSR and the Government's Memorandum in Aid of Sentencing, Mr. Brown has had no previous encounters with the criminal justice system. Before being moved to the Central Treatment Facility, Mr. Brown was housed at D.C. Jail for several months. The condition of the facility, including its documented problem with black mold, exacerbated his breathing difficulties. In fact, regardless of where he is housed, the nature of Mr. Brown's confinement will undoubtedly be harsher than that of most similarly situated defendants in light of his age and medical condition. The Court should consider whether a sentence in excess of 12 years, as requested by the government, is necessary given Mr. Brown's circumstances.

C. Needs of the Community and Public

Regardless of the sentence he receives, Mr. Brown will not be re-entering the community

16

any time soon.  Given the mandatory minimum sentence applicable to his offense, he will be at

least 56 years old when he is released from prison.  Not only is his plan to reside with his already

elderly and ailing parents upon his release, but given sex offender registration and supervised

release requirements, he will most likely be tightly monitored for the remainder of his life.  Mr.

Brown will pay the consequences of his actions for many years to come.

## CONCLUSION

·  For the reasons set forth above, as well as for any others that it may deem fair and

reasonable, Mr. Brown asks the Court to sentence him to a period of incarceration no longer than

72 months.  Given his lack of criminal history, as well as his age and circumstances, a sentence

of six years is sufficient but not greater than necessary to fulfill the purposes of federal

sentencing.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


Lara G. Quint
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500 ex.133

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 76 of 162

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

**FILED**

JUL 0 2 2013

District of Columbia

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) | |
| JAMES WENDELL BROWN | ) | Case Number:  12-cr-00155-01 (RJL) |
| | ) | USM Number: 32054-016 |
| | ) | Lara Gabrielle Quint |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)   One (1) of the Information.

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:2252A(a)(2) | Distribution of Child Pornography. | March 5, 2012 | 1 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

June 26, 2013
Date of Imposition of Judgment

_Signature of Judge_

Richard J. Leon          U.S. District Judge
Name and Title of Judge

6/27/13
Date

AO 245B     (Rev. 09/11) Judgment in Criminal Case
            Sheet 2 — Imprisonment

DEFENDANT:  JAMES WENDELL BROWN
CASE NUMBER:  12-cr-00155-01 (RJL)

Judgment — Page __2__ of __6__

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

One Hundred Forty-Four (144) months on Count One (1) of the Information

☑  The court makes the following recommendations to the Bureau of Prisons:

that the defendant be incarcerated at a facility as close as possible to where his parents live.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____   ☐ a.m.   ☐ p.m.   on _____ .

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

USCA Case #13-3062     Document #1539600     Filed: 02/23/2015     Page 78 of 162

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | Judgment—Page | 3 | of | 6 |

DEFENDANT: JAMES WENDELL BROWN
CASE NUMBER: 12-cr-00155-01 (RJL)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Two Hundred Forty (240) months on Count One (1) of the Information.

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☑   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☑   The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☑   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐   The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Page 79 of 162

Filed: 02/23/2015    Document #1539600    USCA Case #13-3062

AO 245B    (Rev 09/11) Judgment in a Criminal Case
             Sheet 3C — Supervised Release

DEFENDANT:  JAMES WENDELL BROWN
CASE NUMBER:  12-cr-00155-01 (RJL)

## SPECIAL CONDITIONS OF SUPERVISION

DNA Sample Requirement - Pursuant to 42 USC § 14135a, for all felony offenses, the defendant
shall submit to the collection and use of DNA identification information while incarcerated in the
Bureau of Prisons, or at the direction of the U.S. Probation Office.

Sex Offender Registration - You shall comply with the Sex Offender Registration requirements
for convicted sex offenders in any state or jurisdiction where you reside, are employed, carry on
a vocation, or are a student.

Contact Restriction - You shall have no direct contact with minors (under the age of 18) without
the written approval of the probation officer.

Employment Restriction - You shall not be employed, or volunteer, in any capacity that may
cause you to come in direct contact with children, except under circumstances approved in
advance by the supervisory probation officer.

Search - Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, you shall submit
to a search of your person, property, house, residence, vehicle, papers, computer, other electronic
communication or data storage devices or media, and effects at any time, with or without a
warrant, by any law enforcement or probation officer with reasonable suspicion concerning
unlawful conduct or a violation of a condition of supervision.

Sex Offender Treatment Assessment - You shall participate in a program of sex offender
assessment and treatment, as directed by the probation officer, until such time as you are released
from the program. This assessment and treatment may include physiological testing such as
polygraph to assist in planning, case monitoring, and supervision. At the direction of the
probation officer, you shall pay for all or a portion of any treatment program.

Pursuant to Rule 32.2(a) of the Fed. Rules of Crim Proc., you, James Wendell Brown, are
ordered to forfeit a Toshiba Satellite A-665 laptop, S/N: 9A022382K.

AO 245B   (Rev 09/11) Judgment in a Criminal Case
         Sheet 5 — Criminal Monetary Penalties

Judgment — Page __5__ of __6__

DEFENDANT:  JAMES WENDELL BROWN
CASE NUMBER:  12-cr-00155-01 (RJL)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| **TOTALS** | $ _____ 0.00 | $ _____ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine  ☐ restitution.

☐ the interest requirement for the   ☐ fine  ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Page 81 of 162

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

AO 245B    (Rev 09/11) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

DEFENDANT:  JAMES WENDELL BROWN
CASE NUMBER:  12-cr-00155-01 (RJL)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A    ☑  Lump sum payment of $ ___100.00___ due immediately, balance due

☐  not later than _____ , or
☑  in accordance       ☐ C,   ☐ D,   ☐ E, or   ☑ F below; or

B    ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C    ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D    ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
_____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
term of supervision; or

E    ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    ☑  Special instructions regarding the payment of criminal monetary penalties:

The special assessment is immediately payable to the Clerk of the Court for the U.S. District
Court, District of Columbia. Within 30 days of any change of address, you shall notify the Clerk
of the Court of the change until such time as the financial obligation is paid in full.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 82 of 162

Page 83 of 162

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
Attachment (Page 1) — Statement of Reasons

DEFENDANT:  JAMES WENDELL BROWN
CASE NUMBER:  12-cr-00155-01 (RJL)
DISTRICT:      District of Columbia

# STATEMENT OF REASONS
(Not for Public Disclosure)

**I    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT**

A   ☐   The court adopts the presentence investigation report without change.

B   ☑   **The court adopts the presentence investigation report with the following changes.**
(Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.)
*(Use page 4 if necessary.)*

1   ☑   Chapter Two of the U.S.S.G. Manual determinations by court (including changes to base offense level, or specific offense characteristics):
Court found that the 4 level enhancement, pursuant to USSG § 262.2(b)(4) does not apply.

2   ☐   Chapter Three of the U.S.S.G. Manual determinations by court (including changes to victim-related adjustments, role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility).

3   ☐   Chapter Four of the U.S.S.G. Manual determinations by court (including changes to criminal history category or scores, career offender, or criminal livelihood determinations).

4   ☐   Additional Comments or Findings (including comments or factual findings concerning certain information in the presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions).

C   ☐   The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.

**II    COURT FINDING ON MANDATORY MINIMUM SENTENCE** *(Check all that apply.)*

A   ☐   No count of conviction carries a mandatory minimum sentence.

B   ☑   Mandatory minimum sentence imposed

C   ☐   One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum does not apply based on

☐   findings of fact in this case

☐   substantial assistance (18 U.S.C. § 3553(e))

☐   the statutory safety valve (18 U.S.C. § 3553(f))

**III    COURT DETERMINATION OF ADVISORY GUIDELINE RANGE** *(BEFORE DEPARTURES)*:

Total Offense Level:  30
Criminal History Category:  I
Imprisonment Range:   97   to  121   months
Supervised Release Range:   5   to  LIFE   years
Fine Range: $  15,000   to  $  150,000

☑   Fine waived or below the guideline range because of inability to pay.

79

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 84 of 162

DEFENDANT:  JAMES WENDELL BROWN
CASE NUMBER:  12-cr-00155-01 (RJL)
DISTRICT:        District of Columbia

# STATEMENT OF REASONS
### (Not for Public Disclosure)

**IV   ADVISORY GUIDELINE SENTENCING DETERMINATION** *(Check only one.)*

A ☐   The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.

B ☐   The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons.
*(Use page 4 if necessary.)*

C ☐   The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual.
*(Also complete Section V.)*

D ☑   The court imposed a sentence outside the advisory sentencing guideline system. *(Also complete Section VI.)*

**V   DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** *(If applicable.)*

A   **The sentence imposed departs** *(Check only one.)*:
☐ below the advisory guideline range
☐ above the advisory guideline range

B   **Departure based on** *(Check all that apply.)*:

1   **Plea Agreement** (Check all that apply and check reason(s) below.):
☐ 5K1.1 plea agreement based on the defendant's substantial assistance
☐ 5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
☐ binding plea agreement for departure accepted by the court
☐ plea agreement for departure, which the court finds to be reasonable
☐ plea agreement that states that the government will not oppose a defense departure motion.

2   **Motion Not Addressed in a Plea Agreement** *(Check all that apply and check reason(s) below.)*:
☐ 5K1.1 government motion based on the defendant's substantial assistance
☐ 5K3.1 government motion based on Early Disposition or "Fast-track" program
☐ government motion for departure
☐ defense motion for departure to which the government did not object
☐ defense motion for departure to which the government objected

3   **Other**
☐ Other than a plea agreement or motion by the parties for departure *(Check reason(s) below.)*:

C   **Reason(s) for Departure** *(Check all that apply other than 5K1.1 or 5K3.1.)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ 5K2.1 | Death | ☐ 5K2.11 | Lesser Harm | |
| ☐ | 5H1.1 | Age | ☐ 5K2.2 | Physical Injury | ☐ 5K2.12 | Coercion and Duress | |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ 5K2.3 | Extreme Psychological Injury | ☐ 5K2.13 | Diminished Capacity | |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ 5K2.4 | Abduction or Unlawful Restraint | ☐ 5K2.14 | Public Welfare | |
| ☐ | 5H1.4 | Physical Condition | ☐ 5K2.5 | Property Damage or Loss | ☐ 5K2.16 | Voluntary Disclosure of Offense | |
| ☐ | 5H1.5 | Employment Record | ☐ 5K2.6 | Weapon or Dangerous Weapon | ☐ 5K2.17 | High-Capacity, Semiautomatic Weapon | |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ 5K2.7 | Disruption of Government Function | ☐ 5K2.18 | Violent Street Gang | |
| ☐ | 5H1.11 | Military Record, Charitable Service, Good Works | ☐ 5K2.8 | Extreme Conduct | ☐ 5K2.20 | Aberrant Behavior | |
| | | | ☐ 5K2.9 | Criminal Purpose | ☐ 5K2.21 | Dismissed and Uncharged Conduct | |
| ☐ | 5K2.0 | Aggravating or Mitigating Circumstances | ☐ 5K2.10 | Victim's Conduct | ☐ 5K2.22 | Age or Health of Sex Offenders | |
| | | | | | ☐ 5K2.23 | Discharged Terms of Imprisonment | |
| | | | | | ☐ | Other guideline basis (e.g., 2B1.1 commentary) | |

D   Explain the facts justifying the departure. *(Use page 4 if necessary.)*

AO 245B   (Rev 09/11) Judgment in a Criminal Case
Attachment (Page 3) — Statement of Reasons

DEFENDANT:  JAMES WENDELL BROWN
CASE NUMBER:  12-cr-00155-01 (RJL)
DISTRICT:         District of Columbia

# STATEMENT OF REASONS
## (Not for Public Disclosure)

## VI   COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM
*(Check all that apply.)*

**A**   **The sentence imposed is** *(Check only one.)*:
- ☐ below the advisory guideline range
- ☑ above the advisory guideline range

**B**   **Sentence imposed pursuant to** *(Check all that apply.)*:

1   **Plea Agreement** *(Check all that apply and check reason(s) below.)*:
- ☐ binding plea agreement for a sentence outside the advisory guideline system accepted by the court
- ☐ plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable
- ☐ plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the advisory guideline system

2   **Motion Not Addressed in a Plea Agreement** *(Check all that apply and check reason(s) below.)*:
- ☐ government motion for a sentence outside of the advisory guideline system
- ☐ defense motion for a sentence outside of the advisory guideline system to which the government did not object
- ☐ defense motion for a sentence outside of the advisory guideline system to which the government objected

3   **Other**
- ☑ Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system *(Check reason(s) below.)*.

