ORAL ARGUMENT NOT YET SCHEDULED

SUPPLEMENTAL APPENDIX FOR APPELLEE
_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

No. 13-3062
_____

UNITED STATES OF AMERICA,                                          Appellee,

   v.

JAMES WENDELL BROWN,                                              Appellant.
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA
_____

        VINCENT H. COHEN, JR.
        Acting United States Attorney

        ELIZABETH TROSMAN
        ARI REDBORD
\*   LAUREN R. BATES
        D.C. BAR #975461
        Assistant United States Attorneys

\*   Counsel for Oral Argument
    555 Fourth Street, NW, Room 8104
    Washington, D.C. 20530
    (202) 252-6829

Cr. No. 12-CR-155 (RJL)

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

No. 13-3062

———————————

UNITED STATES OF AMERICA, Appellee,

v.

JAMES WENDELL BROWN, Appellant.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————

SUPPLEMENTAL APPENDIX FOR APPELLEE

———————————

In accordance with D.C. Circuit Rule 30, appellee hereby submits the following materials in its supplemental appendix.

I N D E X

PAGE

April 24, 2013, Status Hearing Transcript ........................................ S.A. 1

VINCENT H. COHEN, JR.
Acting United States Attorney

ELIZABETH TROSMAN
ARI REDBORD
Assistant United States Attorney

_____/s/_____
LAUREN R. BATES
D.C. Bar #975461
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829



```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,       :    Docket No. CR12-155
                                :    (RJL)
              Plaintiff,        :
                                :    April 24, 2013
                                :
v.                              :    2.30 p.m.
                                :
JAMES WENDELL BROWN,            :
                                :
              Defendant.        :
. . . . . . . . . . . . . . . . .


                TRANSCRIPT OF STATUS CONFERENCE
            BEFORE THE HONORABLE RICHARD J. LEON
                  UNITED STATES DISTRICT JUDGE



APPEARANCES:


For the Plaintiff:        ARI REDBORD
                          U.S. Attorney's Office
                          555 4th Street, NW
                          Washington, DC 20001



For the Defendant:        LAURA QUINT
                          Federal Public Defender
                          624 Indiana Avenue, NW
                          Washington, DC 20004




Court Reporter:           PATTY ARTRIP GELS, RMR
                          Official Court Reporter
                          Room 4700-A, U.S. Courthouse
                          Washington, D.C. 20001
                          (202) 962-0200
```

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2           COURTROOM DEPUTY:  Your Honor, calling criminal case
 3   number 12-155 the United States of America v James Wendell
 4   Brown.  The Defendant is present in the courtroom, your Honor.
 5   The Probation Officer that's present for these proceedings is
 6   Miss crystal Lustig.  Counsel, please approach the lectern and
 7   identify yourselves for the record.
 8           MR. REDBORD:  Good afternoon, your Honor, Ari Redbord
 9   for United States.
10           THE COURT:  Welcome back.
11           MS. QUINT:  Good afternoon, your Honor, Laura Quint on
12   behalf of Mr. Brown.
13           THE COURT:  Welcome back.  Well, I understand counsel
14   from talking to our Probation Officer that there is a
15   discrepancy between the parties now with regard to the Guideline
16   range calculation that has arisen at the eleventh hour and 50
17   something minute.  I gather one of the enhancements under the
18   Guidelines has been put in question as to whether or not the law
19   under these facts would permit the enhancement to occur, and I
20   thought I would give each of you a chance to describe for the
21   record the situation and how you see it.
22           MS. QUINT:  Yes, your Honor.  It is true that something
23   has arisen, and I will gladly take the fall for it at the
24   eleventh hour.  I don't think it is accurate that there is a
25   dispute between the parties.  I think we actually -- or a
```

1  discrepancy between the parties.  I think the Government, and I
2  agree, that the particular Guideline enhancement specifically 2
3  G 2.(b)(4) -- or 2G2.2(b)(4) -- is not applicable in this case
4  and we had stipulated to it and I had not challenged the
5  Probation Office.
6      And in looking in preparing my arguments for today
7  about why that particular enhancement was so flawed, I looked at
8  the case law again; and I think both of us probably remembered
9  it was a little vaguer than it actually is and having reviewed
10 the most applicable recent cases from various Circuits including
11 the Ninth and the Seventh and the Third --
12      THE COURT:  We don't follow the Ninth very often around
13 this Circuit.  They don't seem to have a lot of credibility in
14 the Supreme Court these days so you got something from our
15 Circuit?
16      MS. QUINT:  That I found the D.C. Circuit has just not
17 addressed this issue.  So -- I can go into more specifics.  I
18 think the Government and I agree that the conduct -- frankly I
19 have never had a case -- I don't mean to downplay it -- but with
20 just three images and usually when we have 600 or more images,
21 one of those falls under the rubric of that enhancement.
22      In looking closely again at the description of the
23 image and what cases have addressed that enhancement, actually
24 say -- I think the language is more specific and does not
25 encompass the images in this particular case.

S.A. 4