**C**   **Reason(s) for Sentence Outside the Advisory Guideline System** *(Check all that apply.)*

- ☑ the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U S C § 3553(a)(1)
- ☑ to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))
- ☑ to afford adequate deterrence to criminal conduct (18 U S C § 3553(a)(2)(B))
- ☑ to protect the public from further crimes of the defendant (18 U.S.C § 3553(a)(2)(C))
- ☐ to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C § 3553(a)(2)(D))
- ☐ to avoid unwarranted sentencing disparities among defendants (18 U S C. § 3553(a)(6))
- ☐ to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

**D**   **Explain the facts justifying a sentence outside the advisory guideline system.** *(Use page 4 if necessary.)*
Defendant transmitted child pornography interstate via the internet; engaged in predatory behavior; and had actual hands-on victims. Court also referred to pertinent factors under 18 USC § 3553(a).

Page 85 of 162   Filed: 02/23/2015   Document #1539600   USCA Case #13-3062

81

AO 245B (Rev. 09/11) Judgment in a Criminal Case
Attachment (Page 4) — Statement of Reasons

DEFENDANT: JAMES WENDELL BROWN
CASE NUMBER: 12-cr-00155-01 (RJL)
DISTRICT: District of Columbia

## STATEMENT OF REASONS
### (Not for Public Disclosure)

**VII COURT DETERMINATIONS OF RESTITUTION**

A ☑ Restitution Not Applicable.

B ☐ Total Amount of Restitution: _____

C Restitution not ordered *(Check only one.)*:

    1 ☐ For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

    2 ☐ For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

    3 ☐ For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

    4 ☐ Restitution is not ordered for other reasons *(Explain.)*

D ☐ Partial restitution is ordered for these reasons *(18 U.S.C. § 3553(c))*:

**VIII ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE** *(If applicable.)*

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: 8/17/1961

Defendant's Residence Address:
475 Deal Place Amissville, VA 20106

Defendant's Mailing Address:

Incarcerated

Date of Imposition of Judgment
June 26, 2013

Signature of Judge
Richard J. Leon    U.S. District Judge

Name and Title of Judge
Date Signed    6/27/13

82

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 86 of 162

Page 87 of 162

Filed: 02/23/2015   Document #1539600

USCA Case #13-3062

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,                  :

     v.                                              :          Cr. No. 12-155 (RJL)

JAMES WENDELL BROWN,                       :

     Defendant.                             :

### NOTICE OF APPEAL

**Name and address of appellant:**          **James Wendell Brown**

**Name and address of appellant's attorney:**     **Lara G. Quint**
**Assistant Federal Public Defender**
**625 Indiana Avenue, NW, Suite 550**
**Washington, DC 20004**

**Offense:**  18:2252A(a)(2); ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO; Distribution of Child Pornography.

**Concise statement of judgment or order, giving date, and any sentence:**  Sentenced to One Hundred Forty-Four (144) months incarceration, followed by Two Hundred Forty (240) months supervised release.

**Name of institution where now confined, if not on bail:**

**I, the above-named appellant, hereby appeal to the United States Court of Appeals for the District of Columbia from the above-stated judgment.**

   07/03/13                                             James Wendell Brown

     DATE                                                APPELLANT

                                 /s/
                           Lara G. Quint
CJA, NO FEE ____FPD____                   ATTORNEY FOR APPELLANT
PAID USDC FEE ___No_____
PAID USCA FEE ___No_____

Does counsel wish to appear on appeal?  _X_ Yes ___ No
Has counsel ordered transcripts? ___ Yes _X_ No
Is this appeal pursuant to the 1984 Sentencing Reform Act? _X_ Yes ___ No

83



USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 88 of 162

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,           :        Docket No. CR12-155
                                    :        (RJL)
                 Plaintiff,         :
                                    :        June 19, 2013
                                    :
v.                                  :        12:00 p.m.
                                    :
JAMES WENDELL BROWN,                :
                                    :
                 Defendant.         :
. . . . . . . . . . . . . . . .

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:              ARI REDBORD
                                U.S. Attorney's Office
                                555 4th Street, NW
                                Washington, DC 20001

For the Defendant:              LAURA QUINT
                                Federal Public Defender
                                624 Indiana Avenue, NW
                                Washington, DC 20004

Court Reporter:                 PATTY ARTRIP GELS, RMR
                                Official Court Reporter
                                Room 4700-A, U.S. Courthouse
                                Washington, D.C. 20001
                                (202) 962-0200

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 89 of 162

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 90 of 162

P R O C E E D I N G S

COURTROOM DEPUTY:  Your Honor, calling criminal case number 12-155 the United States of America v James Wendell Brown.  The Defendant is present in the courtroom, your Honor.  Counsel, please approach the lectern and identify yourselves for the record.

MR. REDBORD:  Good afternoon, your Honor, Ari Redbord for United States.

THE COURT:  Welcome back.

MS. QUINT:  Good afternoon, your Honor, Laura Quint on behalf of Mr. Brown.

THE COURT:  Welcome back.  We are here, counsel, today to do a redo, a do-over.  As the record would reflect certainly the parties agreed after the last plea -- after the plea was taken that a particular calculation enhancement, which is a substantial one, it is a four point enhancement, was not really appropriate based on the facts as the parties know the facts to be in the case to apply in this case.

So obviously the Court felt in an abundance of caution that the Plea Agreement should be redrafted with that agreement and understanding memorialized unlike it was in the original Plea Agreement and that we go through the Rule 11 colloquy yet again, just in an abundance of caution to make sure the record is squint with both parties' agreement and understanding of what the facts are and what the facts will support.

USCA Case #13-3062     Document #1539600     Filed: 02/23/2015     Page 91 of 162

1          So this is all being done in an abundance of caution,

2     but I think in the long run, this is the safest course for every

3     one involved.  So with that preamble -- and is that your

4     understanding as well, Miss Quint?

5          MS. QUINT:  Yes, your Honor, and that this plea would

6     supercede the previous plea.

7          THE COURT:  Right.  Mr. Redbord, is that consistent

8     with your understanding as well?

9          MR. REDBORD:  Yes, your Honor.

10          THE COURT:  All right. THE COURT:  Hold on a second.

11     Let me get my plea script here  if I have it.  Hold on a second

12     everyone.

13          (Pause.)

14          THE COURT:  While I am waiting for my law clerk to

15     return, let me ask counsel this question.  The Plea Agreement

16     has been reconstituted and has been signed in a new original

17     form; is that correct?

18          MR. REDBORD:  Yes, sir.

19          MS. QUINT:  Yes, your Honor.

20          THE COURT:  And the Statement of the Offense which is

21     incorporated by reference into the Plea Agreement has been

22     resigned with today's date as well?

23          MR. REDBORD:  Yes, sir.

24          MS. QUINT:  Yes.

25          THE COURT:  And that wasn't changed though?  There was

1  no need to change the Statement of the Offense, was there?

2  　　　　MR. REDBORD: Correct, no need.

3  　　　　THE COURT: No. So that's verbatim the same as the

4  original one that we previously did a Rule 11 colloquy on. And

5  the Plea Agreement has just simply been amended to change the

6  Guideline calculation from 34 months -- now, this is the agreed

7  upon Guideline calculation between the parties. The Court has

8  to do its own independent evaluation as the Plea Agreement

9  obviously provides, but the parties have an agreed Guideline

10 calculation including acceptance of responsibility which is a

11 three credit reduction of a 30-month total which is a Guideline

12 sentencing range of 97 to 121 months, correct?

13 　　　　MS. QUINT: The 30 offense level.

14 　　　　THE COURT: The 30 offense level, right, which has a

15 range of 97 to 121 months.

16 　　　　MR. REDBORD: Yes.

17 　　　　THE COURT: Very good. So that's the new version which

18 we are going to use today. All right. Miss Quint, is your

19 client ready to proceed?

20 　　　　MS. QUINT: Yes.

21 　　　　THE COURT: He can come up and be sworn.

22 　　　　(Defendant sworn.)

23 　　　　THE COURT: Very good. Mr. Brown, welcome back. I

24 understand from Miss Quint that you are willing to and prepared

25 to enter a guilty plea to this new amended Plea Agreement and

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 92 of 162

Filed: 02/23/2015    Page 93 of 162    Document #1539600    USCA Case #13-3062

1  Statement of the Offense; is that correct?

2  THE DEFENDANT:  Yes, sir.

3  THE COURT:  Now, I just need to ask you, as you know

4  from having done this before, I need to ask you certain

5  questions do ensure you understand your rights, to ensure that

6  your plea is a voluntary plea.  If you don't understand any of

7  my questions at any time, don't hesitate to ask me to stop.  You

8  can ask any question you would like of either Miss Quint or

9  myself or both of us, and we will do our best to get you an

10  answer to your question.  Okay?

11  THE DEFENDANT:  Thank you.

12  THE COURT:  Now, I remind you as I must that you are

13  under oath.  The answers you give to the Court's questions could

14  be used against you in a prosecution for perjury or making false

15  statements if you don't answer truthfully.  You understand that,

16  right?

17  THE DEFENDANT:  Yes.

18  THE COURT:  Does counsel for either side have any

19  question as to the Defendant's competence to enter a plea at

20  this time?

21  MS. QUINT:  No.

22  MR. REDBORD:  No.

23  THE COURT:  Do you feel competent to go forward, Mr.

24  Brown?

25  THE DEFENDANT:  Yes.

THE COURT: Are you the influence of any drugs or alcohol or any narcotics, anything that could cause you to have clouded judgment or fail to understand these proceedings?

THE DEFENDANT: No, sir.

THE COURT: Based on the representation of the Defendant and counsel and based on the Court's own observation of the Defendant, the Court finds him fully competent and capable of entering an informed plea.

Now, as I understand it, you wish to enter a plea to one count of distribution of child pornography in violation of 18 U.S. Code Section 2252A (a)(2). Have you had an adequate time and opportunity to discuss this case with your attorney?

THE DEFENDANT: Yes, sir, I have.

THE COURT: Are you satisfied with your attorney's representation of you?

THE DEFENDANT: Yes, sir, I am.

THE COURT: Now, let me just go over quickly your constitutional rights involved here. First of all, do you appreciate that under the Constitution and laws of the United States you are entitled to a trial by jury on the charge contained in the Information?

THE DEFENDANT: Yes, sir.

THE COURT: And you also understand that if there were a trial, you would be presumed to be innocent, the Government would be required to prove you guilty by competent evidence

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 94 of 162

Filed: 02/23/2015    Page 95 of 162    Document #1539600    USCA Case #13-3062

1  beyond a reasonable doubt?

2       THE DEFENDANT:  Yes, sir.

3       THE COURT:  All right.  Furthermore, if there were a

4  trial, witnesses for the Government would have to come to Court,

5  testify in your presence, and your attorney could cross-examine

6  those witnesses, object to any evidence offered by the

7  Government and offer evidence on your behalf.  Do you understand

8  that?

9       THE DEFENDANT:  Yes, sir.

10       THE COURT:  All right.  Furthermore, if there were a

11  trial, you would have a right to testify but also would have a

12  right not to testify and no inference or suggestion of guilt

13  could be drawn from the fact that you chose not to testify.  Do

14  you understand that?

15       THE DEFENDANT:  I understand.

16       THE COURT:  Furthermore, if I accept your plea, you

17  will be waiving all of these rights and there will be no trial

18  and I will enter a judgment of guilty.  Do you understand that?

19       THE DEFENDANT:  Yes, I do.

20       THE COURT:  Of course, you understand, do you not, that

21  you will also be waiving your right against self-incrimination

22  since you must acknowledge your guilt in order for me to accept

23  your plea?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT: Okay.  Now, the offense to which you are

1  pleading guilty is a felony offense.

2  THE DEFENDANT:  Yes, sir.

3  THE COURT:  If I accept your plea, you will not only be

4  found guilty of that offense, you may be deprived of certain

5  valuable civil rights such as the right to vote, the right to

6  hold public office, the right to perform certain jobs both in

7  the public and private sectors and the right to serve on a jury

8  and the right to possess any kind of a firearm.  Do you

9  understand that?

10  THE DEFENDANT:  Yes, sir.

11  THE COURT:  Now, where were you born, Mr. Brown?

12  THE WITNESS:  Alexandria, Virginia.

13  THE COURT: How many years of schooling did you have?

14  THE DEFENDANT:  14.

15  THE COURT: So you understand all of these rights I have

16  gone over with you?

17  THE DEFENDANT: Yes, sir.

18  THE COURT: And you still want to go forward with the

19  plea; is that correct?

20  THE DEFENDANT: Yes, sir, I do.

21  THE COURT: Now, Miss Quint, by any chance do you have a

22  copy of the Information?

23  MS. QUINT:  I do, your Honor.

24  THE COURT:  Let me ask you a few brief questions about

25  this, Mr. Brown.  Have you seen this document before?