```
 1              THE COURT:  Well, as I recall it, I raised that issue
 2    at an earlier point in time in this case and we went forward
 3    notwithstanding my raising that issue with a plea that had an
 4    agreed upon guideline calculation that included this particular
 5    enhancement.  So the record as it stands today, as I understand
 6    it, as I recall it, includes a plea by Mr. Brown to a Plea
 7    Agreement that has a particular Guideline calculation as a part
 8    of that Plea Agreement that includes the three point
 9    enhancement.
10              Now, if both sides are in a position to convince the
11    Court and, of course, I have to reserve judgment until I have
12    heard from you, to convince me that that is not an appropriate
13    enhancement, then that still raises the issue of whether or not
14    the plea as it has been taken in this case is valid, appropriate
15    under the law, whether or not there needs to be a rewriting of
16    the Plea Agreement and a new plea colloquy under the
17    circumstances.
18              So at an absolute minimum, the parties are going to
19    have to go to their respective corners, so to speak, and not
20    only talk to their respective clients, so to speak, although you
21    may have already spoken to yours -- I don't know if the
22    prosecutor has spoken with his superiors, I don't know -- but my
23    point still remains the same; that if it is the joint position
24    of the parties that the existing Guideline calculation is not
25    legally valid, that in my judgment at a minimum puts in question
```

```
 1    the plea as has been taken, and I am not going to obviously have
 2    a record here with a plea that is inherently flawed.
 3         So we would have to redo the Plea Agreement.  We would
 4    to redo the plea colloquy and that's, of course, if you can
 5    convince me that you are correct.  I don't know if you are
 6    correct or not.  I haven't looked at the issue you are raising
 7    specifically.  I looked at it in general terms months ago.
 8         So if you want to have some time, a week or so, to talk
 9    to your superiors and your clients and, you know, figure that
10    all out, you are welcome to do it.  We could set a Status
11    Hearing in ten days or so and come back and you can tell me how
12    you want to proceed, but it looks to me at a minimum the plea
13    has to be redone.
14         MS. QUINT:  Your Honor, I mean our position --
15    obviously it is up to the Court -- our position is that you can
16    -- I think the Guidelines themselves state that you cannot
17    stipulate to something that is not legally applicable and the
18    plea also I think there was a valid basis for the plea in the
19    sense of the factual proffer does not change.  It is not an
20    11(c)(1)(c)-plea.  The plea specifically stated that the
21    stipulations were based on the parties' understanding at the
22    time of the plea and we are not final until the Probation Office
23    has done a calculation.  The plea also said that the parties
24    could ask for sentences outside the Guideline.  So I don't think
25    the plea is not valid, and I am happy to make whatever
```