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 96 of 162

Filed: 02/23/2015    Page 97 of 162

Document #1539600

USCA Case #13-3062

1    THE WITNESS:  Yes, sir, I have.

2    THE COURT: Have you had a chance to review it and

3    discuss it with your counsel?

4    THE DEFENDANT: Yes, sir.

5    THE COURT: Do you waive reading of the Information,

6    Miss Quint?

7    MS. QUINT:  Yes, your Honor, we waive formal reading.

8    THE COURT: Let me just ask you this.  This is the

9    document, of course, that sets forth the charge of one count of

10   distribution of child pornography in violation of 18 U.S. Code

11   Section 2252A (a)(2).  You have reviewed it, you have discussed

12   it with your counsel.  Would it be fair to say that you

13   understand the charge against you?

14   THE DEFENDANT: Yes, sir, I do.

15   THE COURT: And would it also be fair to say that your

16   counsel has discussed with you and described for you the maximum

17   possible penalty for this particular offense?

18   THE DEFENDANT:  Yes, sir, she has.

19   THE COURT: Which is in this case 20 years? Do you

20   understand that?

21   THE DEFENDANT:  Yes, sir.

22   THE COURT:  There is also a mandatory minimum of five

23   years of imprisonment for this type of offense.  Do you

24   understand that?

25   THE DEFENDANT:  Yes, sir.

1    THE COURT: Miss Quint, do you agree that that's what
2  the law provides?

3    MS. QUINT:  Yes, your Honor.

4    THE COURT: And Mr. Redbord, do you agree to that?

5    MR. REDBORD:  Yes.

6    THE COURT: Very good. Now, there is also a provision of
7  a possible fine of $250,000 or twice of the pecuniary gain or
8  loss pursuant to 18 U.S. Code Section 3571 D,  an order of
9  restitution and an obligation to pay any applicable interest or
10  penalties on fines or restitution that are not timely made, and
11  a supervised release term of between five years and life
12  pursuant to 18 U.S. Code Section 3583 K.  Do you understand that
13  to be additional possible --

14    THE DEFENDANT: Yes, sir.

15    THE COURT:  -- possible punishment, okay.  Of course,
16  the Court will not be able to determine the exact sentence
17  that's applicable in your case until  a Presentence Report has
18  been completed which you and your counsel and the Government's
19  counsel will all have an opportunity to review, evaluate and
20  challenge any legal or factual conclusions.  Do you understand
21  that?

22    THE DEFENDANT:  Yes, sir.  There will be an additional
23  one?

24    THE COURT:  No, this is the Presentence Report that is
25  prepared in all of these cases prior to --

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 98 of 162

Filed: 02/23/2015    Page 99 of 162

Document #1539600

USCA Case #13-3062

1    THE DEFENDANT:  We have already done --

2    MS. QUINT:  I think you are asking if there will be an

3    additional I think.

4    THE DEFENDANT:  An additional Presentence Report.

5    THE COURT:  There will only be one.

6    THE DEFENDANT:  Okay.

7    THE COURT: You only have to do one.

8    THE DEFENDANT: Okay.

9    THE COURT: When we are done today, we will order it to

10   be done and it usually takes about 90 days.

11   MS. QUINT:  It was done already.

12   THE COURT:  It has already been completed?

13   THE DEFENDANT:  Yes, sir.

14   THE COURT:  Then we won't need an additional one.

15   THE DEFENDANT:  That's what I was referring to.

16   THE COURT: Good.  Thank you for that clarification.

17   Now, under some circumstances you may challenge a sentence by

18   the Court on the grounds of reasonableness.  You understand

19   that?

20   THE DEFENDANT:  Yes, sir.

21   THE COURT: Parole has been abolished in the Federal

22   system.  So if you are sentenced to prison, you will not be

23   released on parole.

24   THE DEFENDANT: Yes, sir.

25   THE COURT: Now, Miss Quint, I am going to hand you the

1   revised originals of the Plea Agreement and Statement of the

2   Offense.  If you could put those in front of Mr. Brown, I would

3   appreciate it.

4          MS. QUINT:  Yes, sir.

5          THE COURT:  Let's start with the Plea Agreement.  Mr.

6   Brown, have you seen this revised version of the Plea Agreement?

7          THE DEFENDANT:  Yes, sir.  I have.

8          THE COURT:  All right. And is that your signature on

9   the last page acknowledging that you accept the terms and

10  conditions of this Plea Agreement?

11         THE DEFENDANT:  Yes, sir, it is.

12         THE COURT:  And that you understand the terms and

13  conditions of it?

14         THE DEFENDANT: Yes, sir.

15         THE COURT:  And is that your signature, Miss Quint, on

16  that page as well indicating that you discussed it with him?

17         MS. QUINT:  It is, your Honor.

18         THE COURT:  Thank you very much.  Now, I am going to

19  ask -- well, while I have that in front of you, I think you also

20  have the Statement of the Offense there, Miss Quint.  Is that

21  correct?

22         MS. QUINT:  Yes, your Honor.

23         THE COURT:  And that's incorporated by reference into

24  the Plea Agreement, is it not?

25         MS. QUINT:  Yes.

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 100 of 162

Filed: 02/23/2015    Page 101 of 162

Document #1539600

USCA Case #13-3062

1    THE COURT: And turning to that just for a moment, Mr.

2    Brown, have you seen this document as well, the Statement of the

3    Offense?

4    THE DEFENDANT: Yes, sir, I have.

5    THE COURT: This one has not been changed. It hasn't

6    been revised, isn't that correct, Miss Quint?

7    MS. QUINT: That's correct, there are no changes.

8    THE COURT: No changes. And you have had a chance to

9    review that and discuss that with your counsel, right?

10   THE WITNESS: Yes, sir, I have.

11   THE COURT: Is that your signature on the last page

12   acknowledging that is a fair and accurate description of your

13   conduct here?

14   THE DEFENDANT: Yes, sir, it is.

15   THE COURT: Miss Quint, your signature appears there as

16   well, does it not?

17   MS. QUINT: It does.

18   THE COURT: Now, let me ask Miss Quint to briefly

19   describe the terms of the Plea Agreement, especially the revised

20   portion and listen carefully and I will have a few brief

21   questions for you when she is done.

22   MS. QUINT: Yes, your Honor. As the Court indicated,

23   Mr. Brown is pleading guilty to one count of distribution of

24   child pornography in violation of 18 U.S. Code 2252A(a)(2). He

25   understands that the mandatory minimum sentence is five years

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 102 of 162

1  and that the statutory maximum sentence is 20 years.

2  We have reviewed and revised the applicable -- what we

3  believe -- what the parties believe are the applicable and

4  appropriate Guidelines in this case and Mr. Brown understands

5  that with a criminal history category of one and an adjusted

6  offense level of 30, the parties' understanding is that the

7  Guidelines will be 97 to 121 months.

8  Mr. Brown understands that the sentence is up to the

9  Court and that the Guidelines are only one consideration that

10  the Court will take into account along with the 3553(a) factors.

11  Mr. Brown knows he can ask for a sentence below the

12  Guidelines, but that the Guideline -- in terms of appeal, he can

13  only appeal his sentence if the Court departs upward from the

14  Guidelines or imposes a sentence higher than the statutory

15  maximum.

16  Mr. Brown understands that restitution will be

17  mandatory and imposed if a victim is found to exist in these

18  cases.

19  He understands the rights he is waiving, the right to a

20  trial and all the attendant rights as well as the right to be

21  indicted.  And this is the complete agreement, your Honor.  I

22  don't think there is anything particularly complicated -- sex

23  offender registration.  He understands that for a minimum of

24  25 years up to life, he will have to register under the Sex

25  Offender Registration and Notification Act anywhere he lives,

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 103 of 162

1    works or studies.

2         THE COURT:  And with regard to the Guideline

3    calculation, it is clear in the agreement, is it not, that the

4    Court has to do its own independent evaluation?

5         MS. QUINT:  Absolutely, your Honor. Mr. Brown

6    understands that.

7         THE COURT:  All right, Mr. Brown, you have heard Miss

8    Quint's summary of the terms of the Plea Agreement. Of course,

9    you have already acknowledged reviewing it and discussing it

10   with her, but would it be fair to say that that's consistent

11   with your understanding of it?

12        THE DEFENDANT:  Yes, sir, it is.

13        THE COURT:  Very good.  Do you have any questions that

14   you would like to either ask her or the Court about the Plea

15   Agreement, or do you feel that you understand it and don't have

16   any questions?

17        THE DEFENDANT:  I fully understand, your Honor.

18        THE COURT:  Very good.  Has anyone threatened you or

19   forced you in any way  to enter a plea in this case?

20        THE DEFENDANT:  No, sir.

21        THE COURT: Has anyone made any specific prediction or

22   promise to you as to what your exact sentence in this case will

23   be?

24        THE DEFENDANT: No, sir.

25        THE COURT: You understand, don't you, that the sentence

1   will be up to the Court alone but only after a Presentence

2   Report has been completed which you and your counsel will have a

3   chance to challenge in any way as well as the Government to

4   challenge any factual or legal conclusion?  You understand that?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Very good.  I am going to ask the

7   Government to many come up and give a brief summary of the

8   evidence is the case had gone to trial.  You can have a seat

9   with your counsel over there and listen carefully, and I will

10  have you back up in a couple minutes.

11          THE DEFENDANT:  Thank you.

12          THE COURT:  Thank you very much.  All right.  Mr.

13  Redbord.

14          MR. REDBORD:  If this case had gone to trial, the

15  Government would have proven beyond a reasonable doubt that on

16  or about March 5, 2012, the Defendant made contact with an

17  undercover officer on a predicated social network site

18  frequented by individuals that have a sexual interest in

19  children.

20          The Defendant was -- the Defendant stated that his

21  preference was for young children quote "3 to 8 best, love them

22  flat and smooth" end quote.  Brown further stated quote "small

23  enough to pick up and do as I please.  They don't say no and if

24  they do, I can cover their mouths and do it anyway" end quote.

25          When the UC inquired if Brown had "any experience,"

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 104 of 162

Filed: 02/23/2015    Page 105 of 162

Document #1539600

USCA Case #13-3062

1  Brown responded, "I used to enjoy my granddaughter but she was

2  taken from me a year ago.  I only got her to do oral on me.  Her

3  grandma was always too close to do any more."

4       Brown added that he quote "started mine at

5  two-and-a-half training her.  At three and half she could deep

6  throat me, she had no gag reflection.  I used her mouth until

7  five when she was taken from me."

8       At approximately 1:30 p.m. on March 5th the Defendant

9  and the UC shifted their online conversation to Yahoo Instant

10  Messenger.  During the course of that online chat, Brown noted

11  that it had been approximately one year since he had engaged in

12  sexual acts with his granddaughter.  Brown also noted that he

13  missed it more than you can dream.

14       As the online exchange continued, Brown sent the  UC

15  three images of child pornography.  The first image sent by

16  Brown depicted a close up view of a female vagina that appears

17  to be of a child under the age of 18.  When the  UC asked if the

18  image depicted how your granddaughters looked, Brown replied,

19  "yes, but that is not her."

20       The second image sent by Brown depicted two

21  prepubescent children masturbating an adult male penis.  The

22  third image sent by Brown depicted two prepubescent children

23  both nude with an adult male with one performing oral sex on the

24  adult male's penis and the other kissing the adult male on the

25  mouth.

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 106 of 162

After sending the third image Brown stated quote, "I loved that little mouth tight around that cock" end quote.

In discussing his granddaughter again, Brown noted that she would only suck me.  I was never alone long enough to do anything more.  When asked if he ever ejaculated, Brown responded quote "not in her.  Her grandma was always in the next room."  End quote.  He also explained quote "my granddaughter could deep throat me.  She had no gag reflection.  Every time I could, I would pull it out and she would just run up and take it in her little mouth."

During the course of the investigation the Government learned that Brown was under investigation for sexual abuse charges in Fauquier County, Virginia involving his granddaughters  ages 7 and 4.

In a statement to Fauquier County authorities, one grandchild stated that the Defendant made her sit on his lap on multiple occasions while Brown moved his body back and forth and side to side effectively rubbing his clothed penis on her buttocks on many occasions and rubbed his hands on her unclothed buttocks on one occasion.

In the course of their investigation, Fauquier County also learned that on at least one occasion an eyewitness walked in on one grandchild at the time straddling Brown.  Specifically an adult eyewitness stated that she observed Brown laying in a bed with the child sitting on his bed straddling him.  They were

Filed: 02/23/2015    Page 107 of 162

Document #1539600

USCA Case #13-3062

1   face-to-face and the child wearing  a dress was leaning on

2   Brown's stomach.  Brown's hands were on the child's buttocks.

3          In the course of the investigation of this case, the

4   Government also learned of allegations of sexual abuse involving

5   Brown's biological daughter age six at the time of the

6   allegations.