```
 1    representations on the record --
 2         THE COURT: You might not think it is, but I do.
 3         MS. QUINT: It was not an 11(c)(1)(c).
 4         THE COURT: In my opinion, that's irrelevant. Your
 5    client pled to a Plea Agreement that included this three point
 6    enhancement and a Guideline range calculation agreed to between
 7    the parties consistent with a three point enhancement. That was
 8    his state of mind the day he entered his plea. That's not where
 9    we are today if I understand you correctly.
10         MS. QUINT: Right.
11         THE COURT: Right. So I am sitting here with an
12    absolute expectation and belief that your client now thinks that
13    that which he previously pled to is not accurate under the law
14    and whatever expressions he made to me under oath at the time I
15    accepted his plea are no longer valid. They are not consistent
16    with his frame of mind.
17         I am not going to have a record with that kind of a
18    flaw in it. That's not even a possibility. Not even a
19    possibility. It is not even a close call. Now, I don't know
20    what else you got to say.
21         MS. QUINT: Just again, your Honor, that you cannot
22    stipulate, the Guidelines say this clear, you cannot stipulate
23    to something that is not legally appropriate and I think --
24         THE COURT: That's lawyer talk. I am concerned about
25    his state of mind.
```

1    MS. QUINT: It was a best estimate that the parties
2 thought were applicable and the facts to which he pled guilty do
3 not change.
4    THE COURT: I have had a case in this Court recently
5 which one of your colleagues handled where we had a similar
6 problem and we redid the Plea Agreement and we redid the plea
7 colloquy. You might want to check with your colleague. Similar
8 kind of problem.
9    MS. QUINT: I will, your Honor.
10    MR. REDBORD: Thank you, your Honor. I agree with
11 much of what Miss Quint said. For the record, I would say that
12 I do not believe the Guideline enhancement itself is flawed. It
13 is simply it is a very discrete issue in this case based on one
14 image of child porn.
15    Essentially the question is whether this still image
16 that shows oral penetration from a prepubescent child to an
17 adult male is sadistic or masochistic; and having reviewed the
18 case law, having talked to my colleagues, I don't believe it
19 would be appropriate to enhance this Defendant's Guideline range
20 based on that image under the sadistic/masochistic Guideline.
21 In terms of what the Government needs, as I stand before your
22 Honor, I don't believe I would need more time.
23    THE COURT: Is that vaginal penetration or anal?
24    MR. REDBORD: This is only oral penetration. I
25 actually believe your question goes to the case law. Most of

1   the case law on this issue that I was able to look at, and I
2   believe Miss Quint the same, involved annul or vaginal
3   penetration and the reason that was found to be sadistic or
4   masochistic was because in a young child, that would cause pain.
5   A lot of the analysis comes down to whether or not something
6   would cause pain and --
7           THE COURT: Obviously you don't have -- look, I don't
8   have an expert's testimony on whether or not something would
9   cause pain or wouldn't cause pain it if was penetration orally
10  versus, say, vaginally or say anally. I don't have any expert's
11  opinion here. Obviously you are making an assessment based on
12  your evaluation of the facts and applying them to what you
13  believe the law is. Fine.
14          But if the Government and the defense want to
15  reconstitute their Plea Agreement without that in it and with,
16  of course, the same clauses that previously existed in it which
17  are the Court is not bound by this calculation, the Court can
18  and will make its own evaluation of whether or not this
19  enhancement applies or not.
20          You can keep that clause in there because obviously
21  that's in every Plea Agreement and it is not only in this one
22  now, it will be in the next one that you do too; but that's a
23  decision the Government has to make in conjunction with the
24  defense counsel because that's the agreement that's being
25  reached between the parties.

1    On matters of this complexity and consequence, I don't
2    do these kind of things on the fly. So if you want to talk to
3    your bosses and talk to your clients, reconstitute the Plea
4    Agreement or redo the plea colloquy, whatever, be my guest. But
5    I am not going to just take an existing record, a plea with a
6    plea calculation that's inconsistent with what you say it should
7    be and a colloquy which is inconsistent with what it should
8    be --
9         MR. REDBORD: I will tell, your Honor, that I mean you
10   probably understand as a practical matter out of an abundance of
11   caution the Government is not going to ask for this enhancement
12   just based on the facts of this case and possibly creating law
13   that would not be favorable to the Government.
14        THE COURT: I understand, but, look, you have
15   submitted -- and I am not being in any way critical of you --
16   you submitted pleadings to this Court, Sentencing Memorandum and
17   a response to the defense's Sentencing Memorandum based on a
18   premise that includes that three point enhancement. You have
19   made arguments to this Court consistent with the Plea Agreement
20   that includes a three point enhancement.
21        You might make different arguments. She might make
22   different arguments based upon a new Plea Agreement that
23   excludes those three point enhancements and has a colloquy that
24   does not include those three point enhancements. I don't know.
25   I don't want to prejudge what you might do, but I know this. On

```
 1   matters of this consequence, I mean a three point reduction here
 2   takes a Guideline range from -- I better be certain before I
 3   speak -- 151 to 188 down to 97 to 121.  That is a very
 4   substantial change, very substantial.
 5           MR. REDBORD:  Agreed.
 6           THE COURT:  I am just stating the obvious here, and the
 7   kinds of arguments the Government may make if the Court were to
 8   agree with both parties apparently what exists right now between
 9   the parties, I would think that's a different Sentencing
10   Memorandum than the existing Sentencing Memorandums that are on
11   the record.
12           So the differential between 97 and 151, 54 months
13   is -- math was never my strongest suit -- but two-and-a-half
14   years and at the high end 121 and 188, you know, that's five
15   years.  It is a big difference.  Big difference.
16           I understand Miss Quint's point about, well, both sides
17   are free to argue for variances up or down, it is not a C-plea.
18   I understand that, but I am talking now about how the case is
19   not only -- how the record is established which I think at this
20   point would be flawed under the existing record and, second of
21   all, how you on behalf of the Government and she on behalf of
22   the defense might present your Sentencing Memorandum arguments.
23           So it seems to me you all need to give that some
24   thought.  I will give you a week to ten days to think about it.
25   I will set a status hearing.  You can report to me what your
```

1  thinking is, how you want to proceed.
2      MR. REDBORD: Given that I don't believe that either of
3  us has a shot here today of convincing your Honor that that Plea
4  Agreement was not flawed --
5      THE COURT: Well thought.
6      MR. REDBORD: -- I will not make any arguments about
7  that, but I would --
8      THE COURT: You can be certain of that.
9      MR. REDBORD: -- I would ask that that next date be set
10 for the Defendant to take a plea in this case if in fact he
11 wants to, as I mentioned, he does take one based on this new
12 calculation.
13     THE COURT: How do I know what you are going to do? You
14 don't know what you are going to do yourself. Are you going to
15 reconstitute the Plea Agreement?
16     MR. REDBORD: Yes, sir.
17     THE COURT: Have you talked to your superiors about
18 this because they didn't know what I was going to say? I mean
19 you are hearing this in realtime.
20     MR. REDBORD: Sure.
21     THE COURT: You haven't had a chance to report this to
22 your superiors. You don't want to talk to your superiors? You
23 have blank check authority? I don't think you do.
24     MR. REDBORD: I will go back.
25     THE COURT: I am pretty Miss Quint does not have blank