7          The child alleged that this would happen when she was

8   approximately three years old.  Brown concedes that the

9   Government could prove the abuse set forth above by clear and

10  convincing evidence.

11         THE COURT:  All right.  And the summary you have just

12  provided to Court essentially is contained in the Statement of

13  the Offense that's incorporated by reference in the Plea

14  Agreement, is it not, counsel?

15         MR. REDBORD:  That is correct.

16         THE COURT:  Very good.  Thank you very much.

17         MR. REDBORD:  Thank you.

18         THE COURT:  You can come back up, Miss Quint, with your

19  client.

20         MS. QUINT:  Your Honor, if I may, I should add that

21  part of the plea that I was summarizing earlier is that Fauquier

22  County has declined prosecution for any pending cases in light

23  of the enhancements provision in this plea.

24         THE COURT:  Very good.  Thank you for pointing that

25  out.  That's consistent with the Government's understanding as

1   well?

2           MR. REDBORD:  Yes, your Honor.

3           THE COURT:  Very good.  So focusing back on the

4   Statement of the Offense portion of the colloquy, Mr. Brown, you

5   have heard the description that's been provided by the

6   Government here and, of course, you have already acknowledged

7   reading the Statement of the Offense and signing it as a fair

8   and accurate statement; but would it be fair to also say that

9   the summaries you have just heard it is a fair and accurate

10  description of your conduct here?

11          THE DEFENDANT:  Yes, sir, it is.

12          THE COURT:  So you are pleading guilty because you are

13  in fact guilty; is that right?

14          THE DEFENDANT:  Yes, sir, I am.

15          THE COURT:  And you are doing so voluntarily; is that

16  right?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  All right.  Now, do you have any questions

19  you would like to ask either Miss Quint or myself before I

20  accept your plea recognizing that once I accept it, I am not

21  likely to allow you to withdraw it?  So if you have any

22  questions for her or for the Court or both of us, this would be

23  the time to ask them.  Do you have any questions?

24          THE DEFENDANT:  No, sir, I do not.

25          THE COURT:  All right.  Do you want to go toward with

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 108 of 162

Filed: 02/23/2015    Page 109 of 162

Document #1539600

USCA Case #13-3062

1    your plea; is that right?

2                THE DEFENDANT:  Yes, sir, I do.

3                THE COURT:  Very good.  Well, it is the Court's finding

4    that you know of your rights under the Constitution and in

5    particular your right against self-incrimination, your right to

6    a trial by jury, and the Court finds that you have voluntarily

7    chosen to waive those rights.  The Court finds that you are

8    aware of the maximum possible punishment of the offense in

9    question as well as the mandatory minimum of five years for the

10   offense in question to which you are pleading guilty.

11               The Court also finds that your plea is a knowing and

12   voluntary plea supported by an independent basis in fact as to

13   each of the essential elements of the offense.  So I will accept

14   your plea and enter a judgment of guilty to one count of

15   distribution of child pornography in violation of 18 U.S. Code

16   Section 2252  A (a)(2).

17               The written Presentence Report I believe has been

18   prepared so we will not need to have to wait for that to be

19   completed, and I think at this point the only thing left to do

20   is set a sentencing date in the near future.  I want to make

21   sure the parties have had a chance to make the appropriate

22   modifications to their Sentencing Memorandum as a result of

23   these changed circumstances since the last time we got together.

24               So let me ask counsel, have you had a chance do that

25   yet or do you need a brief period of time to do that?

1    MR. REDBORD: We can do at -- least the Government can

2 do that relatively quickly. I would defer to defense counsel in

3 terms of timing.

4    MS. QUINT: Your Honor, I think our request would

5 remain the same so I only need a short amount of time to amend

6 certain portions of the memorandum.

7    THE COURT: Okay. Today is Wednesday. When you say a

8 short time, could you get it in by the end of the week or maybe

9 Monday would be better?

10    MS. QUINT: The end of the week is fine, your Honor.

11    THE COURT: End of the week is fine. Would that work

12 for the Government as well?

13    MR. REDBORD: That's fine for the Government.

14    THE COURT: All right. So why don't you both have your

15 amended Sentencing Memorandum in by Friday, close of business

16 this Friday which is the 21st; and then we will set the

17 sentencing for next week if that will work for counsel's

18 schedule. I don't know if you have trials or anything going on

19 next week, but I was thinking about doing it next Thursday

20 morning if that will work.

21    MS. QUINT: I have a sentencing at 9:30 Thursday

22 morning.

23    THE COURT: Do you think it should be over by, say,

24 11:30?

25    MS. QUINT: Yes, your Honor. It will probably be over

USCA Case #13-3062     Document #1539600     Filed: 02/23/2015     Page 110 of 162

Filed: 02/23/2015     Page 111 of 162

Document #1539600

USCA Case #13-3062

1    by 10:30.

2        MR. REDBORD:  I have one set at 10 o'clock that

3    morning.

4        THE COURT:  So that -- how about in the afternoon?

5        MS. QUINT:  That's fine.

6        MR. REDBORD:  That would be fine.

7        THE COURT:  Would that be okay? All right.  So how

8    about 3 o'clock? Well, I take that back.  I just noticed the

9    thing I have at 2:30 will take a little  longer than a half

10   hour.  I don't know -- let me go back to Wednesday morning.  How

11   about Wednesday morning at 11:30?

12       MS. QUINT:  That's fine, your Honor.

13       MR. REDBORD:  That's good.

14       THE COURT:  We will do it Wednesday the 26th 11:30 for

15   the sentencing.  All right.  And then I will get your sentencing

16   memos this Friday and that will be fine.  All right.  Any

17   questions, issues, anything that needs to be addressed at this

18   point, Miss Quint?

19       MS. QUINT:  No, your Honor.  Thank you.

20       THE COURT:  Anything for the Government?

21       MR. REDBORD:  No, your Honor.  Thank you.

22       THE COURT:  All right, counsel.  Thank you for getting

23   everything put together and revised, and we will see you next

24   week.

25       THE DEFENDANT:  Thank you.

1    THE COURT:  All right.

2        (Whereupon, at 12:30 p.m., the proceedings were

3    concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 112 of 162

CERTIFICATE OF REPORTER

I, Patty A. Gels, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.



USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 114 of 162

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF COLUMBIA

3   UNITED STATES OF AMERICA          .
                    Plaintiff,        .
4   vs.                               .   Docket No. CR 12-155
                                      .
5   JAMES WENDELL BROWN               .   Washington, D.C.
                                      .   Wednesday, June 26, 2013
6              Defendant.             .
    . . . . . . . . . . . . . . .

7

8            TRANSCRIPT OF SENTENCING HEARING

9        BEFORE THE HONORABLE RICHARD J. LEON

10           UNITED STATES DISTRICT JUDGE

11  APPEARANCES:

12  For the Government:  Ari B. Redbord, AUSA
                         U.S. ATTORNEY'S OFFICE
13                       555 Fourth Street, NW
                         Washington, D.C. 20530

14

15  For the Defendant:   Lara Quint, AFPD
                         FEDERAL PUBLIC DEFENDER
16                        SERVICE OF THE DISTRICT OF COLUMBIA
                         625 Indiana Avenue, NW, Suite 550
17                       Washington, D.C. 20004

18

19  Court Reporter:  Cathryn J. Jones, RPR
                     Official Court Reporter
20                   Room 6521, U.S. District Court
                     333 Constitution Avenue, N.W.
21                   Washington, D.C. 20001

22

23  Proceedings recorded by machine shorthand, transcript
    produced by computer-aided transcription.

24

25

Filed: 02/23/2015    Page 115 of 162

Document #1539600

USCA Case #13-3062

# P R O C E E D I N G S

THE DEPUTY CLERK:  Your Honor, calling Criminal

Case 12-155, the United States of America versus James

Wendell Brown.  The defendant is present in the courtroom,

your Honor.  The probation officer present for these

proceedings is Ms. Lustig.  Counsel, please approach the

lectern and identify yourselves for the record.

MR. REDBORD:  Good morning, your Honor.  Ari

Redbord for the United States.

THE COURT:  Welcome.

MS. QUINT:  Good morning, your Honor.  Lara Quint

on behalf of Mr. Brown.

THE COURT:  All right, counsel, we're here for a

sentencing in this case as you are well aware.  The Court's

practice is to hear from the government first and defense

counsel second.  And if the defendant would like to address

the Court he's welcome to do so after his counsel has

presented her argument, so Mr. Redbord.

MR. REDBORD:  Thank you, your Honor.  The

government made a number of arguments in its various filings

in this case particularly the last revised memorandum in aid

of sentencing.  I would rely on most of those points in my

allocution here today.

The government understands that this Court takes a

number of factors into considering when deciding a sentence

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 116 of 162

1    for this defendant; including the nature of the offense, the

2    need to provide a just punishment, deterrence, protection of

3    the public, need for correctional treatment and the

4    sentencing guidelines.  I intend to focus on all of these

5    elements in some respects.  I will focus primarily on the

6    fact that the government believes this defendant does

7    present a danger to the community, and a period of

8    incarceration of 97 months is justified on all these

9    factors, but particularly based on that danger.

10            THE COURT:  Now there's no contest, is there,

11   between the parties as to what the appropriate guideline

12   range is here?

13            MR. REDBORD:  I do not believe so.

14            MS. QUINT:  That's correct, your Honor.

15            THE COURT:  Ninety-seven to 121, I believe is the

16   range?

17            MR. REDBORD:  Yes, sir.

18            THE COURT:  And is the government advocating for

19   the low end of the range because it's required to do so

20   under the plea agreement?

21            MR. REDBORD:  Your Honor, the government is --

22            THE COURT:  That's a pretty easy question.

23            MR. REDBORD:  Yes, sir.

24            THE COURT:  Are you required to do so under the

25   terms of the plea agreement?

Page 117 of 162

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

1    MR. REDBORD:  I believe that the government agreed

2 under the plea agreement to not oppose a sentence at the low

3 end of the guideline.

4    THE COURT:  Not oppose?

5    MR. REDBORD:  Yes, sir.

6    THE COURT:  That was part of the deal the

7 government gave.  At the time the government entered into

8 the deal initially it was a higher guideline range, wasn't

9 it?

10    MR. REDBORD:  That is correct.

11    THE COURT:  What was the range then?

12    MR. REDBORD:  I believe it was 151 months.  It was

13 the low end of the guidelines.

14    THE COURT:  151 to --

15    MR. REDBORD:  188.

16    THE COURT:  I think that's right, but let me just

17 double check it.  This is an unusual set of circumstances I

18 think it would be fair to say.  The government made a deal

19 based on a premise, a deal where they were going to commit

20 themselves to a 151 request.  Turned out upon closer

21 reflection or closer inspection, whatever, that the

22 enhancement, five-point enhancement actually wasn't in the

23 judgment of the government as well as defense counsel, too I

24 might add, because the plea had already been accepted.  The

25 plea was accepted at the 151.

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 118 of 162

1          The government now all of a sudden with the five

2    credit enhancement taken away changes dramatically the

3    guideline range.  I mean a 151 to 188 range is a lot

4    different than a 97 to 121.

5          So the government had a case that it believed was

6    worth 151, which is not 13 years in jail, 13 and change, to

7    all of sudden -- and again, required to go at the low end of

8    the range by its own agreement.  So now having a guideline

9    range low end 97 roughly to 121 so low end would be probably

10   the high nineties to the low hundreds, something like that.

11         It's a very different situation.  And at the point

12   in time that that occurred, that that change occurred the

13   authorities in Virginia had already committed, had they not?

14         MR. REDBORD:  Correct.

15         THE COURT:  To foregoing prosecution for his

16   conduct in Virginia.  And that's part of the deal, too, is

17   it not?

18         MR. REDBORD:  Yes, sir.

19         THE COURT:  They're locked in as well.  You're

20   locked in and they're locked in.  Of course, the Court isn't

21   locked in.

22         How can you justify 97 months?  I mean you're

23   locked in to it under the plea agreement, but this Court

24   isn't.  There's a pattern and practice of abusing children

25   over a long period of time, and I'm talking about little

Page 119 of 162

Filed: 02/23/2015   Document #1539600

USCA Case #13-3062

1   children, real little children, three years old, five years

2   old, four years old.  Government made the deal.  Protecting

3   the public is my number one responsibility.

4           You're in a hard position here, Mr. Redbord.  Your

5   office made the deal.  You're its champion.  You want to

6   explain to me how under the 3553 factor 97 months adequately

7   protects the public?

8           MR. REDBORD:  Your Honor, despite the controversy

9   that swirls around the guidelines for child pornography

10  cases.  The government --

11          THE COURT:  Controversy, I'm dealing with each

12  case as an individual.