```
 1   check authority.  She might want to talk with Mr. Kramer.  There
 2   is no reason to rush this.  Let's be very clear about this.
 3   This man's in prison and under any Guideline calculation he is
 4   going to be in prison a long time.  Nothing is going to happen
 5   between now and a couple weeks from now.
 6            MR. REDBORD:  Yes, sir.
 7            THE COURT:  It is important that this is done right,
 8   that the record is clear, that the record is consistent.  The
 9   record that exists right now is not consistent with
10   reconstituting this calculation.  He pled to me with a state of
11   mind that included this enhancement, that included a Guideline
12   range of 151 to 188 months.  That's what he pled to.  That's
13   what the record is right now.
14            You are telling me that's not what the record should
15   be? She is telling me that that's not what the record should be.
16   Well, then why shouldn't the plea itself be corrected and why
17   shouldn't the colloquy be consistent with the corrected plea?
18   And I am going to have to make my own independent evaluation of
19   whether or not that photograph that you are alluding to
20   qualifies for this enhancement.  I might agree with you.  I
21   might disagree with you.  I don't know what I am going to
22   decide.  I haven't made a decision yet.  Baby steps.
23            MR. REDBORD:  Yes, sir.
24            THE COURT:  We are in a minefield. When  you are in a
25   minefield, you don't sprint.  Small steps.  Okay?
```

|   |   |
|---|---|
| 1 | MR. REDBORD: Yes. |
| 2 | THE COURT: Do you want to come in and tell me what |
| 3 | your thinking is next week? Can you handle that? Can you get |
| 4 | that done in a week? |
| 5 | MS. QUINT: Yes, sir. |
| 6 | THE COURT: All right. I am not saying that's a plea. |
| 7 | Next Friday, 11:30 counsel. Are you available? |
| 8 | MS. QUINT: Yes, your Honor. |
| 9 | MR. REDBORD: Your Honor, I am not available next |
| 10 | Friday. |
| 11 | THE COURT: All right. All day or just that time? |
| 12 | MR. REDBORD: That day. |
| 13 | THE COURT: That day. How about Monday the 6th? |
| 14 | MR. REDBORD: Any time, your Honor. |
| 15 | THE COURT: Any time? |
| 16 | MS. QUINT: Your Honor, I have a matter, a sentencing |
| 17 | at 1:30. |
| 18 | THE COURT: All right. What's your guesstimate? Hour |
| 19 | and a half, hour? |
| 20 | MS. QUINT: An hour. |
| 21 | THE COURT: Hour. Well, to be safe how about noon? |
| 22 | MS. QUINT: That's fine, your Honor. |
| 23 | THE COURT: All right. So you be prepared to tell me |
| 24 | how you want to proceed. If you want to in the meantime |
| 25 | reconstitute the Plea Agreement, fine, and send it over to my |

```
 1   chambers in advance of that.  I will look it over and if we want
 2   to redo the colloquy that day, we will redo the colloquy that
 3   day.  Think about rewriting the sentencing memos consistent with
 4   the new Plea Agreement, consistent with the new colloquy,
 5   modifying those consistent with that.
 6           You might conclude in that why this enhancement doesn't
 7   apply because I am going to have to make that independent
 8   assessment on that. Of course, Probation is going to be helping
 9   me in making an independent assessment.  Okay? Questions?
10           MS. QUINT:  No, your Honor.
11           THE COURT:  Questions?
12           MR. REDBORD:  No.
13           THE COURT:  We are in a minefield.  Go slowly.
14           (Whereupon, at 3:48 p.m., the proceedings were
15   concluded.)
16
17
18
19
20
21
22
23
24
25
```

```
 1                    CERTIFICATE OF REPORTER
 2
 3          I, Patty A. Gels, certify that the foregoing is a
 4    correct transcript from the record of proceedings in the
 5    above-entitled matter.
 6
 7
 8
 9                          _____
10
```

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Supplemental Appendix for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Barbara E. Kittay, Esq., 11140 Rockville Pike, Suite 100-284, Rockville, Maryland 20852, on this 2nd day of April, 2015.

/s/
LAUREN R. BATES
Assistant United States Attorney