13          MR. REDBORD:  Sure.  And the government believes

14  that the guidelines are appropriate in this case and take in

15  to account the defendant's conduct.  And at the time when we

16  were talking about the four-point enhancement which took him

17  to 151 months the government's position was that hey look,

18  if we have sadistic or masochistic photos here then that's a

19  range that would reflect that he should be sentenced at a

20  range that would reflect that.

21          And I think when the government not only dug into

22  the photos, but dug into the case law about what is sadistic

23  or masochistic and came to the conclusion that essentially

24  you needed either truly sadistic, and I know we've talked

25  with the Court about this before or masochistic conduct.  In

1    other words, dictionary definition wise or conduct that

2    would cause pain.  The government took the position that

3    oral sex no matter how terrible would not necessarily cause

4    the pain that would rise to the level of that enhancement.

5            So the government's justification in terms of what

6    the appropriate sentence is in this case is that look, when

7    he was facing that enhancement the guidelines were right

8    there and they were right to give him that range.  Without

9    that enhancement the guidelines are still right and he

10   should be sentenced under the guidelines but to a lower

11   range because he wasn't responsible for that conduct.

12           THE COURT:  What else you got?

13           MR. REDBORD:  As the Court is aware and I probably

14   don't have to make these arguments as strongly even what the

15   Court just said that this isn't just a child pornography

16   case.

17           THE COURT:  This is a very unusual case.  I've

18   been on this court 11 years.  This is not a normal case.

19   This is a case that has not only interstate transmission of

20   these images.  We get some of those.  Those carry a five

21   year mandatory minimum, as you well know.  We get some of

22   those.  Then we get some cases where there's predatory

23   conduct i.e., people looking to get access to infants,

24   children and looking for others to help them get to them.

25   We get that here, too.

Filed: 02/23/2015     Page 121 of 162

Document #1539600

USCA Case #13-3062

1    We've had some of those cases, too.  But here we

2 have not only those two elements we have a third.  We have

3 an admitted track record of molesting children by his own

4 admission.  He's acknowledged.  Government's got the

5 evidence.  And based upon his acknowledgment of that the

6 authorities in Virginia both federal and state have taken a

7 pass in this case in their state, in their jurisdiction.

8 They have authority to bring their own prosecutions over

9 there.  They've taken a pass.

10    So here we have all three combined.  This is a

11 very unusual case.  We don't get these cases very often,

12 thank God.  I'm not looking for them that's for sure, but we

13 have all three here.

14    MR. REDBORD:  What you have is a child pornography

15 element that the Court is well aware of.  We have the chat

16 which I know the Court referenced when they talked about

17 someone who is looking for a child, a child having, an

18 individual as a sexual interest in a child.

19    THE COURT:  I call that predatory conduct.

20    MR. REDBORD:  Yes, sir.

21    THE COURT:  I think that's a fair characterization

22 of it.  And they're out there in the Internet looking for

23 people to help you get access to minors.  That's predatory

24 conduct.

25    MR. REDBORD:  And third, obviously you have this

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 122 of 162

1   hands-on element.

2        THE COURT: And that's rare actually. We don't

3   get a lot of that, so it's all three in one place.

4        MR. REDBORD: From the child pornography

5   standpoint, and frankly part of the reason the government

6   originally agreed and is asking today for the low end of the

7   guidelines is it was a relatively small amount from just the

8   child pornography standpoint.

9        THE COURT: I understand.

10       MR. REDBORD: And I'm sure you'll hear a lot more

11   about that from Ms. Quint. That's not sort of my job here.

12   But I would say that the images that were distributed were

13   nonetheless serious. A closeup view of a female vagina that

14   appears to be of a child under the age of 18. Two

15   prepubescent female children masturbating an adult male

16   penis, and two prepubescent female children both nude with

17   an adult male with one performing oral on the adult male's

18   penis and the other kissing the adult male on the mouth.

19       Again, three images but relatively, relatively

20   serious and certainly showing sexual acts as opposed to just

21   --

22       THE COURT: Prepubescent children?

23       MR. REDBORD: Yes, sir. And frankly those three,

24   the fact that there are only three images went into a number

25   of things; obviously, the government's consideration in

Filed: 02/23/2015    Page 123 of 162

Document #1539600

USCA Case #13-3062

1   terms of the low end of the guidelines, the government's

2   allocution today, but it's also taken into account by the

3   guidelines.  And this is another reason the government

4   believes that the guidelines are appropriate in this case.

5           This defendant was not as many defendants are

6   enhanced by that essentially the number of images

7   enhancement.  There are -- well, certainly you have the

8   hands-on aspects of this case.  There are also victims in

9   the child pornography piece of this.  I just wanted to point

10  that out.

11          THE COURT:  That is true.

12          MR. REDBORD:  While there are no known victims in

13  this case.  Essentially, we were not able to identify the

14  children in these photos, I've spent quite a bit of time

15  reading victim impact statements in these sorts of cases.

16  And you really can't, I can't extenuate it enough how

17  victimized the children in these cases are essentially.

18          THE COURT:  Many of the children in these kinds of

19  photographs, I'm not saying in this particular one because I

20  don't know, so I can't make a decision based on that.  I

21  have had cases in the past where one of the photographs the

22  government was able to determine who that person was.  And

23  once that person's image is captured and put on the Internet

24  it's there forever.  They're a victim forever.

25          MR. REDBORD:  That's right.  And what you hear

119

1   about is certainly these children are victims of the abuse

2   whether it was a father or brother or uncle.  But then it

3   sometimes is even worse because when they are in public they

4   are constantly thinking about hey, in a grocery store or

5   mall who has seen this image of me.  It's something that

6   really I think hurts them to live a normal life.  I would

7   just ask the Court to take into consideration of the victims

8   of the child pornography which is completely separate from

9   anything else in this case.

10          The government does believe as I mentioned early

11   that this defendant poses a danger to the community.  And I

12   think that danger is extremely evident in the chat in this

13   case.  What we see here is an individual who not only has an

14   interest in children, but brags about his own, the sexual

15   conduct with his granddaughters, and also talks about

16   wanting to meet other kids.  Essentially looking out there

17   wishing that he could find that opportunity.

18          At one point in the chat, he writes, "I used to

19   enjoy my granddaughter but she was taken from me a year ago.

20   I only got her to do oral on me.  Her grandma was always too

21   close to do anymore."  He added that he quote, "Started mine

22   at two and a half training.  At three and a half she could

23   deep throat me.  She had no gag reflex.  I used her mouth

24   until five when she was taken from me."

25          And then shortly thereafter he stated quote, "I'm

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 124 of 162

Page 125 of 162

Filed: 02/23/2015   Document #1539600

USCA Case #13-3062

1    looking for a new playmate.  Is she petite or a big girl?"

2    Referring to the purported child that the undercover was

3    talking about.  During the chat the defendant noted there it

4    had been one year since he engaged in sexual acts with his

5    granddaughter and that he quote, "Missed it more than you

6    can dream."

7         Obviously, all the factors are important here, but

8    for the government the focus is on the fact that this

9    individual still presents a real danger to the community,

10   and believes a sentence of 97 months would put him away for

11   a long enough period of time where he may not present that

12   same danger hopefully with treatment.

13        Your Honor, I do think that in these cases and I

14   could not agree more strongly with your Honor, that these

15   cases should be viewed on a case-by-case basis.

16        THE COURT:  They are all unique.

17        MR. REDBORD:  They are all unique.

18        THE COURT:  They are all different.  And it's a

19   little distressing frankly to see some of the cases cited in

20   the pleadings that actually are just simply, they are not

21   even analogous -- they're not even remotely analogous.  One

22   of my former cases that's analogized just cited here that is

23   so different than this case that it's almost diametrically

24   opposite pole of this case.

25        MR. REDBORD:  Well, given that I will go through

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 126 of 162

1  this relatively quickly then.  But I do want to point out

2  that there are factors here under the guidelines that the

3  government would ask the Court to consider.  Obviously, the

4  pattern of activity would be the most important.  And I

5  believe that obviously the defendant has essentially agreed

6  to that enhancement.  But the fact that the material

7  involved a prepubescent minor, while many -- below the age

8  of 12.

9          While many of these cases involved that age range

10  and the government certainly appreciates that, the three

11  images that were distributed in this case all contained

12  prepubescent female children.  The Court mentioned the cases

13  that were cited.  And just very quickly the government

14  agrees.  I did not find a case in that group that involved

15  any kind of hands on or pattern of activity.  And I may be

16  wrong about that but I don't think so.

17          There is one case that --

18          THE COURT:  We did a search in our district.  Last

19  hands-on sentencing that Judge Robertson retired from our

20  court gave 121 months.

21          MR. REDBORD:  I had a case before Judge Bates

22  about a month or month and a half ago with the most similar

23  facts that I could at least analogize to this case.

24          THE COURT:  A sentencing?

25          MR. REDBORD:  A sentencing, yes.  And essentially

14

Page 127 of 162    Filed: 02/23/2015    Document #1539600    USCA Case #13-3062

1   this was a defendant that -- the case is _United States_

2   _versus Gregory Loreng_. And in that case the defendant had a

3   prior conviction in New Jersey, and that case involved the

4   sexual abuse of his adopted sister.

5           THE COURT: A minor?

6           MR. REDBORD: Minor. And the Court applied the

7   pattern of activity enhancement in that case or at least

8   found that it was appropriate. And I believe all the

9   parties agreed that it was appropriate. And while I believe

10  that his guidelines were higher than Mr. Brown's the Court

11  gave him, I believe 97 -- well, 97 months in that case. And

12  the government believes that its request is consistent. And

13  the facts of that case are again not perfect but compared

14  to these other cases relatively close.

15          THE COURT: Was that images over the Internet?

16          MR. REDBORD: Images over the Internet.

17          THE COURT: Was there predatory behavior as well?

18          MR. REDBORD: Yes, sir. To be clear actually he

19  pled to possession of child pornography. Whereas, Mr. Brown

20  is pleading to distribution, so he was not facing a

21  mandatory minimum in that case. But probably the most

22  analogous piece to that and I think the piece that troubled

23  Judge Bates the most, was that he did brag about his

24  hands-on behavior with the undercover which is very,

25  obviously very similar in this case.

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 128 of 162

1           And what we you know --

2           THE COURT:  Were there state authorities that

3   passed on prosecuting and federal authorities passed on

4   prosecuting in that case?

5           MR. REDBORD:  No, sir.  He had a prior conviction

6   in New Jersey for that in that case, so it's certainly

7   different.  And again --

8           THE COURT:  He wasn't level one?

9           MR. REDBORD:  That's right.

10          THE COURT:  He was not?  That might account in

11  part for why the guidelines range was different.

12          MR. REDBORD:  The guideline was certainly

13  different.  And again, I always argue that we shouldn't

14  analogize so I apologize for doing it.  But if we're ever

15  going to analogize this is as close as this list of cases

16  that I could come up with.

17          THE COURT:  They are all very different.  Each

18  case is unique.

19          MR. REDBORD:  Your Honor, finally, I think the

20  memorandum and this argument here has given the Court

21  everything that the government has.  But I do want to be

22  clear on one thing especially given the shift in the

23  government's recommendation.  I think there are times when

24  prosecutors come before the Court and ask for the low end of

25  the guidelines knowing the Court will sort of go below that

Filed: 02/23/2015     Page 129 of 162

Document #1539600

USCA Case #13-3062

1    --

2              THE COURT:  That was in the deal.

3              MR. REDBORD:  Or because that was some sort of

4    obligation.

5              THE COURT:  Yeah, that's in the deal.

6              MR. REDBORD:  I'm asking for it because it was

7    agreed to, but also frankly because the government does

8    believe it's a just sentence in this case; given the

9    conduct, given the defendant's age and given the other

10   factors that I know the Court is going to consider.  Based

11   on all that the government asks for 97 months.  Thank you.

12             THE COURT:  Thank you.  Ms. Quint.

13             MS. QUINT:  Good afternoon, your Honor.  Before I

14   start I just wanted to acknowledge -- I'm sure the Court has

15   noticed but to note for the record that Mr. Brown's family

16   members, several of his family members are here.  I don't

17   know if the Court would permit it but Connie Brown, Mr.

18   Brown's mother, has asked me if she would be allowed to say

19   a few words at the end of our allocutions.

20             Your Honor, before I go into my allocution, and

21   again as the prosecutor did I will rely largely on the

22   arguments made in my memorandum.  I would like to take a

23   minute to address our part of the deal and what in terms of

24   the state of Virginia's and the federal authorities in

25   Virginia's decline in prosecution.  That was part of the

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 130 of 162

1    deal, but our -- what we gave up so to speak was the right

2    to have a mini trial which was Mr. Brown's original intent.

3    The right to contest that five-point enhancement, and that

4    five-point enhancement is significant.

5            Mr. Brown, of course, did not necessarily think he

6    would win that mini trial.  I did not advise him he would.

7    But without going too much into detail into the Virginia

8    cases --

9            THE COURT:  What do you mean when you say "a mini

10   trial".

11           MS. QUINT:  In other words, he would have fought

12   that five, if we had not -- in exchange for the state of

13   Virginia promising not to prosecute him, we promised not to

14   try to bring witnesses of our own or not to object to that

15   enhancement.  Obviously, there was no guarantee at all from

16   it that we would win that battle but --

17           THE COURT:  What if that battle would have waived.

18           MS. QUINT:  Well, we have objected in that PSR and

19   we have objected in court, and we would have asked the Court

20   for permission to bring documents; the fact that the facts

21   at issue have been under the attention of Farquhar County at

22   least certainly for several years.  One initial case was

23   thrown out.  So Mr. Brown conceded that by clear and

24   convincing evidence this Court could find that the

25   enhancement applied.  But it was by no means guaranteed as a

Page 131 of 162          Filed: 02/23/2015          Document #1539600          USCA Case #13-3062

1    matter of law that he would not have prevailed had he fought

2    that enhancement.

3              So this is --

4              THE COURT:  This is quickly becoming a case study

5    and all the reasons why the federal sentencing guidelines

6    are not really the great system.  Look what this is evolving

7    in to, the lawyers fighting and arguing and settling cases

8    based on their ability to determine, to fight over whether

9    an enhancement applies instead of focusing on the conduct in

10   question.

11             MS. QUINT:  Well the conduct, but also your Honor,

12   whether anything would have actually happened in Virginia.

13   And I'm certainly, I'm not an expert in those facts.  I have

14   read the case file.  I know that there was an initial

15   hearing that Mr. Brown attended where the evidence was

16   thrown out because the witnesses were not found to be

17   reliable.  I'm not here to make -- he agreed to that

18   concession and to that enhancement and we're certainly not

19   fighting it.  It's a significant enhancement.  It's a

20   five-point enhancement.

21             But I merely wanted to say for the record that the

22   government certainly gave us something in the plea making

23   but we also, we also had our part that we thought we were

24   doing which was to not --

25             THE COURT:  I tell you what, I mean obviously,

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 132 of 162

1  obviously from the point of view of the guidelines even if

2  you put aside the enhancement issue for a moment the three

3  points that he's getting for acceptance of responsibility,

4  all right, is taking his guideline range down from 135 to

5  168 down to 97 to 121, that's a very large difference.  If

6  this case had gone to trial and he had been convicted his

7  guideline range would have been at least 135 to 168.

8             MS. QUINT:  Right.

9             THE COURT:  So that alone is a huge advantage to

10  him.

11             MS. QUINT:  It is, your Honor, but he saved all of

12  us resources.  He admitted right away his responsibility.

13  He cooperated when he was arrested and spoke to the agents

14  and admitted his responsibility, agreed to meet with them

15  later if they had questions.  So I think that is entirely

16  appropriate.  And in fact our entire system would probably

17  crumble if there were benefits to individuals pleading

18  guilty under the guidelines.

19             As far as the comparisons I made in my memorandum

20  not only do I acknowledge that each case is individual, but

21  I also hope in this case the Court will view Mr. Brown as an

22  individual.  They were merely made to make the point that

23  they all relied on 2(g)2.2 the same guideline.  And whether

24  or not the other facts were exactly analogous.  The point

25  was the guidelines in this area have been viewed with

Page 133 of 162

Filed: 02/23/2015   Document #1539600

USCA Case #13-3062

1  skepticism.  And even the most recent case that Mr. Redbord

2  mentioned the *Loreng* case where Judge Bates sentenced the

3  individual to 97 months.

4  I believe, if I'm correct, I think that was one of

5  my colleagues that itself was a departure downward from the

6  guidelines.

7  THE COURT:  Look, I want to be very clear on this.

8  I am not making any decisions based on what happened in

9  Judge Bates' courtroom because I don't know enough about

10  that case.  I haven't studied that case.  Mr. Redbord by his

11  own admission was giving me his best recollection of things

12  that happened months ago.  You're giving me your best

13  recollection -- you weren't counsel of record I take it?

14  MS. QUINT:  I wasn't counsel of record.

15  THE COURT:  So I want to be very clear about this.

16  Whatever sentence I'm giving in this case is not going to be

17  in any way impacted by, influenced by or have anything to do

18  with what happened in Judge Bates' courtroom three months

19  ago.  I don't know anything about that case.  In fact, this

20  is the first I've ever heard of this case.  When Mr. Redbord

21  raised it I had never even heard of the case.  So I want the

22  record to be clear about that.

23  MS. QUINT:  I understand, your Honor, but for the

24  record I need to note that one purpose of sentencing from

25  our prospective is to avoid unwarranted disparity from one

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 134 of 162

1   courtroom to the next.  We don't want our clients --

2           THE COURT:  That's a 3553 factor.  That is

3   absolutely a 3553 factor.

4           MS. QUINT:  And so my only point, I hope I did not

5   mislead was not to exactly analogize, but to make the point

6   that in this community of judges the 2(g)2.2 guideline has

7   been viewed with less deference.

8           THE COURT:  It starts with disparity of sentencing

9   that starts with analogous of the judge who does the

10  sentencing.  And this judge has a track record.

11          MS. QUINT:  I'm aware, your Honor.

12          THE COURT:  Over a period of time of rejecting

13  time and time again the government's request as too low.

14  There are a number, a number of sentencings this Court has

15  done in these kinds of cases, not exactly like this kind of

16  case because this case has I mentioned earlier is unique

17  because of all three things collecting at once.  But this

18  Court on a number of occasions in the last three, 4, 5 years

19  rejected the government's request.

20          And many times the government's request was either

21  the product as Mr. Redbord's situation would have it a deal

22  which the government made which required the government to

23  not oppose the low end of the guideline range.  Or in a

24  number of instances the government was making a departure

25  request based on quote cooperation by the defendant where

Filed: 02/23/2015      Page 135 of 162

Document #1539600

USCA Case #13-3062

1   the defendant brought to the government's attention drug

2   dealer, methamphetamine, I can think of in at least two

3   cases.

4           In another case it was not only a meth dealer, but

5   it was a sexual predator in a different investigation.  In

6   all three of those cases as I recall it the government's

7   request was not only not granted it wasn't even close to

8   what the Court gave.  So I have a track record that I try to

9   be consistent with.  I haven't had time nor do I micro

10  manage slash study what my colleagues are doing in this

11  courtroom.  God knows this is tough enough to do just for

12  me.  This is tough enough.

13          So I am concerned about making sure that there

14  isn't an unfair disparity of sentencing by me between and

15  among the defendants that I'm responsible for, recognizing

16  that each of these cases is unique.  Each case is unique.

17          MS. QUINT:  I think there's also, your Honor,

18  public policy argument for there not being an unwarranted

19  disparity, not any disparity but unwarranted one depending

20  on which courtroom a defendant happens to walk into and I

21  think that was obviously part of the purpose of the

22  sentencing guidelines.

23          THE COURT:  Oh, yeah, that's is what the

24  architects of the guidelines.  Justice Breyer was the chief

25  architect.  That's what he had in mind.  We're going to make

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 136 of 162

1   sure judges in every part of the country whether it's

2   Mississippi or Chicago Los Angeles or Boston they are going

3   to come out with the same sentencing in the same range.

4   That's what they thought.  It was a grand experiment.

5   Unfortunately, the Supreme Court said it is not binding on

6   federal judges who have the real responsibility to study the

7   case individually and the history of the defendant

8   individually.  Thank goodness the Supreme Court did that.

9           MS. QUINT:  As the Court knows that was certainly

10   the position of our office.  We did not want mandatory

11   guidelines.

12           THE COURT:  When I started my career my hands were

13   tied.  Thank God for *Booker*.

14           MS. QUINT:  I can't argue with that, your Honor.

15   The question comes down to in this particular case given

16   Mr. Brown's age, his health conditions, the fact that he's

17   never had an encounter of the criminal justice system like

18   this before, what purposes of sentencing other than

19   punishment which is one very legitimate purpose would be

20   filled by a sentence of eight years as the government is

21   requesting and 72 months that we are requesting.

22           THE COURT:  Well, let me save you a lot of time.

23   There is no chance, zero, that I would vary below the

24   guideline range, none.  You can focus your argument on how a

25   low end of the guideline range sentence, how applying the

Page 137 of 162

Filed: 02/23/2015

Document #1539600

USCA Case #13-3062

1   3553 factors would be a just factor.  You can straight with

2   that one.  I think you've already gotten the drift.  I don't

3   agree with Mr. Redbord's argument as to how it works, but

4   I'm willing to listen, have you take a shot at it because

5   after all that's your job.

6          MS. QUINT:  That is my job, your Honor.

7          THE COURT:  I don't see it at all at the moment.

8   Now maybe you can convince me that the low end of the range

9   applying those 3553 factors it makes sense but go ahead.

10          MS. QUINT:  I think there are several reasons.

11   Number one, it is consistent with the guidelines like them

12   or not the Supreme Court has said are reasonable, a

13   guideline sentence is reasonable.  Number two, Mr. Brown

14   pled guilty as soon as he could, as soon as there were

15   several pleas in this case.  He indicated an acceptance of

16   responsibilities immediately.

17          THE COURT:  For which he's receiving a huge

18   benefit as I just mentioned.  The difference between 135 and

19   168 range versus 97 to 121.  That is a huge difference.

20          MS. QUINT:  And it is an appropriate we would

21   submit.  There were three images.  This is the first case

22   I've had where the 600 images or more does not apply.  Three

23   to 600 is a huge difference as well, and that warrants

24   consideration.

25          THE COURT:  I don't know what cases you've been

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 138 of 162

1   getting, but I can tell you from the cases since I've been

2   getting since I've been on this court I don't think I've

3   ever had one, I don't think I've ever had one have 600

4   images.  I've had images in the 300 but I can't think of one

5   in the 600.

6           MS. QUINT:  I think I've always had it because

7   videos simply because of how long they are.  Almost all

8   videos count from my understanding for 600 or close to 600.

9   Mr. Brown did not distribute.  As the Court does not care

10  about what other judges are doing I was going to point out

11  that Judge Howell --

12          THE COURT:  Be careful now.  I didn't say that.

13          MS. QUINT:  The Court will not be bound --

14          THE COURT:  Don't misconstrue for the record what

15  I said.  I said I don't micro manage and study what they do.

16  Indeed, I don't even have a way to do that.  Do you realize

17  I don't even have a way to do that.  I don't have a

18  database.  You know what, I tried to get that data.  And

19  guess what I was told, the probation office stopped

20  accumulating that data back in ten, three years ago.  I

21  can't even get that data.  And the little data I could get

22  was very superficial.  I don't have a way of micro managing

23  slash studying what my colleagues do.  I didn't say I didn't

24  care what they did.  I mentioned that Judge Robertson had a

25  headline case and he gave 121 months.

1          Judge Robertson, you remember him, don't you?

2          MS. QUINT:  Of course?

3          THE COURT:  He's not exactly Judge Walton --

4          MS. QUINT:  No.

5          THE COURT:  -- if you get my drift.  If you get my

6    drift.

7          MS. QUINT:  I get the Court's drift, your Honor.

8    And I suppose we have an advantage because I see what my

9    colleagues are doing in being aware of what other judges are

10   doing.

11         THE COURT:  I understand the people in the Public

12   Defenders office share information when they should.  That's

13   their job.  Just like I would expect Mr. Redbord to be

14   knowledgable how this Court has dealt with prosecutorial

15   recommendations in the past, and how this Court has

16   regularly rejected in these kinds of cases.  Go ahead.

17         MS. QUINT:  I was going to mention, your Honor, in

18   terms of the commission, Judge Howell, who obviously is

19   still a commissioner recently departed from 210 to 262

20   months downs to 81 months.  There was no hands-on conduct.

21   However, I will get to how this relates to Mr. Brown.

22         An individual in France not only chatted with a 12

23   year, not a Detective Palchak character, but a 12 year old

24   had sent her pornographic images and had traveled to the

25   United States with a teddy bear to meet her.  Judge Howell

Filed: 02/23/2015      Page 139 of 162

USCA Case #13-3062      Document #1539600

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 140 of 162

1    who is the commissioner, and is very aware of -- very

2    respectful of guidelines and very aware of the inherent

3    flaws in the base offense level itself for distribution

4    imposed a sentence of 81 months on that individual.

5              THE COURT:  Judge Howell has been on this court a

6    couple of years.  I don't know how many of these cases she's

7    had in those couple of years.  She's only been a judge for a

8    few years.

9              MS. QUINT:  I recognize that, your Honor.  We

10   found it interesting because of her role as a commissioner

11   in terms of the deference to the guidelines.

12             So I think -- and he had well over 800 images.  So

13   this goes back to Mr. Brown who had three images, who

14   ultimately did not travel.  We don't know whether he would

15   have or not.  I'm not claiming he wouldn't have, but he did

16   not.  And the crime for which he was charged and to which he

17   pled guilty was distribution.  And a 97-month sentence takes

18   into account the five-point enhancement as well as the other

19   appliable enhancements like them or not.  And we don't agree

20   with the two-point enhancement for the computer.  But that

21   takes, the 97-month sentence takes into account that

22   enhancement, so 97 months is consistent.

23             THE COURT:  You don't agree it applies?

24             MS. QUINT:  We agree it applies, your Honor.  It's

25   one of the --

1          THE COURT:  You don't like it.  You just said a

2    minute ago you don't like that, but you don't suggesting

3    legally it doesn't apply?

4          MS. QUINT:  No, absolutely.  But it's one of the

5    examples why we think the guidelines in this case are --

6    Congress had the intent to go after predators who used the

7    speed of the Internet to distribute harmful images.  We

8    don't see people distributing them by mail.  I think it

9    applies, it's rather meaningless because it applies to

10   99 percent of these cases.  But sure, it applies.  And the

11   97 months takes that into account.  Mr. Brown as I mentioned

12   is older.  If the Court imposes 97 months he'll be over 60

13   when he's released from incarceration.

14          As far as the purposes of sentencing and one that

15   I heard the Court and the government focus on understandably

16   was protection of the public.  And given both the

17   registration requirements and the supervised release

18   requirements, I think a sentence over 97 months given those

19   other requirements would be more than sufficient, more than

20   necessary to comply with the purposes of sentencing.  So I

21   think the question really is what does the sentence of more

22   than 97 months accomplish other than punishment?

23          I think there can be stay away orders as part of

24   supervised release obviously if that's a concern.  I think

25   Mr. Brown has a, has chronic pulmonary disease, so the

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 142 of 162

1  nature of confinement for him has been more harsh than more

2  similarly situated defendants and will continue to be more

3  harsh just because of the physical struggles.

4         So for those reasons, your Honor, I was asking for

5  a lower sentence, but certainly we think 97 months would be

6  more than necessary to fulfill all the goals of punishment

7  in Mr. Brown's case.

8         THE COURT:  Okay.  I thought his mother wanted to

9  address the Court?

10        MS. QUINT:  Would the Court allow that, your

11 Honor?

12        THE COURT:  Yeah, if she wants to.

13        MRS. BROWN:  I am Connie Brown, Jim's mom.  First

14 of all, I don't hear.

15        THE COURT:  Okay.  I'll speak loudly.

16        MRS. BROWN:  My husband can't see anymore, I can't

17 hear.  Anyway, with Jimmy, I've written you a couple of

18 times so I don't want any repetitious but I don't remember

19 if I told you at the time of his arrest he'd been living

20 eight months in a rented room in his brother's house.  And

21 our family has always been close.  His siblings are close,

22 his sister.  So I know that he was angry, hurt, frustrated.

23        And when he was arrested, I guess it was about six

24 weeks he wrote to me, and he told me, "Mom, in spite of this

25 horrible place I'm glad I was arrested.  I don't know how I

1  got into the garage I was in but I hate that and it's not

2  me.  I'm in church.  I'm in a Bible study.  I'm taking anger

3  management.  And this is the best thing that could ever

4  happen to me."

5      It's been hard.  We love him.  He's a very

6  important part of our family.  We bought a house out in the

7  middle of 5-acres of woods back in '93.  And I'm not sure of

8  the year but '95, '96, he and his wife divorced and Jimmy

9  moved out.  While he was there he took out a kitchen window,

10  put in a door, built us a deck all by himself.  Couple years

11  later my husband went through his first colon cancer.  Jimmy

12  was there.  He built us a front porch, sunroom all glassed

13  in.  Tiled the floor, put in a fan.  Had a 6-foot wide swing

14  put in for his dad so his dad could take naps on the porch.

15      Meantime, like I said he's always been with his

16  brother, with his sister.  Invite him to dinner, he'd be

17  there to help you cook.  He's always been a giving person.

18  When his brother was in a near fatal accident on 66, Jimmy

19  was the one who took him to doctors.  I don't how many

20  surgeries Fred's been through.  Fred can tell you.  I just

21  know we need him.  He's always volunteered, but now with my

22  husband, six weeks ago he was -- two weeks ago he was

23  heating some oil, we had a grease fire.

24      My husband was always very active.  Always a

25  fix-it man.  Now I can't see.  It's hard for him.  He can't

Filed: 02/23/2015    Page 143 of 162

Document #1539600

USCA Case #13-3062

1   see his shade.  He can't cut his nails, none of that stuff,

2   and we actually need Jimmy.  And not only do we love him,

3   not only do we want to use him, but I think we need him more

4   than a prison needs another inmate.

5          I don't have Internet.  And as a matter of fact, a

6   week ago I turned on the power strip and my computer blew

7   up, so we don't have anything like that that he can have

8   access to.  We can guarantee you that one of us would be

9   with him 24, seven.  And we just as a family we're hoping

10  you'll consider and send him home.  And if he needs

11  counseling, whatever we're all for it.

12         And I thank you for your time.  Thank you.

13         THE COURT:  You're welcome, ma'am, thank you.  If

14  he'd like to address the Court he's welcome to.  Take your

15  time.

16         THE DEFENDANT:  I'd like to say again that I'm

17  sorry for what I did.  Sorry for my actions.  To my family,

18  my wife and her family, I'd like to apologize for the

19  suffering I've done, everything they've had to endure

20  because of me and my actions.  Ms. Quint, I want to thank

21  her for her guidance through all this.  Your Honor, this

22  Honorable Court and the marshal service, I thank you all for

23  your professionalism.

24         And as much as I do want to go home and help take

25  care of my parents I'm prepared for whatever sentence this

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 144 of 162

Page 145 of 162   Filed: 02/23/2015   Document #1539600   USCA Case #13-3062

1    Court gives me.  Thank you.

2              THE COURT:  Well, you can stay right there,

3    Mr. Brown.  I don't know if your parents have been talking

4    to Ms. Quint or not that's frankly not my business.

5              THE DEFENDANT:  They have, your Honor.

6              THE COURT:  But obviously at some point she, I'm

7    sure told them that there's a mandatory minimum here of 60

8    months that the Court even if it wanted to couldn't get

9    around.

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  So you were going to prison for five

12   years under any scenario, any scenario.

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And of course, the guideline range

15   which was recently amended because of the dispute that has

16   been now put aside is 97 to 121 months.  And 97, of course,

17   means eight years and change.

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  So you know, I don't know, I

20   appreciate your mother coming to speak on your behalf.  And

21   obviously, I appreciate the point she made about how your

22   family would really like you to be available to them sooner

23   rather than later and ideally right away.  And that's

24   perfectly understand, perfectly understandable under the

25   circumstances.  Perfectly understandable.

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 146 of 162

1      But it's not of course consistent with the reality

2  of the situation that the Court's presented with and that

3  you're a part of under the circumstances.

4      THE DEFENDANT:  Yes, sir.

5      THE COURT:  There's been a lot of talk about the

6  3553 factors that the Court is required by law, required, to

7  look at and analyze in evaluating the sentencing guideline

8  range and the appropriate sentence in the case.  Congress

9  spoke years ago on this subject before the guidelines ever

10  came into existence frankly when it set 20 years as the

11  maximum, so they set a range essentially.

12      Guidelines came along, of course, at a later time

13  and came up with ranges within the 20 years based upon

14  circumstances and facts and factors that were identified by

15  the commission and provided initially as a mandatory

16  requirement for the Court and now ultimately the Supreme

17  Court has given us the discretion to consider them.  We must

18  actually consider them and evaluate them in light of the

19  3553 factors.

20      You know, I might not agree with Mr. Redbord on

21  everything, but there is no question I agree with him on one

22  thing and that is you are a danger to the public.  There's

23  just no question about that in my mind, zero.  No doubt.  My

24  highest responsibility in my mind is to protect the public.

25  It's my job to do that.

1          Now let's be clear about this, your pleading

2   guilty was to your benefit.  It was a smart decision on your

3   part.  I can assure you if you'd gone to trial and were

4   convicted not only would the range have been much, much

5   higher, but you know a failure to acknowledge responsibility

6   for one's conduct at least in this Court is a grounds for a

7   very high sentence over and above the guideline range here,

8   so let me be clear about that.  That was in your interest to

9   do that.  It was a smart decision on your behalf.

10         My highest concern, of course, is to protect the

11  public.  I must do that.  Punishment is also one of the

12  factors under 3553.  The conduct that you've engaged in here

13  is deserving of serious punishment, there's no question

14  about that either.  But there's another factor that wasn't

15  talked about much in the arguments before me that's also a

16  very important factor and that is deterrence.

17         And it's not just deterring you.  You're going to

18  be deterred because you're going to serve a jail time and

19  then you're going to be under a very strict supervision for

20  a long, long, long time.  Long time.  It's to deter others

21  from engaging in this kind of conduct.  And when I say "this

22  kind of conduct," let me be clear about it.

23         You heard me discuss it with Mr. Redbord and with

24  Ms. Quint this is not conduct we normally get around here.

25  We don't get a lot of cases like this.  Here we have the

1   Internet, interstate transmission of these images.  We have

2   that combined with what I've referred to as predatory

3   conduct i.e., reaching out to others to help them -- to use

4   them to help you find access to minor children.  And what

5   makes it even more unusual as a case there's actual, actual

6   abuse of children that occurred here.  And not just once,

7   over a period of time.

8         So if there ever was a case, ever among the cases

9   that I've sat.  And like I said a minute ago, I can't micro

10  manage you or do I know everything that all my colleagues

11  have done but I know the cases I've had.  There was a case

12  that required at a minimum the high end of the guideline

13  range if not a variance.  When I say variance, I mean a

14  variance upward not a variance downward.

15        There's just no chance to even from my point of

16  view that this is a case that would warrant a variance below

17  the guidelines.  It is just inconceivable.  You need to

18  understand this, Mr. Brown, your counsel was asking for the

19  moon in her sentencing memorandum and she's an advocate.

20  You know, I understand, people ask for the moon sometimes.

21  You know, your parents might not understand that, but I want

22  to make it clear to them, too.  You can ask for the moon but

23  that doesn't mean you're going to get the moon.

24        She's asking for something beyond comprehension.

25  You got such a good deal here that you've got to give

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 148 of 162

1    Ms. Quint credit for.  She got the government under the deal

2    to commit itself to not opposing a sentence at the low end

3    of the guideline range.  Now when they made the deal

4    initially they thought that was 151 months.  That was the

5    deal they thought they were getting.

6              They all talked.  Don't you think Mr. Redbord

7    hasn't been talking to those AUSAs in Virginia and those

8    Farquhar County folks.  Of course, they all talk with one

9    another.  And they ended up passing on prosecution,

10   prosecuting you in Virginia and in the state as well as

11   federal, they both passed as part of the deal here.  You got

12   the benefit of that.  And then it turned out you got another

13   benefit when the deal had to be restructured where it went

14   from a guideline range of 151 minimum to 97.  That's a huge

15   difference.

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Huge difference.  I give Ms. Quint

18   credit for that.  She got you a deal where they locked

19   themselves in to the low end of the range.  And then it

20   turned out the low end of the range was a lower range.  The

21   Court isn't bound by that nor should it be.  Nor should it

22   be.

23             Because I have to protect the public.  And I have

24   to make sure the punishment is just.  And I have to make

25   sure the deterrence not only of you and others will occur as

Page 149 of 162        Filed: 02/23/2015        Document #1539600        USCA Case #13-3062

1   a result of the sentence.  I must also tell you I must give

2   a sentence that reflects the seriousness of the conduct.

3   This is serious conduct.

4         THE DEFENDANT:  Yes, sir.

5         THE COURT:  This is very serious conduct.  Of

6   course and other factors, you know, you get in there and get

7   the benefit of whatever assistance the prison system can

8   provide you in terms of dealing with your problem because

9   you have a problem.  There's no question about that either.

10        In my judgment, this is one of those unusual cases

11  that requires a variance upward.  In my judgment, 121 is not

12  enough.  A higher sentence is warranted here to reflect the

13  seriousness of your conduct, to punish you appropriately, to

14  protect the public and to deter others who may be similarly

15  inclined.  So I'm going to depart upward.  It's not really a

16  departure.  I've got to be careful what words I use because

17  that's the game we're playing now.

18        One forty-four, 12 years, that's eight years more

19  than the maximum.  It's 12 years that you will serve.  And

20  when you're through serving that you'll be under the

21  supervision of this Court for 20 years, 240 months.

22  Essentially you will be under this Court's supervision for

23  the rest of your life.  Because I won't live that long

24  probably, but the judge who inherits the case will.  And he

25  or she will make sure that you never do this again to any

USCA Case #13-3062   Document #1539600   Filed: 02/23/2015   Page 150 of 162

1   child, relative or nonrelative.

2          You're going to be on a very, very close, short

3   leash.  We are not going to have children in this community

4   or anywhere in the United States victims of this kind of

5   criminal behavior.  You understand?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  It's the judgment of the Court that

8   you, James Wendell Brown, be hereby committed to the Bureau

9   of Prisons for a term of 144 months.  You're further

10  sentenced to serve 240 months of supervised release.  By the

11  way, for the benefit of your parents under the statute I

12  could have you supervised for life, but my sense is 20 years

13  is plenty, and to pay a hundred dollars special assessment.

14          Court finds you do not have the ability to pay a

15  fine, therefore waive imposition of the fine.  Special

16  assessment fee is due immediately and payable to the Clerk

17  or our court.  Within 30 days of any change of address you

18  shall notify the Clerk until such time your financial

19  obligation is paid in full.  You should make your payments,

20  special assessments and participation to the Bureau of

21  Prisons Inmate Finance Responsibility Program.

22          Within 72 hours of release from custody you shall

23  report in person to the probation office in the district to

24  which you are released.  While on supervision you shall not

25  possess a firearm or any other dangerous weapon, you shall

Filed: 02/23/2015    Page 151 of 162

USCA Case #13-3062    Document #1539600

1   not use or possess any illegally controlled substance, and

2   you shall not commit any other federal, state or local

3   crimes.  You shall also abide by the general conditions of

4   supervision adopted by U.S. probation.

5          DNA sample acquired, pursuant to 42 U.S. Code

6   Section 14135(a) for all felony offenses the defendant shall

7   submit to the collection and use of DNA identification,

8   information while incarcerated at the Bureau of Prisons or

9   at the direction of U.S. Probation.

10          Sex offender registration, you shall comply with

11  sex offender registration requirements as a convicted sex

12  offender from any state or jurisdiction where you reside or

13  employed or carry on a vocation.

14          Contact restriction, you shall have no direct

15  contact, no direct contact with minors under the age of 18

16  without the written approval of U.S. probation.

17          Employment restriction, you shall not be employed

18  or volunteer in any capacity that may cause you to come in

19  direct contact with children except under circumstances

20  approved in advance by your supervisory probation office.

21          Search, pursuant to the Adam Walsh Child

22  Protection Act of 2006, you shall submit to a search of your

23  person, property, house, residence, vehicle, papers,

24  computer or other electronic communication or data storage

25  devices or media and effects at anytime with or without a

Page 153 of 162

Filed: 02/23/2015    Document #1539600

USCA Case #13-3062

1   warrant by any law enforcement or probation officer with

2   reasonable suspicion concerning unlawful conduct or a

3   violation of a condition of supervision.

4           Sex offender treatment assessment, you shall

5   participate in a program of sex offender assessment and

6   treatment as directed by U.S. probation until such time as

7   you're released from the program.  This assessment and

8   treatment may include; physiological testing such as

9   polygraph to assist in planning, case monitoring and

10  supervision.  At the direction of probation you shall pay

11  for all or a portion of any treatment program.  Pursuant to

12  Rule 32.2 of the Federal Rules of Criminal Procedure, you,

13  James Wendell Brown, are ordered to forfeiture a Toshiba

14  Satellite A-665 laptop SN 9A022382K.

15          Probation officer shall release the presentence

16  report to all appropriate agencies in order to execute the

17  Court's sentence.  Treatment agencies shall return the

18  presentence report to probation upon the defendant's

19  completion or termination for treatment.

20          You have a right to appeal the Court's sentence if

21  the period of imprisonment is longer than the statutory

22  maximum or the sentence departs upwards from the applicable

23  sentencing guideline range.  If you choose to appeal, you

24  must file an appeal within 14 days after the Court enters

25  judgment.  If you're unable to afford the cost of the appeal

1   you may request permission from the Court to file an appeal

2   without any cost to you.

3          The Court will recommend you serve your time at a

4   federal prison close as possible to your parents' home so

5   that they can have the benefit of visiting with you whenever

6   possible.

7          Are there any questions for the government?

8          MR. REDBORD:  No, your Honor.

9          THE COURT:  Any questions for the defendant?

10         MS. QUINT:  No questions, your Honor, but comments

11  for the record.  Consistent with our objections the

12  presentence report we would object to the direct contact

13  provision in terms of it being too vague.  Does that means

14  if a minor is selling a ticket to an event and he wants to

15  attend -- we would object to all the language about direct

16  contact.  Because we do not want him to violate

17  unintentionally.

18         THE COURT:  I'll tell you what my recommendation

19  to you, Ms. Quint, would be this; when he gets out of prison

20  12 years from now you sit down with U.S. Probation if you're

21  still a Federal Public Defender or whoever succeeds in that

22  capacity and you work out that language with the Court.  I

23  may or may not still be a judge 12 years from now.  I don't

24  really know, but I can tell you this; at some point if

25  you've got a dispute or your office has a dispute as to how

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 154 of 162

Filed: 02/23/2015    Page 155 of 162

Document #1539600

USCA Case #13-3062

1   vague this language is I'm sure it could get worked out with

2   probation and with the Court whoever is going to be the

3   judge at that time.

4          MS. QUINT:  Thank you, your Honor.

5          THE COURT:  I wouldn't, I don't think at this

6   point you know litigating language for supervision that's

7   not going to occur for 12 years I'm not so sure that makes a

8   lot of sense.  If you want to make your point for the record

9   you've made it for the record.

10         MS. QUINT:  I've made it, your Honor.  And I have

11  one more matter which is I was concerned by the Court's

12  mentioning repeatedly that Mr. Brown got a benefit by the

13  guidelines changing.  And I just wanted to know whether the,

14  in my view and I think the government's view at this point,

15  the initial guideline estimate of 151 to 188 was mistaken.

16  He did not qualify for that.  So in terms of him getting a

17  benefit, if anything, I think that the initial estimate was

18  wrong and that perhaps went into the Court's mind as him

19  having been given a benefit when in fact --

20         THE COURT:  We're going to play psychologist

21  today, Ms. Quint?

22         MS. QUINT:  Your Honor, I just, I just wanted the

23  Court to make a finding as to what the applicable guidelines

24  were.

25         THE COURT:  The Court made a finding.  The

151

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 156 of 162

1  guideline range is what the guideline range is agreed to

2  between the parties, 97 to 121.

3        MS. QUINT:  Thank you, your Honor.

4        THE COURT:  There's no dispute on that issue in

5  this record whatsoever.  However, for the benefit of the

6  Court of Appeals should it end up there, I was giving them

7  the benefit of the historical path that this case took,

8  starting with a deal that was made by the government where

9  the government believed that the appropriate range was 151

10  to 188, I think it was.

11        MS. QUINT:  That's right, your Honor.

12        THE COURT:  One eighty-eight.  The government made

13  that deal and so did the defense, and the Court took the

14  plea with a guideline range of 155 to 188.  And it was only

15  at the 11th hour and 58 minute when I was about to sentence

16  this defendant to a sentence within that range which the

17  government had bound itself to, in which the defense had

18  bound itself to, that I was informed that all of a sudden

19  no, no, no, there's a difference.  We've refigured it out.

20  We've got a whole new range.  And I was the one who said

21  well then we need to redo the whole plea.  We'll do the plea

22  all over again and I insisted on it.  And that's exactly

23  what we did.  Because it didn't make any sense to me to have

24  a set of pleadings inconsistent with what the new guideline

25  range was that the parties had determined was the

Page 157 of 162     Filed: 02/23/2015     Document #1539600     USCA Case #13-3062

1    appropriate one under the circumstances.

2            Now when you made your argument today, Ms. Quint,

3    you said that you made a decision to forego you know

4    fighting that issue.

5            MS. QUINT:  Fighting the pattern of conduct issue.

6            THE COURT:  Right.  When you made the initial deal

7    you were foregoing challenging the enhancement.  That's what

8    you said.

9            MS. QUINT:  Right, and we did not challenge it.

10           THE COURT:  Right.  I didn't even know that until

11   you said that today.  Until you said that today I had no

12   idea because the Court isn't privy to plea negotiations.  I

13   didn't know that as part of your plea negotiation with

14   Mr. Redbord, you said well, we'll agree to the range 151 to

15   188, but we'll forego challenging.  We don't agree that that

16   four-point enhancement is applicable, but you know, we're

17   agree to that as the agreed upon guideline range for the

18   purposes of this plea agreement.  We'll forego it.  We won't

19   fight it.  So I mean you're the one who told me that.

20           MS. QUINT:  Right, that was the five point, the

21   pattern of conduct activity.

22           THE COURT:  So I'm getting a window into these

23   types of negotiations that I'm not privy to.  I didn't even

24   know about that.

25           MS. QUINT:  I raised it just to show the

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 158 of 162

1   other side of --

2            THE COURT:  I don't know why you're -- obviously

3   you're doing what you're doing for the benefit of your

4   appellate counsel.  I understand what you're doing right

5   now, you're trying to better position your case, at least

6   you think better position yourself for your appellate

7   counsel.  Because you now have the option to because the

8   Court did a variance you have the option to appeal the

9   Court's ruling.  If I had given you a guideline range

10  sentence 121, you couldn't appeal it.

11           MS. QUINT:  I'm aware of that, your Honor.  I just

12  had heard the Court say repeatedly that he had benefited

13  from one plea to the next.  And I just wanted to make clear

14  that we believed the initial one was wrong and that would

15  have been unfair to Mr. Brown.

16           THE COURT:  You didn't think it was wrong

17  initially?

18           MS. QUINT:  I didn't --

19           THE COURT:  You agreed to it.

20           MS. QUINT:  I did, but we --

21           THE COURT:  You agreed to it.  Your client agreed

22  to it and I accepted the plea to it.  So don't tell the

23  record that you didn't agree to it.  You agreed to that

24  sentencing.

25           MS. QUINT:  Absolutely, your Honor.  And it was my

154

1    mistake, but with further research and I believe after that

2    pleas have changed for other people in my office.  With

3    further research we determined that we did not believe that

4    oral sex met that requirement under the case law in

5    existence.  We absolutely agreed initially, and it was -- I

6    said it then and I'll say it now it was my mistake not to

7    realize until the last moment but it was my obligation when

8    I did realize it to make that argument to the government who

9    also agreed and has changed other pleas.

10            THE COURT:  But that dispute between the

11   government that you resolved with the government has nothing

12   to do with the guideline range, the sentencing level that I

13   pick, nothing to do with it.  I'm just stating the obvious

14   for the record here.

15            Your client got the benefit of acceptance of

16   responsibility.  And as it turned out he got the benefit at

17   least from the point of view of the arguments between the

18   counsel that you changed the guideline sentencing range by

19   virtue of further analysis of the documents here.  I'm just

20   stating the obvious.  Whether the range was 97 to 121 or 155

21   to 188, I mean he wasn't going to get a sentence from this

22   Court that was 121 or less not for this kind of conduct, too

23   serious.

24            So you've got your appellate record.

25            MS. QUINT:  I was --

USCA Case #13-3062    Document #1539600    Filed: 02/23/2015    Page 159 of 162

USCA Case #13-3062      Document #1539600      Filed: 02/23/2015      Page 160 of 162

1          THE COURT:  I have no doubt you're going to take

2   it upstairs.  You have any other questions, Ms. Quint?

3          MS. QUINT:  No, your Honor.

4          THE COURT:  You have any questions, Mr. Redbord?

5          MR. REDBORD:  No, your Honor.

6          THE COURT:  We stand in recess.

7          [Thereupon, the proceedings adjourned at 12:55

8          p.m.]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Filed: 02/23/2015          Page 161 of 162

Document #1539600

USCA Case #13-3062

1                          CERTIFICATE

2          I, Cathryn J. Jones, an Official Court Reporter

3    for the United States District Court of the District of

4    Columbia, do hereby certify that I reported, by machine

5    shorthand, the proceedings had and testimony adduced in the

6    above case.

7          I further certify that the foregoing 47 pages

8    constitute the official transcript of said proceedings as

9    transcribed from my machine shorthand notes.

10         In witness whereof, I have hereto subscribed my

11   name, this the 9th day of August, 2013.

12

13                    /s/_____

14                    Cathryn J. Jones, RPR
                      Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25